HANSON BRIDGETT LLP
SANDRA L. RAPPAPORT, SBN 172990
srappaport@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
MOLLY L. KABAN, SBN 232477
mkaban@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366

Attorneys for Defendants
LEPRINO FOODS COMPANY and
LEPRINO FOODS DAIRY PRODUCTS COMPANY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| DONALD NULL, in his representative capacity under the Private Attorney General Act ("PAGA"),<br><br>        Plaintiff,<br><br>    v.<br><br>LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.<br><br><br><br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br>**(28 U.S.C. § 1441(a)**<br>**Federal Question Jurisdiction)** |

TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF

CALIFORNIA AND TO PLAINTIFF DONALD NULL AND HIS COUNSEL OF RECORD:

        PLEASE TAKE NOTICE that Leprino Foods Company and Leprino Foods Dairy Products

Company ("Defendants") hereby remove to this Court the state court action described below.  This

removal is based on federal question jurisdiction. 28 U.S.C. §§ 1331, 1441, and 1446.

/ / /

Case No.

15390295.2

## PROCEDURAL BACKGROUND

1. <u>State Court Action</u>:  On March 18, 2019, Plaintiff Donald Null ("Plaintiff") filed an unverified Complaint (the "Complaint") in the Superior Court of California, County of Kings, entitled:  DONALD NULL, in his representative capacity under the Private Attorney General Act ("PAGA") v. LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1 through 100, inclusive, Case No. 19C-0104.

2. <u>State Court Documents</u>:  Pursuant to the provisions of 28 U.S.C. section 1446(a), Defendants have included with this Notice of Removal "a copy of all process, pleadings, and orders served upon such defendant . . . in such action."  A true and correct copy of the following documents are attached and incorporated by reference:

    a.    Complaint, filed March 18, 2019  (Exhibit 1);

    b.    Summons, filed on March 18, 2019 (Exhibit 2);

    c.    Civil Case Cover Sheet, filed March 18, 2019 (Exhibit 3); and

    d.    Notice of Judicial Assignment and Case Management Conference, filed on March 19, 2019 (Exhibit 4).

3. <u>Service</u>:  Defendant Leprino Foods Company's registered agent was served with a copy of the Summons and Complaint on March 25, 2019.  A true and correct copy of the Service of Process Transmittal to Defendant Leprino Foods Company is attached hereto as Exhibit 5. Defendant Leprino Foods Dairy Products Company's registered agent was served with a copy of the Summons and Complaint on March 26, 2019.  A true and correct copy of the Service of Process Transmittal to Defendant Leprino Foods Dairy Products Company is attached hereto as Exhibit 6.

4. <u>Answer to Complaint</u>:  Defendants answered Plaintiff's Complaint on April 18, 2019.  A copy of Defendants' Answer is attached hereto as Exhibit 7.

## TIMELINESS OF REMOVAL

5. This removal petition is filed timely, as 28 U.S.C. § 1446(b) provides a defendant with thirty (30) days to remove the case after receipt by a defendant, through service or otherwise,

-2-

15390295.2

1   of a copy of the initial pleading setting forth the claim for relief upon which such action or

2   proceeding is based.  Defendant Leprino Foods Company was served with a copy of Plaintiff's

3   Complaint on March 25, 2019, and Defendant Leprino Foods Dairy Products Company was

4   served with a copy of Plaintiff's Complaint on March 26, 2019.  *See* Exhibits 5, 6.

5   <u>**VENUE AND ASSIGNMENT**</u>

6   6.   Venue lies in the Eastern District of California under 28 U.S.C. §§ 1441(a),

7   1446(a), and 84(a).  Plaintiff alleges that he is a citizen of California and was employed by

8   Defendants in the County of Kings, California, and that the acts and events set forth in the

9   Complaint occurred in whole or in part in the County of Kings, California.  (Comp. ¶¶ 5-10.)

10   7.   <u>Intra-District Assignment</u>:  Assignment to the Fresno Division of the United States

11   District Court for the Eastern District of California is proper under 28 U.S.C. § 1441(a) because

12   the state court action was filed and is pending in the County of Kings.

13   <u>**FEDERAL QUESTION JURISDICTION**</u>

14   8.   This action is a civil action of which this Court has original jurisdiction pursuant to the

15   28 U.S.C. § 1331, and is one that may be removed to this Court by Defendants pursuant to the

16   provisions of 28 U.S.C. § 1441(a) in that it arises under Section 301 of the Labor Management

17   Relations Act ("LMRA").

18   9.   The Complaint alleges one cause of action for statutory penalties pursuant to the

19   California Private Attorneys General Act ("PAGA"), Cal. Lab. § 2698, *et seq*., based on

20   Defendants' alleged violations of California Labor Code sections 1194, 1197, and 1197.1 (failure

21   to pay minimum wage), 510 and 1198 (failure to pay overtime), 226.7 and 512 (failure to provide

22   meal periods), 226.7 and 512 (failure to provide rest breaks), 201, 202, and 203 (failure to timely

23   pay wages upon termination), 204 (failure to timely pay wages during employment), 226 (failure

24   to provide complete and accurate wage statements), and 1174 (failure to keep accurate business

25   records).

26   10.   Federal district courts have original jurisdiction over cases founded on a claim or

27   right arising under federal law, regardless of citizenship or diversity.  28 U.S.C. § 1441(c).  When

28   federal question cases are brought in state court, defendants may remove them to the federal

-3-                                    Case No.

15390295.2

1   district court embracing the place where the state court action is pending.  28 U.S.C. § 1441(a).

2       11.    Section 301 of the Labor Management Relations Act ("LMRA") grants federal

3   district courts original jurisdiction over claims for violation of contracts between an employer and

4   a union, regardless of the citizenship of the parties.  29 U.S.C. § 185(a); 28 U.S.C. § 1331.

5       12.    State law causes of action based on a collective bargaining agreement or whose

6   outcome depends on analysis of the terms of a collective bargaining agreement are preempted by

7   LMRA § 301.  *Associated Builders & Contrs. v. Local 302 IBEW*, 109 F.3d 1353, 1356 (9th Cir.

8   1997); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997, 999 (9th Cir. 1987).  Although

9   normally federal preemption is a defense that does not authorize removal to federal court, § 301

10  has such "extraordinary preemptive power" that it "converts an ordinary state common law

11  complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Metro.*

12  *Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987).  In other words, a civil complaint alleging claims

13  preempted by § 301 raises a federal question that can be removed to a federal court.  *See id.*; *Avco*

14  *Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-562 (1968) (LMRA § 301 is federal statute with

15  complete preemptive force).  These claims must be re-characterized as § 301 claims and, as such,

16  are removable to federal court.  *Associated Builders & Contrs.*, 109 F.3d at 1356; *Young*, 830 F.3d

17  at 1002.

18      13.    At all times relevant to this action, Defendant Leprino Foods Company was and is

19  an employer employing employees in an industry affecting commerce as defined by the LMRA, 19

20  U.S.C. § 141, *et seq.*  At all times relevant to this action during which Plaintiff was employed by

21  Defendant Leprino Foods Company, he was represented by a labor organization, Teamsters Local

22  Union No. 517 ("the Union") and employed pursuant to Collective Bargaining Agreements

23  ("CBAs") between Defendant and the Union.  The CBAs address employees' wages, hours and

24  working conditions, and contain provisions specifically addressing work hours and overtime pay.

25  The CBAs further provide for a grievance procedure for disputes and controversies arising out of

26  the CBAs, which culminates in final and binding arbitration.  True and correct copies of the CBAs

27  are attached as Exhibits A and B to the Declaration of Ana Nicks, attached as Exhibit 8 to this

28  Notice of Removal.  Thus, Plaintiff's claim for unpaid overtime amounts to a claim for violation of

1  the CBA.

2      14.    In addition, there is no independent state law right to overtime in this instance.

3  While the California Labor Code generally requires overtime be paid when an employee works

4  more than eight (8) hours in a day or more than forty (40) hours in a week, Industrial Welfare

5  Commission Wage Order 1-2001, which is applicable to Plaintiff's employment, states that the

6  overtime provisions "shall not apply to any employee covered by a valid collective bargaining

7  agreement if the agreement expressly provides for the wages, hours of work, and working

8  conditions of the employees, and if the agreement provides premium wage rates for all overtime

9  hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more

10  than the state minimum wage." 8 CCR § 11010.  Labor Code Section 514 similarly provides that

11  Sections 510 and 511 of the Labor Code (requiring daily overtime) do not apply "to an employee

12  covered by a valid collective bargaining agreement if the agreement expressly provides for the

13  wages, hours of work, and working conditions of the employees, and if the agreement provides

14  premium wage rates for all overtime hours worked and a regular hourly rate of pay for those

15  employees of not less than 30 percent more than the state minimum wage."  Cal. Lab. Code § 514.

16  Thus, by their terms, the default definition of overtime and overtime rates in the Wage Order and

17  the requirement of overtime in the Labor Code do not apply to an employee who is subject to a

18  qualifying collective bargaining agreement. *Curtis v. Irwin Industries, Inc.,* No. 16-56515, 2019

19  WL 321165, at *4 (9th Cir., Jan. 25, 2019).

20      15.    Although normally a district court deciding whether to exercise removal jurisdiction

21  must consider only the allegations in the complaint, that general rule "is overridden by the artful

22  pleading doctrine in complete preemption cases.  Because complete preemption often applies to

23  complaints drawn to evade federal jurisdiction, a federal court may look beyond the face of the

24  complaint to determine whether the claims alleged as state law causes of action in fact are

25  necessarily federal claims." *Parrino v. FHP, Inc.,* 146 F.3d 699, 704 (9th Cir. 1998) superseded

26  by statute on other grounds as recognized in *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681

27  (9th Cir. 2006); *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1349-50 (9th Cir. 1985) (court

28  may look to facts outside complaint to determine whether an "artfully pleaded" state claim is in

-5-

Case No.

15390295.2

1   reality a section 301 claim for breach of the collective bargaining agreement).

2       16.    The CBAs expressly provide for the wages, hours of work, and working conditions

3   of the employees, and provide premium wage rates for all overtime hours worked and a regular

4   hourly rate of pay for those employees of not less than 30 percent more than the state minimum

5   wage. (Ex. 8 (Nicks Dec., Exs. A, B).)  Thus, the CBAs meet the requirements of the Wage Order

6   exception, and the right to overtime exists solely as a result of the CBAs.  It is therefore preempted

7   under § 301 and removable. *Curtis*, 2019 WL 321165 at *4 (finding California state overtime

8   claim preempted under § 301); *see also, Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th

9   Cir. 2000) (same); *Hall v. Live Nation Worldwide, Inc.*, 146 F.Supp.3d 1187, 1203 (C.D. Cal.

10   2015) (cause of action for failure to pay overtime wages preempted by LMRA § 301 "[b]ecause

11   under Labor Code §§ 204, 510, and 1194, a compliant CBA applies rather than the Labor Code.").

12       17.    Claims under PAGA are removable on the basis of § 301 preemption if the

13   underlying Labor Code claims are removable.  *See Hall*, *supra*, 146 F.Supp.3d at 1204 ("Finally,

14   the fifth cause of action, which seeks civil penalties under Labor Code § 2699.3(a), pleads that

15   plaintiffs are entitled to recover civil penalties due to the statutory violations alleged in the first

16   three causes of action. Consequently, this claim is derivative of those claims, and is preempted for

17   the same reasons they are preempted."); *see also Raphael v. Tesoro Refining and Marketing Co.,*

18   *LLC*, 2015 WL 3970293 (C.D. Cal. 2015) (denying motion to remand on a <u>PAGA-only</u> complaint

19   because underlying Labor Code claims are preempted by Section 301); *Vasserman v. Henry Mayo*

20   *Newhall Memorial Hosp.*, 65 F.Supp.3d 932, 963–64 (C.D. Cal. 2014) (holding that PAGA

21   penalties claim is subject to the same Section 301 preemption analysis as the underlying Labor

22   Code claims).  Here, as set forth in Defendants' Notice of Removal, Plaintiff's claim relating to

23   Defendants' alleged violation of the California Labor Code's overtime rules set forth in sections

24   510 and 1198 is preempted under Section 301 of the LMRA.  Accordingly, Plaintiff's claim for

25   PAGA penalties is preempted for the same reasons.

26       18.    To the extent that Plaintiff asserts other PAGA penalty claims that are separate from

27   and independent of those arising under Section 301 of the LMRA, they are removable under 28

28   U.S.C. § 1441(c) and pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

15390295.2

1

## SUPPORTING DECLARATION

2 35. Declaration of Ana Nicks in Support of Defendants' Notice of Removal, attached

3 hereto as Exhibit 8.

4

## SERVICE OF NOTICE OF REMOVAL

5 36. Defendants will simultaneously serve this Notice of Removal on Plaintiff, and will

6 promptly file it with the clerk of the Superior Court of the State of California in and for the County

7 of Fresno.

8 WHEREFORE, Defendants now respectfully request that this action proceed against it in

9 this Court as an action properly removed.

10

11 DATED: April 23, 2019   HANSON BRIDGETT LLP

12

13

14 By: _____/s/ Lisa M. Pooley_____

   SANDRA L. RAPPAPORT

15   LISA M. POOLEY

   MOLLY L. KABAN

16   Attorneys for Defendants

   LEPRINO FOODS COMPANY and

17   LEPRINO FOODS DAIRY PRODUCTS

   COMPANY

18

19

20

21

22

23

24

25

26

27

28

-7-    Case No.

DEFENDANTS' NOTICE OF REMOVAL
(28 U.S.C. § 1441(a) Federal Question Jurisdiction)

15390295.2

# EXHIBIT 1

FILED
3/18/2019 5:03 PM
Michelle S. Martinez, Clerk of Court
Superior Court of the State of California
County of Kings

Heather Adams

1  R. Rex Parris (SBN 96567)
   Kitty K. Szeto (SBN 258136)
2  John M. Bickford (SBN 280929)
   Ryan A. Crist (SBN 316653)
3  **PARRIS LAW FIRM**
   43364 10th Street West
4  Lancaster, California 93534
   Telephone:    (661) 949-2595
5  Facsimile:    (661) 949-7524

6  Attorneys for Plaintiff and the Aggrieved Employees

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **FOR THE COUNTY OF KINGS**

10 DONALD NULL, in his representative capacity     )   Case No.: 19C-0104
   under the Private Attorney General Act ("PAGA"),)
11                                                 )   **COMPLAINT**
                                                   )
12                          Plaintiff,             )   (1)  Violation of California Labor Code
                                                   )        §§ 2698 et seq. (Private Attorney General
13          v.                                     )        Act of 2004);
                                                   )
14                                                 )
   LEPRINO FOODS COMPANY, a Colorado               )   **DEMAND FOR JURY TRIAL**
15 Corporation; LEPRINO FOODS DAIRY               )
   PRODUCTS COMPANY, a Colorado                    )
16 Corporation; and DOES 1 through 100, inclusive, )
                                                   )
17                          Defendants.            )
                                                   )
18                                                 )
                                                   )
19

20

21

22

23

24

25

26

27

28

1    Plaintiff DONALD NULL ("Plaintiff"), in his representative capacity under the Private
2  Attorney General Act ("PAGA"), files this complaint against Defendants LEPRINO FOODS
3  COMPANY, LEPRINO FOODS DAIRY PRODUCTS COMPANY, and DOES 1 through 100,
4  inclusive ("Defendants").   Plaintiff's allegations are based upon information and belief and upon
5  investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are
6  based upon Plaintiff's personal knowledge.

7                          **JURISDICTION AND VENUE**

8    1.    The civil penalties sought by Plaintiff exceed the minimal jurisdiction limits of the
9  Superior Court and will be established according to proof.

10    2.    This Court has jurisdiction over this action under the California Constitution, Article VI,
11  section 10, which grants the Superior Court "original jurisdiction in all causes except those given by
12  statute to other courts."   The statutes under which this action is brought specify no other basis for
13  jurisdiction.

14    3.    This Court has jurisdiction over all Defendants because each defendant is a citizen of
15  California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the
16  California market to render the exercise of jurisdiction over it by the California courts consistent with
17  traditional notions of fair play and substantial justice.

18    4.    Venue is proper in this Court because, upon information and belief, the named
19  Defendants reside, transact business, or have offices in this county and the acts and omissions alleged
20  took place in this county.

21                               **PARTIES**

22    5.    Plaintiff DONALD NULL ("Plaintiff") is a citizen of the State of California.

23    6.    Defendants   LEPRINO   FOODS   COMPANY   and   LEPRINO   FOODS   DAIRY
24  PRODUCTS COMPANY ("Defendants") are corporations organized and existing under the laws of the
25  State of Colorado, and transact business throughout the State of California, including the County of
26  Kings.   At all relevant times, Defendants were the "employer" of Plaintiff within the meaning of all
27  applicable state laws and statutes.

28    7.    At all times herein relevant, Defendants and DOES 1 through 100, and each of them,

1

1  were the agents, partners, joint venturers, representatives, servants, employees, successors-in-interest,
2  co-conspirators and assigns, each of the other; and at all times relevant hereto were acting within the
3  course and scope of their authority as such agents, partners, joint venturers, representatives, servants,
4  employees, successors, co-conspirators and assigns; and that all acts or omissions alleged were duly
5  committed with the ratification, knowledge, permission, encouragement, authorization and consent of
6  each defendant designated.

7      8.    The true names and capacities, whether corporate, associate, individual or otherwise, of
8  defendants DOES 1 through 100, inclusive, are unknown to Plaintiff, who sues said defendants by such
9  fictitious names. Plaintiff is informed and believes, and based on that information and belief alleges,
10  that each of the defendants designated as a Doe is legally responsible for the events and happenings
11  referred to in this complaint, and unlawfully caused the injuries and damages to Plaintiff alleged in this
12  complaint. Plaintiff will seek leave of court to amend this complaint to show the true names and
13  capacities when the same have been ascertained.

14      9.    Defendants and DOES 1 through 100 will collectively be called "Defendants" or
15  "LEPRINO."

16                        **FACTUAL ALLEGATIONS**

17      10.   LEPRINO is a cheese producer. Plaintiffs and the other aggrieved employees work in
18  the Leprino Food East plant in Lemoore, California as production workers. Pursuant to state and
19  federal regulations and LEPRINO's internal policies, Plaintiff and the other aggrieved employees are
20  required to don and doff sanitary equipment and sanitize their hands when they enter and leave the
21  production floor. They must also wait in long lines to clock in and out and walk long distances from
22  the production floor to the break room. This causes Plaintiff and the other aggrieved employees to
23  work off-the-clock before and after their shifts and to not receive uninterrupted 30-minute meal
24  periods and 10-minute rest breaks.

25      11.   Additionally, Plaintiff and the other aggrieved employees were never completely
26  relieved of all duty during their meal period and rest breaks. They had to discuss work issues during
27  their meal period and rest breaks and were frequently called to work during their meal periods and rest
28  breaks by their radios, loud speakers, or in person. Plaintiff and the other aggrieved employees were

2

1    also not permitted to leave the premises during their meal periods and rest breaks.

2        12.    Finally, Plaintiff and the other aggrieved employees were required to sign on-duty meal

3    period agreements even though even though the nature of the work doesn't prevent them from being

4    relieved of all duty.

5    **FIRST CAUSE OF ACTION**

6    **(Violation of Labor Code sections 2698 et seq.)**

7    **(Against all Defendants)**

8        13.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 12, and every

9    part thereof with the same force and effect as though set forth herein.

10       14.    At all relevant times, PAGA provides that any provision of law under the Labor Code

11   that provides for a civil penalty to be assessed and collected by the LWDA for violations of the Labor

12   Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee

13   under the procedures outlined in Labor Code section 2699.3.

14       15.    Under PAGA, a civil action may be brought by an "aggrieved employee," who was

15   employed by the alleged violator and against whom one or more of the alleged violations was

16   committed.

17       16.    Plaintiff was employed by Defendants and the alleged violations were committed

18   against him during his time of employment and he is therefore an aggrieved employee.  Plaintiff is an

19   "aggrieved employee" as defined by Labor Code section 2699, subdivision (c).

20       17.    Under Labor Code sections 2699.3 and 2699.5, an aggrieved employee may pursue a

21   civil action arising under PAGA after these requirements have been met:

22           a.    The aggrieved employee shall give written notice by online filing

23                ("Employee's Notice") to the LWDA and the employer of the specific

24                provisions of the Labor Code alleged to have been violated, including the

25                facts and theories to support the alleged violations.

26           b.    The LWDA shall provide notice ("LWDA Notice") to the employer and

27                the aggrieved employee by certified mail it does not intend to investigate

28                the alleged violation within sixty (60) calendar days of the postmark date

3

of the Employee's Notice.  Upon receipt of the LWDA Notice, or if the LWDA Notice is not provided within sixty-five (65) calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action under Labor Code section 2699.

18.     On January 8, 2010, Plaintiff provided written notice by online filing to the LWDA and by certified mail to Defendants of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.   The LWDA did not respond to this notice.

19.     Plaintiff satisfied the administrative prerequisites under Labor Code section 2699.3, subdivision (a), to recover civil penalties against Defendants for violations of the Labor Code and the applicable wage order.

**Failure to Pay Minimum Wage**

20.     Labor Code sections 1194, 1197 and 1197.1 provide the minimum wage to be paid to employees, and the payment of a lesser wage than the minimum so fixed is unlawful.

21.     During the relevant time period, LEPRINO failed to pay Plaintiff and other aggrieved employees the minimum wage for all hours worked.  Plaintiff and the other aggrieved employees are required to perform various off-the-clock duties as described above.  Despite being aware of this, LEPRINO does not compensate them for this off-the-clock work.

**Failure to Pay Overtime**

22.     Labor Code sections 510 and 1198 require employers to pay their employees one and one-half times their regular rate of pay for all hours worked in excess of eight hours in a day and 40 hours in a week.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

23.     During the relevant period, Plaintiff and all other aggrieved employees regularly worked in excess of eight and/or 12 hours in a day and/or 40 hours in a week without overtime compensation.   Specifically, Plaintiff and the other aggrieved employees are required to perform various off-the-clock duties as described above.  Despite being aware of this, LEPRINO does not compensate them for this off-the-clock work.

4

**Failure to Provide Meal Periods**

24.    Labor Code sections 226.7 and 512 require employers to pay their employees one additional hour of pay at the employee's regular rate of pay for each workday that a meal period is not provided when it should have been.

25.    During the relevant period, LEPRINO failed to provide timely and uninterrupted meal periods and/or authorize and permit timely and uninterrupted rest breaks. LEPRINO did not provide Plaintiff and the other aggrieved employees with enough time to don, doff, sanitize, clock in and out, walk to and from the break room, and still be able to take 30-minute uninterrupted meal periods. LEPRINO's internal policies and procedures also do not provide Plaintiff and the other aggrieved employees with timely meal periods or the correct number of meal periods based on shift length. LEPRINO's internal policies and procedures also do not provide Plaintiff and the other aggrieved employees with a second 30 minute meal period when they work more than 10 hours a day. Additionally, Plaintiff and the other aggrieved employees must remain on-call and on-premises during their meal periods, so they are never completely relieved of all duty. Finally, the on-duty meal period agreements Plaintiff and the other aggrieved employees are required to sign are unlawful because the nature of the work doesn't prevent them from being relieved of all duty.

**Failure to Provide Rest Breaks**

26.    Labor Code sections 226.7 and 512 require employers to pay their employees one additional hour of pay at the employee's regular rate of pay for each workday that a rest break is not provided when it should have been.

27.    During the relevant period, LEPRINO failed to authorize and permit timely and uninterrupted rest breaks. LEPRINO did not provide Plaintiff and the other aggrieved employees with enough time to don, doff, sanitize, clock in and out, walk to and from the break room, and still be able to take 10-minute uninterrupted rest breaks. LEPRINO's internal policies and procedures also do not provide Plaintiff and the other aggrieved employees with timely rest breaks or the correct number of rest breaks based on shift length. Additionally, Plaintiff and the other aggrieved employees must remain on-call and on-premises during their rest breaks, so they are never completely relieved of all duty.

5

**Failure to Timely Pay Wages Upon Termination**

28.    Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable within seventy-two hours thereafter, unless the employee has given seventy-two hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

29.    Because LEPRINO failed to pay Plaintiff and other aggrieved employees overtime when they worked in excess of eight and/or 12 hours in a day and/or 40 hours in a week, failed to pay them minimum wage, and failed to pay them one additional hour of pay at their regular rate of pay when they were not provided meal periods or authorized and permitted to take rest breaks, the aggrieved employees were not paid all the wages that they were owed upon discharge.

**Failure to Timely Pay Wages During Employment**

30.    Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. Labor Code section 204 also requires that all wages earned for labor over the normal work period shall be paid by the payday for the next regular payroll period.

31.    As explained above, LEPRINO failed to pay Plaintiff and other aggrieved employees overtime when they worked in excess of eight and/or 12 hours in a day and/or 40 hours in a week, failed to pay them minimum wage, and failed to pay them one additional hour of pay at their regular rate of pay when they were not provided meal periods or authorized and permitted to take rest breaks. Accordingly, these wages were not paid timely pursuant to section 204.

**Failure to Provide Complete and Accurate Wage Statements**

32.    Labor Code section 226 requires employers to make, keep and provide true, accurate,

6

and complete wage statements. The violations of this section include, without limitation, the failure to include: (1) gross wages earned; (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission; (3) the number of piece-rate units earned and any applicable piece-rate if the employee is paid on a piece-rate basis; (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item; (5) net wages earned; (6) the inclusive dates of the period for which the employee is paid; (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

33. During the relevant time period, LEPRINO did not provide Plaintiff and other aggrieved employees with properly itemized wage statements. LEPRINO's paystubs failed to include overtime pay when Plaintiff and other aggrieved employees worked in excess of eight and/or 12 hours in a day and/or 40 hours in a week, minimum wage, and one additional hour of pay at their regular rate of pay when they were not provided meal periods or authorized and permitted to take rest breaks.

**Failure to Keep Accurate Business Records**

34. Labor Code section 1174, subdivision (d) requires employers to keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece-rate paid to, employees employed at the respective plants or establishments. These records shall be kept under rules established for this purpose by the

7

1  commission, but shall be kept on file for not less than two years.

2       35.    During the relevant time period, LEPRINO intentionally and willfully failed to keep
3  accurate and complete payroll records, including but not limited to, failing to keep, at a central
4  location in the State of California or at the plants or establishments at which employees are employed,
5  payroll records showing the hours worked daily by and the wages paid to, or the number of piece-rate
6  units earned by or any applicable piece-rate paid to, employees employed at the respective plants or
7  establishments. As explained above, LEPRINO failed to pay Plaintiff and other aggrieved employees
8  overtime when they worked in excess of eight and/or 12 hours in a day and/or 40 hours in a week,
9  failed to pay them minimum wage, and failed to pay them one additional hour of pay at their regular
10  rate of pay when they were not provided meal periods or authorized and permitted to take rest breaks.

11  **PRAYER FOR RELIEF**

12      WHEREFORE, Plaintiff prays for relief and judgment against Defendants, jointly and severally,
13  as follows:

14      1.    Under Labor Code section 2699, Plaintiff requests and may recover civil penalties from
15  LEPRINO.

16      2.    Under Labor Code section 2699, subdivision (i), the civil penalties recovered shall be
17  distributed: seventy-five percent (75%) to the Labor and Workforce Development Agency and twenty-
18  five percent (25%) to the aggrieved employees.

19      3.    Plaintiff is not seeking any sort of individualized (i.e., victim-specific) relief as
20  described in *Esparza v. KS Industries, L.P.* (2007) 13 Cal.App.5th 1228.

21      4.    Plaintiff seeks and may recover reasonable attorneys' fees and costs under Labor Code
22  section 2699.

23

24  Date: March 18, 2019                 **PARRIS LAW FIRM**

25

26                            By: _____

27                              John M. Bickford
                            Attorneys for Plaintiff
                            and the Aggrieved Employees

28

8

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by a jury.

Date:  March 18, 2019

PARRIS LAW FIRM

By: _____
        John M. Bickford
        Attorneys for Plaintiff
        and the Aggrieved Employees

9

COMPLAINT AND DEMAND FOR JURY TRIAL

# EXHIBIT 2

12:18
3/25/19

|  | SUM-100 |

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** LEPRINO FOODS COMPANY, a Colorado
**(AVISO AL DEMANDADO):** Corporation; LEPRINO FOODS DAIRY
PRODUCTS COMPANY, a Colorado Corporation; and DOES 1 through 100,
inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** DONALD NULL, in his representative
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** capacity under the Private
Attorney General Act ("PAGA")

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
3/18/2019 5:03 PM
Michelle S. Martinez, Clerk of Court
Superior Court of the State of California
County of Kings

*Heather Adams*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>Superior Court of California, County of Kings<br>1640 Kings County Drive<br>Hanford, California 93230 | CASE NUMBER:<br>(Número del Caso):<br>**19C-0104** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
R. Rex Parris (SBN 96567); Kitty K. Szeto (SBN 258136); John M. Bickford (SBN 280929); Ryan A. Crist (SBN 316653)
PARRIS LAW FIRM - 43364 10th Street West, Lancaster, CA 93534 ~~Clerk Of Court, Michelle S. Martinez~~ 949-2595

| DATE:<br>(Fecha)    3/18/2019 | Clerk, by *Heather Adams* Clerk of Court, Michelle S. Martinez | , Deputy |
|---|---|---|
| | (Secretario) | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).    Heather Adams

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☒ by personal delivery on (date): 3/25/19

| | | Page 1 of 1 |
|---|---|---|

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** LEPRINO FOODS COMPANY, a Colorado
*(AVISO AL DEMANDADO):* Corporation; LEPRINO FOODS DAIRY
PRODUCTS COMPANY, a Colorado Corporation; and DOES 1 through 100,
inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** DONALD NULL, in his representative
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* capacity under the Private
Attorney General Act ("PAGA")

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |
| **FILED**<br>3/18/2019 5:03 PM<br>Michelle S. Martinez, Clerk of Court<br>Superior Court of the State of California<br>County of Kings<br><br>*Heather Adams* |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

   *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER:<br>*(Número del Caso)*<br>19C-0104 |
| --- | --- |

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Kings
1640 Kings County Drive
Hanford, California 93230

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
R. Rex Parris (SBN 96567); Kitty K. Szeto (SBN 258136); John M. Bickford (SBN 280929); Ryan A. Crist (SBN 316653)
PARRIS LAW FIRM - 43364 10th Street West, Lancaster, CA 93534 Clerk Of Court, Michelle S. Martinez (661) 949-2595

| DATE:<br>*(Fecha)* | 3/18/2019 | Clerk, by<br>*(Secretario)* | *Heather Adams* | , Deputy<br>*(Adjunto)* |
| --- | --- | --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*   Heather Adams

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 3/26/19

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

# EXHIBIT 3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

R. Rex Parris (SBN 96567); Kitty K. Szeto (SBN 258136);
John M. Bickford (SBN 280929); Ryan A. Crist (SBN 316653)
PARRIS LAW FIRM - 43364 10th Street West, Lancaster, CA 93534
TELEPHONE NO: (661) 949-2595    FAX NO: (661) 949-7524
ATTORNEY FOR *(Name):* Donald Null

SUPERIOR COURT OF CALIFORNIA, COUNTY OF KINGS
STREET ADDRESS: 1640 Kings County Drive
MAILING ADDRESS: 1640 Kings County Drive
CITY AND ZIP CODE: Hanford, 93230
BRANCH NAME: Hanford Courthouse

CASE NAME: Null v. Leprino Foods Company

**FILED**
3/18/2019 5:03 PM
Michelle S. Martinez, Clerk of Court
Superior Court of the State of California
County of Kings

*[signature]*
Heather Adams

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 19C-0104 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:   DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* ONE (1)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 18, 2019

John M. Bickford, Esq.
_____
*(TYPE OR PRINT NAME)*

▶ *[signature]* John Bickford
_____
*(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
 Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
 Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
 Property Damage/Wrongful Death)
 Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
   Wrongful Death
 Product Liability *(not asbestos or
  toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice–
   Physicians & Surgeons
  Other Professional Health Care
   Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip
   and fall)
  Intentional Bodily Injury/PD/WD
   (e.g., assault, vandalism)
  Intentional Infliction of
   Emotional Distress
  Negligent Infliction of
   Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business
  Practice (07)
 Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
 Defamation (e.g., slander, libel)
  (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
   *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)
**Employment**
 Wrongful Termination (36)
 Other Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease
   Contract *(not unlawful detainer
   or wrongful eviction)*
  Contract/Warranty Breach–Seller
   Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
   Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
   Case
 Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
 Eminent Domain/Inverse
  Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
   domain, landlord/tenant, or
   foreclosure)*
**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
   Case Matter
  Writ–Other Limited Court Case
   Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
   Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
 Rules of Court Rules 3.400–3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of
   County)
  Confession of Judgment *(non-
   domestic relations)*
  Sister State Judgment
  Administrative Agency Award
   *(not unpaid taxes)*
  Petition/Certification of Entry of
   Judgment on Unpaid Taxes
  Other Enforcement of Judgment
   Case
**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
   harassment)*
  Mechanics Lien
  Other Commercial Complaint
   Case *(non-tort/non-complex)*
  Other Civil Complaint
   *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
 Partnership and Corporate
  Governance (21)
 Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
   Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
   Claim
  Other Civil Petition

# EXHIBIT 4

| SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF KINGS<br>1640 Kings County Drive  Hanford California  93230 | FOR COURT USE ONLY<br>CONFORMED COPY<br>ORIGINAL FILED ON<br><br>MAR 1 9 2019<br><br>MICHELLE S. MARTINEZ, CLERK OF COURT<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF KINGS<br>_____ ,DEPUTY |
|---|---|
| PLAINTIFF:  DONALD NULL | |
| DEFENDANT: LEPRINO FOODS COMPANY | |
| **NOTICE OF JUDICIAL ASSIGNMENT AND CASE MANAGEMENT<br>CONFERENCE** | CASE NUMBER:<br>**19C-0104** |

**TO ALL INTERESTED PARTIES:** Pursuant to the Standing Order Regarding Judicial Assignments, you are hereby notified that this case is assigned to **Kathy Ciuffini** for all purposes (i.e., motions, pre-trials, settlement conferences, trials, post review hearings).

You are further notified that a *Mandatory Case Management Conference* has been scheduled in this matter as set forth below.  All parties must be ready to discuss all issues described in California Rule of Court, Rule 3.728.

| Date: July 17, 2019 | Time: 8:15 AM | Department 10 |
|---|---|---|
| Address of the Court:  1640 Kings County Drive  Hanford California  93230 | | |

**Notice to Defendant[s]:** The Case Management Conference is not a trial.  You will need to preserve your rights by filing a written response within thirty [30] days of the date you were served with the Summons and Complaint.  You must also have the Plaintiff served with a copy of the response you file with the court.  A letter or phone call will not protect you.  Your written response must be in proper legal format if you want the court to hear your case.  There may be a court form that you can use for your response. If you do not do so, a judgment may be obtained against you.  If a judgment is obtained prior to the Case Management Conference date, the Case Management Conference will be cancelled.

Parties are also required to meet and confer no later than thirty [30] calendar days before the above-referenced case management conference date as required in California Rule of Court 3.728

It is the plaintiff's responsibility to notify all parties of the case management conference who are not otherwise listed on the attached proof of service by mail.

All requests for telephonic appearances must be requested in writing at least 10 court days prior to the scheduled hearing.

**No later than fifteen [15] days** prior to the date set above, each party must file a Case Management Statement (Judicial Council form CM-110). If two or more parties so desire, they may file a joint case management statement.

Dated: 3/19/2019

**Michelle S. Martinez**, Clerk of Court

_____

By: Heather Adams, Deputy Clerk

---

NOTICE OF JUDICIAL ASSIGNMENT AND CASE MANAGEMENT CONFERENCE
(Revised 04/08/16)

**PROOF OF SERVICE BY MAIL**
-o0o-

Superior Court of the State of California      }   Case Number:  19C-0104
County of Kings                        ss.     }

I hereby declare under penalty of perjury that I am employed by the Kings County Superior

Court, over the age of eighteen (18) years, and not a party to the within action.

That on <u>March 19, 2019</u> I served the attached by placing a true copy thereof, enclosed in a

sealed envelope and deposited at my place of business for collection and mailing with the United States

mail at Hanford, California, following our ordinary business practices with which I am readily familiar,

addressed as follows:

> **John M. Bickford**
> **Parris Law Firm**
> **43364 10th Street West**
> **Lancaster, CA 93534**
>
> **(Attorney to Plaintiff)**

Executed on <u>March 19, 2019,</u> at Hanford, California.

Michelle S. Martinez, Clerk of the Court

By: _HEATHER ADAMS_____

Heather Adams, Deputy Clerk

ATTACHED PROOF OF SERVICE

# EXHIBIT 5

 CT Corporation

**Service of Process Transmittal**
03/25/2019
CT Log Number 535166950

**TO:**     Jon B Alby, Attorney
            Leprino Foods Company
            1830 W 38th Ave
            Denver, CO 80211-2200

**RE:**     **Process Served in California**

**FOR:**    Leprino Foods Company  (Domestic State: CO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DONALD NULL, etc., Pltf. vs. LEPRINO FOODS COMPANY, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | SUMMONS, COMPLAINT, COVER SHEET, NOTICE, PROOF |
| **COURT/AGENCY:** | Kings County - Superior Court - Hanford, CA
Case # 19C0104 |
| **NATURE OF ACTION:** | Employee Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/25/2019 at 14:14 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 Calendar Days After This Summons and Legal Papers Are Served on You |
| **ATTORNEY(S) / SENDER(S):** | John M. Bickford
PARRIS LAW FIRM
43364 10th Street West
Lancaster, CA 93534
661-949-2595 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780112727160

Image SOP

Email Notification,  Jon B Alby  JALBY@LEPRINOFOODS.COM

Email Notification,  TRACY DANIEL  twelfringer@leprinofoods.com

Email Notification,  Richard Russeth  rrusseth@leprinofoods.com

Email Notification,  Susanne Jennings  sjennings@leprinofoods.com |
| **SIGNED:**
**ADDRESS:**


**TELEPHONE:** | C T Corporation System
818 West Seventh Street
Los Angeles, CA 90017
213-337-4615 |

Page 1 of  1 / AK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# EXHIBIT 6

 CT Corporation

**Service of Process Transmittal**
03/26/2019
CT Log Number 535174062

**TO:**  Jon B Alby, Attorney
Leprino Foods Company
1830 W 38th Ave
Denver, CO 80211-2200

**RE:**  **Process Served in California**

**FOR:**  Leprino Foods Dairy Products Company  (Domestic State: CO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DONALD NULL, ETC., PLTF. vs. LEPRINO FOODS COMPANY, ETC., ET AL., DFTS. |
| **DOCUMENT(S) SERVED:** | SUMMONS, COMPLAINT, NOTICE, PROOF |
| **COURT/AGENCY:** | Los Angeles County - Superior Court, CA<br>Case # 19C0104 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/26/2019 at 13:45 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 CALENDAR DAYS after this summons and legal papers are served on you |
| **ATTORNEY(S) / SENDER(S):** | R. Rex Parris<br>PARRIS LAW FIRM<br>43364 10th Street West<br>Lancaster, CA 93534<br>661-949-2595 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780108842329<br><br>Image SOP<br><br>Email Notification,  Jon B Alby  JALBY@LEPRINOFOODS.COM<br><br>Email Notification,  TRACY DANIEL  twelfringer@leprinofoods.com<br><br>Email Notification,  Richard Russeth  rrusseth@leprinofoods.com<br><br>Email Notification,  Susanne Jennings  sjennings@leprinofoods.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Page 1 of  1 / MB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# EXHIBIT 7

1 HANSON BRIDGETT LLP
  SANDRA L. RAPPAPORT, SBN 172990
2 srappaport@hansonbridgett.com
  LISA M. POOLEY, SBN 168737
3 lpooley@hansonbridgett.com
  MOLLY L. KABAN, SBN 232477
4 mkaban@hansonbridgett.com
  425 Market Street, 26th Floor
5 San Francisco, California 94105
  Telephone:   (415) 777-3200
6 Facsimile:   (415) 541-9366

7 Attorneys for Defendants
  LEPRINO FOODS COMPANY and
8 LEPRINO FOODS DAIRY PRODUCTS
  COMPANY

9

CONFORMED COPY
ORIGINAL FILED ON

APR 18 2019

MICHELLE S. MARTINEZ, CLERK OF COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF KINGS
_____ DEPUTY

10 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 **COUNTY OF KINGS**

12

13 DONALD NULL, in his representative
   capacity under the Private Attorney General
14 Act ("PAGA"),

15          Plaintiff,

16     v.

17 LEPRINO FOODS COMPANY, a Colorado
   Corporation; LEPRINO FOODS DAIRY
18 PRODUCTS COMPANY, a Colorado
   Corporation; and DOES 1 through 100,
19 inclusive,

20          Defendants.

21

22

Case No. 19C-0104

Assigned for All Purposes to the
Honorable Kathy Ciuffini
Department 10

**DEFENDANTS' ANSWER TO
COMPLAINT**

Action Filed:          March 18, 2019

23 <u>**GENERAL DENIAL**</u>

24     Defendants LEPRINO FOODS COMPANY and LEPRINO FOODS DAIRY PRODUCTS

25 COMPANY (collectively "Defendants"), under California Code of Civil Procedure §431.30(d),

26 generally deny each and every material allegation contained in Plaintiff DONALD NULL's

27 ("Plaintiff") Complaint and further deny that Plaintiff has suffered damages in the manner alleged

28 or in any amount as a result of the alleged acts and omissions of Defendants.

Case No. 19C-0104

## SEPARATE AND AFFIRMATIVE DEFENSES

Defendants assert the following separate and affirmative defenses to Plaintiff's complaint:

### FIRST DEFENSE

Plaintiff's Complaint does not allege facts sufficient to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent Plaintiff alleges claims barred by the applicable statutes of limitations, including but not limited to those set forth in California Code of Civil Procedure Section 340.

### THIRD DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent that they are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a), and to the extent the claims require interpretation of a collective bargaining agreement governing his employment.

### FOURTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, to the extent they have failed to exhaust the remedies provided under the internal grievance procedure, including final and binding arbitration, as required by the collective bargaining agreement governing his employment.

### FIFTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part, for failure to give timely and sufficient notice of the alleged statutory violations to the California Labor and Workforce Development Agency and to Defendants, as required by PAGA, California Labor Code section 2698 *et seq.*

### SIXTH DEFENSE

Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent for civil penalties under PAGA, California Labor Code section 2698 *et seq.*, are barred,

15388701.1

1  in whole or in part, to the extent they would result in duplicative recovery.

**SEVENTH DEFENSE**

3  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

4  represent for civil penalties under PAGA, California Labor Code section 2698 *et seq.*, are barred,

5  in whole or in part, to the extent they are unjust, arbitrary and oppressive, or confiscatory.

**EIGHTH DEFENSE**

7  Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

8  represent are barred, in whole or in part, to the extent the they are based upon actions barred by the

9  failure to exhaust administrative remedies required by the California Labor Code, including but

10 not limited to, California Labor Code section 2698 *et seq.*

**NINTH DEFENSE**

12 Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

13 represent are barred, in whole or in part, to the extent that Defendants acted in accordance with the

14 applicable law, state regulations, and applicable order of the California Industrial Welfare

15 Commission in effect during the relevant time periods.

**TENTH DEFENSE**

17 Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

18 represent are barred, in whole or in part, and/or recovery is precluded because Defendants' alleged

19 acts or omissions, if any, were made in good faith, not willful, not knowing and intentional, and

20 Defendants had reasonable grounds for believing that the alleged acts or omissions did not violate

21 any California Labor Code provision or any orders of the California Industrial Welfare

22 Commission.

**ELEVENTH DEFENSE**

24 Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

25 represent are barred by the principles of fairness and public policy relating to changes in the law

26 upon which Defendants relied during the relevant time periods.

**TWELFTH DEFENSE**

28 Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

-3-

1  represent are barred to the extent that the nature of the work prevented Plaintiff or "aggrieved

2  employee" from taking any off-duty meal periods during the relevant time periods.

### THIRTEENTH DEFENSE

4      Plaintiff's claims, and the claims of the other allegedly aggrieved employees he seeks to

5  represent, are barred, in whole or in part, because Plaintiff lacks standing to bring claims for civil

6  penalties under the Private Attorneys general Act (PAGA) on behalf of others to the extent such

7  claims are based upon actions for which neither he nor others are "aggrieved employees" as

8  defined under PAGA, California Labor Code section 2698 *et seq.*, and any other applicable

9  authority.

### FOURTEENTH DEFENSE

11      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

12  represent are barred, in whole or in part, to the extent that Plaintiff or any "aggrieved employee"

13  pursued any claim before the California Labor Commissioner, Division of Labor Standards

14  Enforcement, or the United States Department of Labor.

### FIFTEENTH DEFENSE

16      Plaintiff's claims are barred, in whole or in part, by the doctrines of res judicata, collateral

17  estoppel, or the doctrine barring duplicative litigation, to the extent that Plaintiff has asserted or

18  could have asserted the same or similar claims in any other judicial, administrative, or arbitral

19  forum.

### SIXTEENTH DEFENSE

21      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

22  represent are barred, in whole or in part, by the doctrine of consent.

### SEVENTEENTH DEFENSE

24      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

25  represent are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

### EIGHTEENTH DEFENSE

27      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

28  represent are barred, in whole or in part, by the doctrine of laches and/or unclean hands.

Case No. 19C-0104

15388701.1

DEFENDANTS' ANSWER TO COMPLAINT

1

### NINETEENTH DEFENSE

2   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

3   are barred, in whole or in part, to the extent that they failed to make reasonable efforts to mitigate

4   their damages, if any.

5

### TWENTIETH DEFENSE

6   Any request for equitable relief is moot in that conduct and activities of Defendants

7   conform to applicable law, state regulations, and applicable order of the California Welfare

8   Commission.

9

### TWENTY-FIRST DEFENSE

10   The claims for monetary relief by Plaintiff and the allegedly aggrieved employees he seeks

11   to represent are barred and subject to offset, in whole or in part, to the extent that the same or

12   similar claims are governed by orders, awards, or judgments issued in any other judicial,

13   administrative, or arbitral forum.

14

### TWENTY-SECOND DEFENSE

15   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

16   are barred, in whole or in part, to the extent that they were parties to any settlement agreements,

17   releases, or waivers of claims.

18

### TWENTY-THIRD DEFENSE

19   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

20   represent for monetary relief are barred and subject to offset, in whole or in part, to the extent that

21   they have received premium pay for any on-duty meal periods or any payments under Labor Code

22   Section 226.7.

23

### TWENTY-FOURTH DEFENSE

24   Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

25   represent for monetary relief are barred and subject to offset, in whole or in part, to the extent that

26   they have received premium pay for any on-duty rest periods or any payments under Labor Code

27   Section 226.7.

28   / / /

15388701.1

1

### TWENTY-FIFTH DEFENSE

2      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

3 represent for monetary relief based upon alleged violation of Labor Code Section 203 are barred

4 based on a good faith dispute as to whether any claimed premium pay was owed, and Defendants'

5 acts or omissions, if any, were not willful.

6

### TWENTY-SIXTH DEFENSE

7      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

8 represent are barred, in whole or in part, to the extent that Plaintiff and any "aggrieved employee"

9 worked pursuant to on-duty meal period agreements that they either executed individually or to

10 which their collective bargaining representative entered into on their behalf.

11

### TWENTY-SEVENTH DEFENSE

12      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

13 represent are barred, in whole or in part, to the extent that Plaintiff and any "aggrieved employee"

14 voluntarily waived their off-duty meal periods, including for workdays in which they worked six

15 hours or less, and for workdays in which they worked more than ten and no more than twelve

16 hours.

17

### TWENTY-EIGHTH DEFENSE

18      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to

19 represent are barred, in whole or in part, because Defendants have at all times acted reasonably

20 and in good faith with respect to their obligations under Labor Code Section 226 to make, keep,

21 and preserve adequate and accurate records of covered employees and the wages, hours, and other

22 conditions and practices of employment, Plaintiff and the allegedly aggrieved employees did not

23 suffer any injury within the meaning of Labor Code Section 226, and Defendants' alleged acts or

24 omissions, if any, were not knowing and not intentional.

25

### TWENTY-NINTH DEFENSE

26      Defendant Leprino Foods Dairy Products Company alleges that Plaintiff's claims and the

27 claims of the allegedly aggrieved employees he seeks to represent are barred, in whole or in part,

28 because at all material times Defendant Leprino Foods Dairy Products Company did not employ

1  Plaintiff or any "aggrieved employee," was not a single employer or joint employer of Plaintiff or

2  any "aggrieved employee," and was not an alter ego of Defendant Leprino Foods Company.

### THIRTIETH DEFENSE

4      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

5  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

6  United States Constitution's Fourteenth Amendment's procedural due process guarantee.

### THIRTY-FIRST DEFENSE

8      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

9  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

10  United States Constitution's Fourteenth Amendment's substantive due process guarantee.

### THIRTY-SECOND DEFENSE

12      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

13  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

14  procedural due process guarantee of the California Constitution.

### THIRTY-THIRD DEFENSE

16      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

17  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

18  substantive due process guarantee of the California Constitution.

### THIRTY-FOURTH DEFENSE

20      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

21  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

22  United States Constitution's Eighth Amendment's prohibition on excessive fines and unusual

23  punishment.

### THIRTY-FIFTH DEFENSE

25      Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

26  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

27  California Constitution's prohibition on excessive fines and unusual punishment.

28  / / /

15388701.1

1

### THIRTY-SIXTH DEFENSE

2        Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

3  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

4  United States Constitution's Fourteenth Amendment's guarantee of equal protection.

5

### THIRTY-SEVENTH DEFENSE

6        Plaintiff's claims and the claims of the allegedly aggrieved employees he seeks to represent

7  are barred because the Private Attorneys General Act is unconstitutional in that it violates the

8  California Constitution's guarantee of equal protection.

9

### RESERVATION OF RIGHTS

10        Defendants reserve their right to assert additional separate or affirmative defenses if

11  Defendants become aware of the existence of such defenses arising during the course of discovery.

12        WHEREFORE, Defendants pray as follows:

13        1.     That Plaintiff take nothing by this action;

14        2.     That judgment be entered in Defendants' favor;

15        3.     That Defendants recover costs in this proceeding, including reasonable attorneys'

16  fees; and

17        4.     That the Court grant such other and further relief as it deems appropriate.

18

19  DATED: April 18, 2019             HANSON BRIDGETT LLP

20

21                      By:    *Lisa M. Pooley*

22                         SANDRA L. RAPPAPORT

23                         LISA M. POOLEY
                             MOLLY L. KABAN

24                         Attorneys for Defendants
                             LEPRINO FOODS COMPANY and

25                         LEPRINO FOODS DAIRY PRODUCTS
                             COMPANY

26

27

28

15388701.1

1

**PROOF OF SERVICE**
*Null v. Leprino Foods Company, et al.*
**(Kings County Superior Court Case No. 19C-0104)**

2

3

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

4

　　At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is 425 Market Street, 26th Floor, San Francisco, CA  94105.

5

6

　　On **April 18, 2019**, I served a true copy of the following document(s) described as:

7

**DEFENDANTS' ANSWER TO COMPLAINT**

8

on the interested parties in this action as follows:

9

　　R. Rex Parris, Esq.　　　　　　　　　　*(Attorneys for Plaintiff)*
　　Kitty K. Szeto, Esq.

10

　　John M. Bickford, Esq.
　　Ryan A. Crist, Esq.

11

　　PARRIS LAW FIRM
　　43364 10th Street West

12

　　Lancaster, CA  93534

13

　　**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the person(s) at the address(es) listed above and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

14

15

16

　　I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

17

18

　　Executed on **April 18, 2019**, at San Francisco, California.

19

20

*Ann D. Ghiorso*
_____
Ann D. Ghiorso

21

22

23

24

25

26

27

28

15428867.1

Case No. 19C-0104

PROOF OF SERVICE

# EXHIBIT 8

1   HANSON BRIDGETT LLP
    SANDRA L. RAPPAPORT, SBN 172990
2   srappaport@hansonbridgett.com
    LISA M. POOLEY, SBN 168737
3   lpooley@hansonbridgett.com
    MOLLY L. KABAN, SBN 232477
4   mkaban@hansonbridgett.com
    425 Market Street, 26th Floor
5   San Francisco, California 94105
    Telephone:    (415) 777-3200
6   Facsimile:    (415) 541-9366

7   Attorneys for Defendants
    LEPRINO FOODS COMPANY and
8   LEPRINO FOODS DAIRY PRODUCTS COMPANY

9                     UNITED STATES DISTRICT COURT

10          EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

11

12  DONALD NULL, in his representative          Case No.
    capacity under the Private Attorney General
13  Act ("PAGA"),

14                 Plaintiff,

15          v.                                  DECLARATION OF ANA NICKS
                                                IN SUPPORT OF DEFENDANTS'
16  LEPRINO FOODS COMPANY, a Colorado           NOTICE OF REMOVAL
    Corporation; LEPRINO FOODS DAIRY
17  PRODUCTS COMPANY, a Colorado
    Corporation; and DOES 1 through 100,
18  inclusive,

19                 Defendants.

20

21

22

23

24

25

26

27

28
                                                              Case No.

15392948.1
          DECLARATION OF ANA NICKS IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

1   I, ANA NICKS, hereby declare that I have personal knowledge of the facts set forth herein

2   and, if called upon to testify, I would truthfully and competently testify to the following:

3   1.   I am employed by Leprino Foods Company ("Leprino") as Human Resources

4   Manager for Leprino's Lemoore East facility, a position I have held since January 2011  As

5   Human Resources Manager, I have overall responsibility for staffing, employee relations, labor

6   union relations, benefits and compliance.  I have personal knowledge of the facts recited herein.  If

7   called upon to testify, I could and would competently establish the facts set forth herein.

8   2.   As part of my job duties as Human Resources Manager, I have access to, and am

9   familiar with, business records, data and other information related to Leprino's employment of

10   employees represented by various labor organizations.  These records are created and maintained

11   by Leprino in the course of its regularly-conducted business activities, according to Leprino's

12   regular practices.

13   3.   Based on my review of business records maintained by Leprino Foods in the

14   ordinary course of business, Donald Null has been employed by Leprino since July 29, 1989.

15   During his employment with Leprino, Mr. Null has been, and still is, represented by a labor

16   organization, Teamsters Local Union No. 517 ("the Union") and employed pursuant to the

17   collective bargaining agreements between Leprino and the Union.

18   4.   As relevant here, a collective bargaining agreement by and between the Union and

19   Leprino Foods was entered into on January 1, 2014, and applied to work performed by covered

20   employees such as Mr. Null from January 1, 2014 through December 31, 2018.  Attached hereto

21   as **Exhibit A** is a true and correct copy of that 2014-2018 collective bargaining agreement.

22   5.   A collective bargaining agreement by and between the Union and Leprino Foods

23   was entered into on January 1, 2019, and has applied, and will apply, to work performed by

24   covered employees such as Mr. Null from January 1, 2019 through December 31, 2021.  Attached

25   hereto as **Exhibit B** is a true and correct copy of that 2019-2021 collective bargaining agreement.

26   6.   As part of my job duties as Human Resources Manager, I have access to, and am

27   familiar with, business records, data and other information related to Leprino's payroll for hourly

28   employees.  These records are created and maintained by Leprino in the course of its regularly-

DECLARATION OF ANA NICKS IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

15392948.1

1   conducted business activities, according to Leprino's regular practices.

2        7.      Based on my review of business records maintained by Leprino Foods in the

3   ordinary course of business and my own personal knowledge, hourly employees of Leprino at

4   Lemoore East are paid on a bi-weekly basis, every other Friday.  Since March 18, 2018, there have

5   been 30 pay periods.

6        I declare under penalty of perjury under the laws of the United States of America that the

7   foregoing is true and correct.  Executed on this 9ᵗʰ day of April, 2019 at Lemoore, California.

8

9

10                                                  ANA NICKS

DECLARATION OF ANA NICKS IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

# EXHIBIT A

AGREEMENT BETWEEN

LEPRINO FOODS COMPANY

LEMOORE, CALIFORNIA PLANT


AND


CREAMERY EMPLOYEES AND DRIVERS

TEAMSTERS LOCAL UNION NO. 517



January 1, 2014 through December 31, 2018

INDEX

| | Page |
|---|---|
| Arbitration -- Section 33 | 25 |
| Bereavement Leave -- Section 40 | 32 |
| Break-In Period -- Section 27 | 23 |
| Bulletin Board -- Section 20 | 21 |
| Discharge -- Section 13 | 11 |
| Dues Deduction -- Section 39 | 31 |
| Employment Practices -- Section 5 | 2 |
| Health and Welfare -- Section 15 | 12 |
| Holidays -- Section 7 | 7 |
| Hours of Work -- Section 6 | 2 |
| Job Bidding -- Section 18 | 17 |
| Jury Duty -- Section 34 | 27 |
| Leave of Absence -- Section 32 | 25 |
| List of Employees -- Section 23 | 22 |
| Maintenance of Bargaining Unit -- Section 4 | 2 |
| Management Trainees and Interns -- Section 30 | 23 |
| Meal Periods -- Section 22 | 21 |
| Night Work Pay -- Section 9 | 10 |
| On Call | Pages 4, 5, 9, 10, 15, 16, 18, 19 and 25 |
| Operation of Agreement -- Section 2 | 1 |
| Pay Days -- Section 28 | 23 |
| Performance of Work Covered by This Agreement -- Section 35 | 28 |
| Protective Clothing -- Section 26 | 22 |
| Recognition -- Section 1 | 1 |
| Relief Periods -- Section 12 | 11 |
| Remittance Advice -- Section 29 | 23 |
| Retirement Plan -- Section 16 | 13 |
| Schedule "A" Classification and Wage Rates | 34 |
| Seniority -- Section 17 | 14 |
| Severance Pay -- Section 37 | 28 |
| Sick Leave -- Section 31 | 23 |
| Signature Page | 33 |
| Term of Agreement -- Section 41 | 33 |
| Termination Notice -- Section 14 | 11 |
| Transfer of Company Title or Interests -- Section 36 | 28 |
| Transfer of Personnel -- Section 38 | 30 |
| Uniforms -- Section 11 | 11 |
| Union Affiliation and Preference of Employment -- Section 3 | 1 |
| Union Relations -- Section 24 | 22 |
| Vacation -- Section 8 | 8 |
| Visits to Plant -- Section 19 | 20 |
| Wage Reductions -- Section 21 | 21 |
| Wages and Classification -- Section 10 | 11 |
| Work in Two or More Classifications -- Section 25 | 22 |

LEPRINO FOODS COMPANY
AGREEMENT

January 1, 2014 to December 31, 2018

This Agreement made and entered into as of January 1, 2014 by and between **Leprino Foods Company,** hereinafter referred to as **"the Employer"** and **Teamsters Local #517,** hereinafter referred to as **"the Union".**   WITNESSETH that in consideration of the promises, it is mutually agreed as follows:

Section 1.          Recognition

A.      The Employer and the aforementioned Local Union each mutually recognizes the other as the sole agency for the purpose of collective bargaining for all employees working in Employer's listed plant in the classifications listed in SCHEDULE "A", attached hereto.

B.      Such employees shall be covered by the provisions of this Agreement; it being understood that additional classifications may be added in the manner set forth in said SCHEDULE "A", attached hereto.

C.      There shall be no discrimination of any kind against any employee on account of union affiliation or on account of the bona fide union activities of such union employees.

Section 2.          Operation of Agreement

This agreement shall operate as a direct contract between the Employer and Local Union mutually concerned.

Section 3.          Union Affiliation and Preference of Employment

A.      All employees covered by this Agreement, who are members of the Union on the date of execution of this Agreement or on the effective date of this Agreement whichever is later, shall as a condition of employment remain in good standing in said Union.  All present employees covered by Agreement who are hired hereafter shall become and remain members in good standing in the Union, as a condition of employment, on and after the thirtieth (30th) day following the beginning of their employment, the effective date of this Agreement or the date of execution of this Agreement, whichever is later.

B.      When new or additional employees are needed, the Employer will notify the office of the Union and the Union will furnish the Employer with a list of any experienced and qualified persons who may be available for work.

C.      The Employer may hire qualified persons from any source.

         Within seven (7) business days following the employment of a new employee, the Employer shall notify the Union in writing of the new employee's name, address, classification and date of employment.  Such notification shall be transmitted by a postcard furnished by the Local Union.  Such persons shall make application for and complete union membership subject to this provision.

D.      The Union agrees that it will designate a representative, who shall be authorized to receive applications for membership.  If any employee is not in good standing with

1

the Union, as provided herein, and the Union so notifies the Employer in writing, the Employer will discharge such employee within seven (7) days thereafter.

**Section 4.**   **Maintenance of Bargaining Unit**

Clerical work, which is being performed by bargaining unit employees, may be transferred only under the following circumstances: (1) to other bargaining unit employees; (2) in the case of a consolidation or centralization of the Employer's clerical functions by transfer to non-bargaining unit employees at another location of the Employer.

**Section 5.**   **Employment Practices**

A.   Neither the Employer nor the Union shall discriminate against any employee because of race, sex, religion, national origin, age, color, marital status, sexual orientation, status as a Vietnam Era Veteran, or physical or mental disability or on any other basis prohibited by federal, state or local law or ordinance. The Employer will reasonably accommodate any qualified applicants and employees with known mental or physical disabilities, as required by applicable state and federal laws, subject to the provisions of this Agreement. The Employer will consult with the Union in formulating reasonable accommodations, but retains the right to make the final determination.

B.   The Employer and the Union agree to full compliance with The Uniformed Service Employment and Reemployment Rights Act (USERRA) of 1994.

C.   In this Agreement when the masculine gender is used, it shall be deemed to include the feminine and vice versa.

**Section 6.**   **Hours of Work**

A.   Work Week. Not more than forty (40) hours shall constitute a week's work to be completed within five (5) days, Sunday through Saturday, each day consisting of 8 hours to be completed within 9 hours. The employer may establish a work day of eight (8) continuous hours. An alternative schedule may be established upon mutual agreement between the Company and the Union.

B.   1.   Time and one-half (1½) will be paid for all hours worked above eight (8) hours within nine and one-half (9½) consecutive hours in any one (1) day, or forty (40) hours in any one (1) week, whichever is greater. Any time worked in excess of nine and one-half (9½) hours in any one (1) day shall be overtime and paid for at the rate of two (2) times the straight time hourly rate.

2.   Double time will be paid for all hours (minimum of 2 hours) during which an employee is required to don a Level A Hazmat Suit (and so does) and responds to an unforeseen Hazardous Material situation, as directed by the Company.

C.   In lieu of the provisions of Paragraph A. and B. of this Section, the Employer may establish a work week, Sunday through Saturday, of forty (40) hours consisting of four (4) ten (10) hour days upon the following conditions:

1.   For all employees except Administration employees, ten (10) hours shall constitute a days work and shall be completed within ten and one-half (10½) hours; for Administration employees, ten (10) hours shall constitute a work

2

day and shall be completed within eleven (11) hours.

2.    All such employees shall receive three (3) days off each calendar week. At least two (2) of them shall be consecutive.

3.    For purposes of calculating holiday pay, sick leave pay, funeral leave pay and jury duty pay, a day, including a holiday, shall consist of ten (10) hours in any one (1) day.

4.    Twice the straight time hourly rate shall be paid for time worked in excess of ten (10) hours in any one (1) day.

5.    For all timed worked on his/her day off an employee shall be paid at the rate of twice his/her straight time hourly rate.

D.    For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Lab employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

E.    Posting Days Off and or Starting Time. Weekly work schedules shall be posted by noon on Thursday in advance of each workweek. The Company shall be responsible to notify employees of changes to the schedule after noon on Thursday. When an employee leaves the plant, he/she is not responsible to contact the Company; burden to notify the employee of a schedule change is the Company's responsibility. An employee whose starting time is to be delayed shall be notified of such change not less than eight (8) hours prior to the commencement of his/her regularly scheduled starting time.

When employees' scheduled starting time is changed after posting and while employee is still on premises, the supervisor will provide a written notice to the employee advising employee of such change.

1.    Any employee called to work prior to his/her starting time will be paid one-half time penalty pay up to his/her regular starting time.

2.    Overtime will be paid after eight (8) hours of work.

F.    Days Off. Any employee required to work on his/her scheduled day off shall be paid at the rate of two (2) times the straight time hourly rate for all time worked, unless the employee takes off another day during such work week for reasons other than the request of the Employer, or unless a change in work schedule results from a promotion or change of shift assignment pursuant to the operation of Section 17 and 18, hereof. In this event, new days off shall be scheduled to meet the new assignment and no penalty shall result from working a scheduled day off under the former assignment while affecting such a change.

○    VTOR, non-worked holiday, jury duty, bereavement, would be considered a worked day

○    TOR's, sick days, FMLA, family partnership, kin care, unavailable call-in's are not considered a worked day.

1.    When working a six (6) day schedule, the Company will attempt to schedule Sundays and/or Holidays as down days whenever possible.

3

2.  When working a seven (7) day schedule, the Company will attempt to allow employees to have at least two (2) weekends off every six (6) weeks whenever possible.

3.  In the event an employee is scheduled for overtime on the posted schedule or called in for overtime, with a 90-minutes notice without penalty, the overtime can be canceled and/or altered. Employer will verbally speak to the employee to cancel this overtime. In the event the overtime is not cancelled within the 90-minute notice, the employer will offer a minimum of four hours work to the employee.

G.  Minimum Hours.  Employees called to work, scheduled and reporting for work, or working four (4) hours or less in any day shall be offered a minimum of four (4) hours of work, and all employees working more than four (4) hours shall be offered eight (8) hours of work at their scheduled bracket or the higher bracket of the two. However, minimum hours shall not apply when the Employer does not receive ninety (90) minutes notification as prescribed in Section 31.L. The employee who is scheduled to fill a vacancy resulting in less than the ninety (90) minutes notification shall be paid the appropriate rate of pay for all hours actually worked to complete that shift's vacancy.

H.  Delays of Operations.  Any delays in operations caused by circumstances beyond the control of the Employer, such as failure of power, acts of God, bomb threats or break down of plant machinery or equipment, shall not require the payment of overtime, except to employees who may be continued at work during such delayed interval.

I.  Method of Spreading Work.  It is the policy of the Employer that the maximum proportion of bid-holding employees shall receive eight (8) hours daily and forty (40) hours weekly employment; that the principle of spreading work by reducing hours for all employees who perform like duties shall not be applied; and that, where feasible, days off will be scheduled consecutively.

J.  Call-Back.  Whenever an employee is called back to work after the close of his/her shift and before the commencement of his/her next shift, he/she shall be guaranteed a minimum of two (2) hours of work at the appropriate rate.  This Section shall apply only in the following circumstances:

1.  The employee has left the Employer's premises after the close of his/her shift (including overtime, if any); and

2.  The call-back begins more than two (2) hours before the commencement of the employee's next scheduled shift.

K.  The Employer may maintain an on call list of employees to fill vacancies.  This list may be comprised of bidholders and non-bidholders.  All the bidholders listed in seniority order shall precede the non-bidholders listed in seniority order.  On call employees may be scheduled on the weekly schedule for known vacancies to which they must adhere.  Senior qualified on call will be utilized first in regards to scheduling full workweeks; however specific assignments will be made according to the company's needs with consideration given to seniority and qualifications. When an on call employee is scheduled to work for five days, his/her days off shall be scheduled and he/she shall receive two (2) times the straight time rate of pay for working a scheduled day off.  If an on call employee is scheduled to work for less than five days, he/she shall have no scheduled days off and shall receive overtime

4

at the appropriate rate of pay after working forty (40) straight time hours. When necessary, the Employer may cancel scheduled work without penalty. When filling an unscheduled vacancy with an on-call employee on straight time and they decline or there is no response from the on-call employee within eight (8) hours, after three (3) such instances in a rolling four (4) week period, the employee will be terminated. Previous bid-holders, who are now on-call, would be exempt from this subsection.

L.    Refusal to Work Overtime. Qualified employee is defined as having all aspects of the JTPR completed and have any required certifications/licenses and have performed the job within the last twelve (12) months for the specific position completed for the job. Overtime is available to qualified employees only first who have signed the overtime list. It shall not be a violation of this Agreement or a cause for discharge or disciplinary action for an employee to refuse to work overtime, except as otherwise provided hereafter:

1.    Daily Overtime (Less than four (4) hours)

    a.    Offer overtime to employee performing the job.

    b.    In the event the overtime work is not assigned in accordance with sub-section (a) the Company will offer the overtime to the senior qualified employee in the department who is available at the time the overtime is to occur, provided he/she has signed the overtime list.

    c.    In the event the overtime work is not assigned in accordance with sub-section (a) and (b) the Company will require the qualified employee to perform the overtime work in reverse order of seniority working in the department who is available at the time overtime is to occur.

    d.    No employee will be required to work more than two (2) hours of daily overtime. For purposes of daily overtime, the on-call person is in the department where they are working.

    e.    If it is necessary to fill a full-shift vacancy as outlined below in L-2E, an employee may be required to work 4 hours of overtime to fill a full-shift vacancy. These four hours will count towards the 12-hour daily requirement.

    f.    No employee will be required to work more than 12 hours of daily overtime in any one workweek.

2.    Day-Off Overtime (vacancy for full shift – four (4) hours or more)

    a.    Schedule or call in a senior qualified employee who is on call and can work at the straight time hourly rate.

    b.    In the event the vacancy is not assigned in accordance with subsection (a) the employer will schedule or call in senior qualified employee in the department who is on a scheduled day off, has signed the overtime list, and has had seven and one-half (7½) hours rest before reporting for this shift and will have seven and one-half (7½) hours rest following this shift. Employees will only be allowed to work one shift per day off.

c.  In the event the vacancy is not assigned in accordance with sub-section (a) and (b), the employer shall offer the vacancy in seniority order to qualified employees on the overtime list.

d.  In the event the vacancy is not assigned in accordance with sub-section (a), and (b) and (c) the employer shall offer an additional four (4) hours to the employee performing the job where the overtime is to occur provided they have signed the overtime list and offer the next scheduled employee four (4) hours work prior to his/her regular scheduled shift provided they have signed the overtime list.  In the event the vacancy is not assigned in this manner, the Employer shall offer an additional four (4) hours in seniority order to qualified employees who have signed the overtime list on the shift where the overtime is to occur and offer to the next scheduled qualified employee in seniority order four (4) hours work prior to their regular scheduled shift provided they have signed the overtime list. Once all options have been exhausted above, and the employee has been asked to stay over four (4) hours, these four (4) hours cannot be retracted, unless agreed upon by employee staying over.

e.  If unable to fill the vacancy in accordance to sub-sections (a) - (d), the employer shall fill the vacancy by reasonable means.  An employee may be required to work up to four (4) hours of overtime.

f.  If the Maintenance Foreperson vacancy was without prior knowledge, the supervisor must:
    1. Ask the senior qualified mechanic on duty if he would like to assume the responsibilities of a foreperson.
    2. Should he/she decline, the next senior mechanic will be asked. This process is to be continued until the vacancy is filled.
    3. The acting foreperson will be compensated at the rate of time and one-half (1 ½) for all hours worked as a foreperson.

g.  If the Maintenance Foreperson absence has been scheduled, the following measures will be taken:
    1. The supervisor will ask the senior qualified mechanic on duty if he would like to assume the responsibilities of a foreperson for the dates of absence, before the end of the shift.
    2. Should he/she decline, the next senior mechanic will be asked. This process is to be continued until the vacancy is filled.
    3. The acting foreperson will be paid at foreperson rate.

h.  In accordance to the overtime process of this CBA agreement, if an employee is asked to cover as a supervisor helper, that employee will work the eight (8) hours and anything over the eight (8) hours would be offered to the person with the highest seniority and is qualified.

3.  In the event a bid-holder or foreperson is requested or required to perform a different job other than their daily scheduled job, they will be compensated at the rate of time and one-half (1½) for all regular hours worked on the different job.

4.  In the event of a vacancy, when any employee is requested or required to

6

perform, and is responsible for, a job(s) in addition to their daily scheduled job, they will be compensated at the rate of time and one-half (1½) for all regular hours worked while performing the assigned multiple jobs.

5. Overtime list shall be posted for a two week period every other week. Unclassified work will be assigned by location seniority.

M. If an employee (bid-holder) is going to be off work for more than a scheduled work week, management and union will meet and discuss and give due consideration to the senior qualified employee in that classification from a different shift. Upon agreement with the employee, the Company may schedule that employee to cover the vacancy as long as it can be scheduled at the time of the posting of the weekly schedule. The employee will be paid at the appropriate contractual rate of pay for the job performed. There will be only one lateral move. Foreperson position vacancies will be filled at the discretion of the Company.

If an employee is going to be off work but is not going to be off for more than a full scheduled work week, the Company will fill the vacancy through Section 6.L.2. of the collective bargaining agreement.

N. Industrial Injury. If an employee sustains an industrial injury and there is medical evidence that such injury prevented him from continuing work on the day of injury, he/she shall be paid for time worked on such day for not less than eight (8) hours or ten (10) hours, if so scheduled.

O. If an employee is regularly scheduled to return to work within seven and one-half (7½) hours after completing his/her regular straight time hours on any shift he/she shall be paid at the rate of time and one half (1½) for all hours worked within such seven and one-half (7½).

Section 7.        Holidays

A. The following holidays will be recognized for eligible employees as hereinafter defined:

New Year's Day
Martin Luther King Day (third Monday in January)
Washington's Birthday (third Monday in February)
Easter Sunday
Memorial Day (last Monday in May)
Fourth of July
Labor Day
Veteran's Day (as designated by the State of California)
Thanksgiving Day
Christmas Day

B. The day upon which the holiday falls shall be treated as the holiday for payroll purposes.

C. Whenever a holiday falls during an employee's vacation, he/she shall request an additional day off with pay or an additional day's pay. If the employee so designates that they wish to have an additional day off, it shall be granted consecutively with the employee's vacation or consecutively with a scheduled day off immediately before or after the vacation period within which the holiday falls. The request will be submitted no more than thirty (30) days in advance, but they must be requested by the Monday

7

before the work schedule is posted for the affected week. These requests will be approved/denied after reviewing all options available (straight time, split 4x4 and double time).

D.    To be eligible for the benefits provided by this Section, an employee must meet the following requirements:

    1.    He/she must work on his/her regularly scheduled work day next before and next after the holiday unless excused by the Employer, provided that an employee off work because of illness or injury shall be deemed to be excused by his/her Employer if he/she notifies his/her Employer of his/her illness prior to the commencement of his/her shift on the day on which he/she is unable to work.

    2.    He/she must work on the holiday if scheduled to work, unless excused by the Employer.

    3.    He/she must perform work during the seven (7) day periods immediately preceding or immediately following the holiday provided that this requirement shall not apply to employees covered by paragraph (H) of this Section.

E.    Eight (8) hour shift:  During each week in which a holiday falls, each eligible employee will receive eight (8) hours of pay at the straight time rate as holiday pay in addition to all other compensation earned by him under other provisions of this Agreement.  An eligible employee working on any of the above mentioned holidays shall be paid one and one-half (1½) times the straight time rate for time worked up to eight (8) hours and twice the straight time rate for work performed in excess of eight (8) hours.

F.    Ten (10) hour shift:  During each week in which a holiday falls, each eligible employee shall receive ten (10) hours of pay at the straight time rate as holiday pay in addition to all other compensation earned by him/her under other provisions of this Agreement.  An eligible employee working on any of the contractual holidays shall be paid one and one-half (1½) times the straight time rate for time worked up to ten (10) hours and twice the straight time rate for work performed in excess of ten (10) hours.

G.    Regular part-time employees working three (3) or less days a week shall not be entitled to pay for holidays not worked.

H.    Any employee working at the reduced rate provided for in Section 27 of this Agreement shall be ineligible for paid holidays during his/her first sixty-six (66) days actually worked.  If said employee works on a paid holiday, he/she shall be paid at the straight time rate unless otherwise eligible for premium pay.

I.    Any shift differential to which an employee is entitled shall be included in holiday pay.

<u>Section 8.</u>        <u>Vacation</u>

A.    The Employer shall grant paid vacations in accordance with the following schedule:

| Continuous Service | Weeks Paid |
|---|---|
| One (1) year | One (1) week |
| Two (2) years | Two (2) weeks |

| | |
|---|---|
| Five (5) years | Three (3) weeks |
| Ten (10) years | Four (4) weeks |
| Fifteen (15) years | Five (5) weeks |

The vacation period listed above shall be earned after the completion of the year or years of continuous service.

An employee shall be entitled to receive full vacation pay as set forth above if he/she has actually performed work for 2,000 hours during his/her vacation eligibility year. If an employee has completed a vacation eligibility year but has performed work for less than 2,000 hours during such year, such employee's vacation time shall be based upon his/her years of continuous service, but the amount of vacation pay to which he/she shall be entitled shall be determined by the ratio between 2,000 hours and the total hours actually worked by him during his/her vacation eligibility year. If an employee is on layoff at the time of completing his/her first vacation eligibility year, he/she shall not be eligible for vacation pay for that year, unless he/she is recalled to work while his/her seniority remains unbroken. The vacation eligibility year shall be the time between the employee's anniversary date of hire and one (1) year thereafter and in yearly periods thereafter.

B.    An employee may divide his/her vacation into five (5) periods. Whenever an employee splits his/her vacation, his/her location seniority preference in vacation selection shall be applicable.

Beginning with the vacation year of 2002, for employees with two or more weeks vacation, one week of vacation per year may be taken in single or multiple, maximum three consecutive days upon approval, paid vacation days. These paid vacation days may not be requested more than thirty days in advance; but, they must be requested by the Monday before the work schedule is posted for the coming week; however, emergency paid vacation days may be granted upon a 24 hours notice on a case-by-case basis. Such paid vacation days will have priority over any unpaid time off requests. Full week vacations have priority over single paid vacation days. Overtime may be worked to cover a single paid vacation day; but unpaid time off requests will not be covered by overtime. During the life of this agreement, necessary changes for the administration of this benefit will be made by the negotiating committee. Any unused paid vacation days will be paid out at the end of the calendar year. An employee may rollover up to a maximum of three single paid vacation days into the next year by written notification to the Human Resources Department by December 1.

C.    Vacation allowance shall be computed on the basis of the employees' straight time hourly rate during the week immediately preceding the commencement of the vacation plus any night work pay earned during such week. When night work is regularly rotated, the night work pay shall be pro-rated for this purpose.

D.    An employee who has completed one (1) or more years of continuous service with the Employer shall be entitled to pro-rated vacation pay upon having his/her seniority broken in the manner described in Section 17. An employee who fails to give the termination notice required in Section 14 shall not be entitled to such pro-rated vacation pay.

E.    For purposes of computing time worked during a vacation eligibility year, the following shall be counted as straight time hours worked: paid holidays not worked, paid vacation time and paid sick leave.

F.   If an employee's seniority is lost pursuant to Section 17, his/her accumulated service for purposes of vacation benefits is canceled.

G.   If called back to work during his/her scheduled vacation or if required by this Employer to completely forego a scheduled vacation, or any part thereof, an employee shall be paid at two (2) times his/her regular straight time rate of pay for all hours worked during said scheduled vacation. The employee shall reschedule the unused portion of his/her vacation in accordance with the provisions of this Section.

H.   An employee may not receive vacation pay in lieu of taking his/her vacation unless mutually agreed to between the Union and the Employer, and provided that in accordance with Section 16A, no pension will be paid on such vacation pay in lieu of taking vacation. If an employee receives vacation pay in lieu of taking their vacation, or a vacation switch is granted after the vacation relief schedule has been prepared, the employee will go to the bid-holders on-call list for the week(s) originally scheduled and be scheduled for work as their seniority and qualifications dictate and be paid at the appropriate rate of pay for jobs worked during that week(s). If such week(s) have not been selected by the vacation relief, the employee will continue to work their regularly scheduled job

I.   Schedules for the selection of vacation periods shall be posted no later than October 1 of each year. Employees who fail to select their vacation periods within thirty (30) days of the posting of the schedule shall forfeit their right to select a vacation period. Upon request of the Union made by February 1, the Employer shall furnish the Union with a copy of the vacation schedule as of that date. This Section shall also apply to vacation periods which become available after the posting of the vacation schedule.

On call employees will select their vacation in the department where the majority of hours are worked during the prior period from Aug 1 through July 31.

J.   Vacations shall be taken at the convenience of the Employer but due consideration will be given to an employee's request for time of vacation in accordance with location seniority within the department. The months of June, July, and August shall not be blocked out of the schedule. No employee shall be required to commence his/her vacation period without having been given thirty (30) days prior notice. If operating requirements permit, employees operating the same machinery may take vacations at the same time. An on-call employee's vacation selection will not close out a vacation week.

K.   New employees hired on or after January 1, 1994, will receive the choice between one of two vacation options. These options will be explained to the employee within the first 66 days of employment by representatives of the Company and Union. The option chosen will be binding for the life of their employment with Leprino Foods, Lemoore Plant.

1.   For employees hired after January 1, 1994, vacation time earned upon completion of an anniversary year may not be scheduled until the following calendar year; or,

2.   If the employee desires a vacation in the calendar year after they are hired, he/she may schedule one (1) week of vacation in the year they are hired to be taken the following calendar year. The employee will be paid in full unless vacation is taken prior to his/her anniversary date in which case vacation will

10

be pro-rated based on actual hours worked as of the date of vacation. Future vacations will be similarly calculated.

3. For the employees who choose option 2 above, they can also choose to have their balance of pro-rated vacation banked or paid on the first payroll following their anniversary date.

L. Any employee hired before January 1, 1994, who takes vacation prior to his/her anniversary date, shall receive whatever full days of prorated vacation pay he/she has earned as of the date of his/her vacation up to the amount of time taken off. Balance to be paid on the first payroll following their anniversary date.

Effective for 1998 vacations forward, employees can choose to have their balance of prorated vacation banked or paid on the first payroll following their anniversary date. The Employer will provide a form to employees to make their selections. Employees can change their selection on an annual basis if the change is submitted by July 1 to be effective for the following year.

M. An employee entitled to vacation pay shall, upon a request submitted at least seven (7) days prior to the commencement of the vacation period, receive his/her vacation pay at the commencement of the vacation period.

N. If an employee is off work because of disability immediately prior to the time his/her vacation is scheduled to commence, he/she may have his/her vacation rescheduled in accordance with the provisions of this Section, provided he/she so notifies his/her Employer before his/her vacation is scheduled to begin. The employee shall not have the right to interfere with the scheduled vacation period of another employee.

O. For the purpose of this section, the following departments are recognized: cheese, processing, whey, warehouse, lab, maintenance, Administration, and such departments as may be agreed upon by the employer and the Union. Maintenance will be split into two groups (1) Maintenance Mechanics and (2) all others.

## Section 9.    Night Work Pay

A. An employee working between 6 p.m. and 6 a.m. shall receive forty cents ($.40) per hour premium above the regular hourly rate. When an employee works more than fifty percent (50%) of a straight time shift between the hours of 6 p.m. and 6 a.m., he/she shall receive the work premium for the entire shift worked.

B. The shift premium is to be included as part of the regular hourly rate upon which overtime is calculated.

## Section 10.    Wages and Classifications

The minimum scale of wages to be maintained by the Employer during the term of this Agreement is as set forth in Schedule "A" attached hereto and incorporated herein and made a part of this Agreement.

## Section 11.    Uniforms

If an Employer requires his/her employees to wear a uniform, the Employer shall furnish and launder said uniforms.

11

Employees who are required to change into and out of uniforms will do so at the employer's designated locker room facilities. Employees will not be allowed to remove uniforms off the premises. Employees will be paid a total of 14 minutes of additional compensation for donning and doffing at the straight time rate for each shift worked. This compensated time is not considered hours worked.

### Section 12.        Relief Periods

The Employer agrees to provide adequate relief and rest periods of ten (10) minutes during the first half of the shift and ten (10) minutes during the second half of the shift. The employee will be entitled to an additional ten (10) minute rest period when they are working two (2) or more hours of overtime.

### Section 13.        Discharge

A.    No employee shall be discharged without just cause.

B.    Warning letters shall be effective for the purposes of further discipline for no more than one (1) year from the date of issuance.

C.    Whenever a regular employee becomes unable to perform the essential functions of his/her regular work, with or without reasonable accommodation, by reason of physical or mental disability, he/she shall be placed on a medical leave of absence upon the submission of medical certification of employee's functional limitations, onset of limitations, and probable duration.  Such leave shall continue while the employee is disabled, but no longer than the period of the employee's employment at the commencement of his/her disability or one (1) year, whichever is shorter, unless it is extended by the Employer.  Unless the employee returns to his/her job at the end of his/her medical leave of absence, his/her employment may be terminated without violating the provisions of this Section.

### Section 14.        Termination Notice

A.    Any employee who proposes to resign his/her position shall give one (1) week's notice to his/her Employer.

B.    The Employer shall give one (1) week's notice or one (1) week's salary in lieu thereof to an employee who is to be laid off or discharged, except that notice shall not be required when an employee is discharged for violation of Company rules posted on the bulletin board referred to in Section 20, provided that this exception shall apply only when the rules posted have previously been sent to the Local Union.

C.    One (1) week's notice shall not be required in the case of new employees, whether or not a member of the Union, for the first sixty-six (66) days actually worked.

D.    Any employee who fails to give the seven (7) days termination notice required herein shall forfeit no more than one (1) week of vacation pay.

### Section 15.        Health and Welfare

A.    Effective January 1, 2008, health and welfare benefits shall be provided by the Company through the Northern California General Teamsters (NCGT) Choice Plus Plan.

Employees will receive six (6) months of Health and Welfare coverage during a medical leave of absence, including the premium waiver by the NCGT Choice Plus Plan, provided the employee continues to make any required monthly contributions.

B.    The Company shall remit each month the full amount of the monthly contribution for each eligible employee in conformance with, and to be bound by, the Agreement and Declaration of Trust for the Fund.

C.    For purposes of this section, an eligible employee for whom the Company shall make a monthly contribution is an employee meeting the following qualifications:

    1.    The employee is on the company's payroll on the first (1st) day of the calendar month following the month for which the payment is being made, and;

    2.    The employee has worked at least eighty (80) hours during the previous calendar month. Holiday hours, vacation hours, funeral leave hours and jury duty hours, paid for but not worked, shall constitute hours worked for this purpose.

    3.    New employee will not be eligible for Health and Welfare benefits until they have completed six (6) months of qualifying hours (at least 80 hours worked per month).

D.    Effective January 1, 2008, current (non-retired) employees will make contributions to the Company toward their health and welfare coverage for any month in which a premium is paid by the Company, pursuant to the terms of Section 15D 1, 2 and 3 below. Employee contributions will be through payroll deduction; the employee shall be responsible for making payment by check or other method accepted by the Company. Employee contributions during the term of the Agreement will be made on a pretax basis, to the extent permissible by law, in the following amounts:

    1.    Effective January 1, 2014, employees will contribute the following percentage on a monthly basis of the total monthly contribution for the tenure of the contract – needed to maintain NCGT Choice Plus, through the term of this agreement:

| YEAR | % CONTRIBUTION |
|------|----------------|
| 2014 | 9% |
| 2015 | 12% |
| 2016 | 15% |
| 2017 | 17.5% |
| 2018 | 20% |

Employees electing to be in the Kaiser Plan would be responsible for 100% of any cost in excess of the Company's cost for Choice Plus PPO.

E.    Retired Employees' Hospital, Medical, Surgical Benefits:

The Company will make medical benefits available to eligible retired employees pursuant to the rules of the Teamsters Retiree Trust, with such retirees paying contributions established by the Trustees to fund their benefits, and the Company agrees to be bound by the Agreement and Declaration of Trust.

13

F.   An employee may be terminated for filing or causing a fraudulent claim to be filed.

G.   Both the Company and the Union agree that having healthy employees is in the best interest of the Company and the Union and as such, agree to continue and encourage voluntary participation in programs of good health and wellness. The Union agrees to work with the Company in developing programs that improve the Company's employees' health and well-being which may control or reduce the cost of the Fund.

The Company is concerned that the Fund could at some point during the term of this agreement become subject to federal excise taxes as a result of the application of certain provisions of the federal Patient Protection and Affordable Care Act, as may be amended from time to time (PPACA). If the Fund is at any time determined to be in a situation where excise taxes are applicable or likely to become applicable, the Union understands that would be a serious issue for the Company.

The Union agrees that during the term of this agreement if any excise tax becomes applicable to the Fund under the PPACA, the Company has the right to reopen this agreement for the limited purpose of renegotiating those provisions of the agreement related to the medical benefits discussed in Section 15 of the agreement to the extent necessary to eliminate the impact of any such excise tax on the Company.

Section 16.    Retirement Plan

A.   Commencing with hours worked on and after the dates hereinafter set forth, the Employer shall pay upon the following basis:

| Date | Basic Contribution Rate | Peer Contribution Rate | Total Contribution Rate |
|---|---|---|---|
| 01/01/14 | 3.29 | .21 | 3.50 |
| 01/01/15 | 3.33 | .22 | 3.55 |
| 01/01/16 | 3.38 | .22 | 3.60 |
| 01/01/17 | 3.43 | .22 | 3.65 |
| 01/01/18 | 3.47 | .23 | 3.70 |

The Employer shall provide the Program for Enhanced Early Retirement (PEER) to the Bargaining Unit Employees.  Total contribution to the WCTPTF shall be (Basic Rate + PEER Rate).

The contributions required to provide the Program for Enhanced Early Retirement will not be taken into consideration for benefit accrual purposes under the Plan.

14

The additional contribution for the PEER must all times be 6.5% of the basic contribution and cannot be decreased or discontinued at any time.

For the purposes of this Agreement, paid holidays and paid vacation time shall be counted as time worked but no payments shall be made on overtime hours.

No payments shall be made on vacation time paid in lieu of taking vacation, pursuant to Section 8H, unless the employee has not reached at least 2,080 hours by the end of the calendar year. Accordingly, at the end of each calendar year, the Employer will report pension contributions on all vacation hours including those paid in lieu of taking vacation up to a maximum of 2,080 hours worked per calendar year.

B.     It is mutually understood that all of the Employer contributions as provided herein shall be deductible from gross income under Section 404 of the Internal Revenue Code.

C.     All applicable federal and state laws pertaining to Taft-Hartley Pension Trusts will be observed.

D.     For probationary employees (part-time regular employees and full-time regular employees serving a probationary period), the Employer will pay an hourly contribution rate of ten cents ($0.10, including $0.01 for PEER/84) during the probationary period as specified in Section 17 (first sixty (66) days actually worked); but in no case for a period longer than ninety (90) calendar days from an employee's first day of hire. Contributions shall be made on the same basis as set forth in Section 16 of the Agreement. After the expiration of the probationary period as specified in Section 17; but in no event longer than ninety (90) calendar days from an employee's first date of hire, the contribution shall be increased to the full contractual rate.

## Section 17.        Seniority

A.     Location seniority shall be defined as an employee's most recent period of unbroken service at the plant or location of the Employer at which he/she is working.

B.     Department seniority is defined as an employee's most recent period of unbroken service at the location in the department in which he/she is presently working.

C.     Classification seniority is defined as an employee's most recent period of unbroken service in the classification in which he/she is working.

D.     If an employee's starting time is permanently changed by more than four (4) hours for fifty percent (50%) or more of the workweek, he/she may displace an employee with the least departmental seniority in his/her classification whose work he/she is able to perform.  The employee so displaced may exercise the same shift preference right.

    a.  In the event the employee's start time moves them into a different shift, the job will be rebid and the employee may exercise their bumping rights per Section F. Shift times are defined as: Day shift 4:00 am – 12:00 noon, Swing shift 12:00 noon – 8:00 pm and Night shift 8:00 pm – 4:00 am.

    b.  In the event the employee's wage (bracket) changes, the job will be re-bid and the employee may exercise their bumping rights per Section F.

    c.  If it is determined by LFC, the affected employee and the Union that the skills and responsibilities required of the position have changed substantially (fifty

percent (50%) or more), the position will be re-bid and the employee may exercise their bumping rights per Section F.

d.  Employees exercising their seniority rights per Section F shall have their bid rights restored with the exception of a bump pertaining to Section I - Temporary Work Stoppage.

E.  In the event of a reduction in force, the following procedures shall be applied, provided the employees in the department having seniority are capable of performing the remaining jobs. Bid-holders on-call whom are displaced due to a job elimination or temporary Meiji work stoppage, would be trained on job(s) requiring five (5) days or less of training, based on the needs of the business, in accordance with Section 6.1.

1.  When one of several jobs in the same classification on the same shift is to be eliminated, the employee in the classification on that shift who has the least location seniority shall be the employee whose job is to be eliminated.

2.  The employee whose job is to be eliminated shall have the option of exercising their seniority rights as outlined below or can elect to go to the on-call list.

3.  To implement F below, "walk-on capability" means that an employee previously and successfully held the job pursuant to a bid, assignment by the Employer, or by exercising seniority rights. The employee must demonstrate a present ability to perform the job adequately after a full shift orientation. (Orientation is not training.) An employee who fails to demonstrate such a present ability in the judgment of the Employer, subject to the grievance procedure, shall be placed on-call.

4.  In determining wage brackets, relief differentials shall be disregarded.

F.  The employee whose job is to be eliminated shall have the following seniority rights which shall be exercised in the order listed:

Walk-on capability applies to 1-15. Employees exercising their bump option will displace the employee with the least location seniority in the following order.

Step 7-15 -- any shift is defined as: employee's choice of shift.

Area is defined as working area (Production Dept has four areas: Cheese, Processing Whey and Warehouse. Lab Dept has two areas: Main and Melt. Maintenance has three areas: Mechanics, Parts and Utilities. Clerical is one area.)

If a vacation relief or day off relief employee's job is eliminated, he or she may select which shift among those to which he or she is assigned to exercise his or her bumping rights.

1.  Same shift, same wage bracket, same area
2.  Same shift, same wage bracket, same department
3.  Same shift, same wage bracket, at location
4.  Same shift, next higher wage bracket, same area
5.  Same shift, next higher wage bracket, same department
6.  Same shift, next higher wage bracket, at location
7.  Any shift, same wage bracket, same area

16

8. Any shift, same wage bracket, same department

9. Any shift, same wage bracket, at location

10. Any shift, next higher wage bracket, same area

11. Any shift, next higher wage bracket, same department

12. Any shift, next higher wage bracket, at location

13. Any shift, next lower wage bracket, same area

14. Any shift, next lower wage bracket, same department

15. Any shift, next lower wage bracket, at location

16. If the employee does not replace another employee pursuant to the provisions of Paragraph F1 through F15, he/she shall have the right to displace the employee with the least location seniority at the plant or location if he/she is capable of learning the job. The Employer, in his/her judgment, based upon all the facts, shall make a determination of the employee's capabilities of learning said job. If the employee is not capable of learning the job of the employee with the least location seniority, he/she shall be placed on call.

17. If the employee is to displace another employee, he/she shall be given a break-in period of ten (10) working days to assist the Employer in determining his/her capabilities.  The ten (10) working days may be extended up to an additional ten (10) days upon mutual agreement between the Company and the Union.

18. If no employee eligible for displacement is found, the employee whose job was eliminated shall be placed on call.

G   Any employee displaced by the operation of this Section shall himself exercise his/her seniority rights in the manner set forth above.

H.   The parties acknowledge the unique nature of the Meiji/P2 operations. For purposes of these operations only, Meiji/P2 will be considered to have had a temporary work stoppage if it is inactive for up to twelve (12) consecutive work weeks. If the operation is inactive for more than twelve (12) consecutive work weeks, the job will be considered eliminated. If there is a temporary work stoppage, the following will apply to Meiji/P2 bidholders and Meiji support personnel:

1. Receive no less than Bracket 2 for all hours worked.

2. Must return to Meiji/P2 once the operation reactivates.

3. Bid rights will be restored only 12 months from the original bid, or when the job is eliminated.

4. Will go, in seniority order, to the bid-holders on-call list and will be assigned work the employee is qualified to perform and/or would be trained on job(s) requiring five (5) days or less of training, based on the needs of the business, in accordance with Section 6.1. Bid-holders have preference over non-bidholders on the on-call list.

If the Meiji/P2 operation is eliminated, i.e., inactive for more than twelve (12) consecutive work weeks, the Meiji/P2 bidholders and Meiji support personnel may exercise seniority rights under Section 17F and bidding rights will be immediately restored.

17

I.    Temporary Work Stoppage.  With the exception of Meiji/P2 bidholders and Meiji support personnel, any bid job that is not scheduled for any one-week period is defined as a temporary work stoppage and is not considered a job elimination. Affected employees may exercise their seniority rights in Section F above, or they may go to the on call list as a bidholder.  Job bidding rights are not reinstated during this temporary work stoppage.  If job is eliminated, employees may exercise their seniority rights in Section F above and their bidding rights are restored.

J.    Seniority shall be broken if any employee quits, is discharged or is laid off for more than one (1) year or if any employee has failed to report back for work within three (3) calendar days after being notified to do so, provided that a written notice by registered or certified mail was sent to said employee at his/her last address on file with the Employer.

K.    An employee shall not acquire seniority during his/her first sixty-six (66) days actually worked; provided, that if an employee is employed more than sixty-six (66) days actually worked, his/her seniority shall commence with his/her date of hire. Employees who are assigned to a workweek consisting of four (4) ten (10) hour days shall acquire seniority after fifty-three (53) days actually worked.

L.    Seniority lists shall be submitted to the Union on request, but not more often than once every six (6) months.  Any question concerning the application of seniority under this Section may be reviewed as provided in Section 33 of this Agreement.

M.    When an Employer calls employees back to work after a layoff, said employees shall be called to work in order of seniority, provided the employee can perform the available work.

N.    For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Lab employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

O.    For purposes of this Section, area is defined as working area (Production Dept has four areas: Cheese, Processing Whey and Warehouse.  Lab Dept has two areas: Main and Melt.  Maintenance has three areas: Mechanics, Parts and Utilities. Clerical is one area.)

## Section 18.      Job Bidding

A.    Promotions to the job classifications of working Foreperson shall be made in the order of seniority if the employee having seniority is qualified to perform the job. The filling of vacancies in said job classification is excluded from the job bidding procedures as set forth herein.  However, when such vacancies occur, employees shall be advised by posted notice.  Any employee may express interest in this vacancy by submitting a written letter stating their desire and qualifications for consideration.  The Employer shall interview all interested employees that have submitted letters of interest and select the most senior employee that the Employer considers to be qualified. Forepersons who bid into another job and are either disqualified or decline that job bid, within the 10-day training period, will be allowed to return to their Foreperson appointed position.

B.    If an employee becomes disabled per the Americans with Disabilities Act, the employer will reasonably accommodate such qualified employee as required by applicable state and federal laws, subject to the provisions of this Agreement. The

Employer will consult with the Union in formulating reasonable accommodations, but retains the right to make the final determination.

C.  Temporary positions of ninety (90) days or less may be filled without reference to the provisions of this Section.  This period may be extended by agreement of the Employer and the Union.

D.  Any vacancy or job opening resulting from the reactivation of a job that was eliminated in the previous twelve (12) months shall not be subject to the bidding procedure, if the employee previously performing said job is eligible for recall to active employment, has not exercised bid rights, is currently in the employment of the Employer, and chooses to return to said job.

E.  Except as specified above, whenever vacancies occur in any job classification covered by this Agreement, said vacancies shall be filled in accordance with the procedures herein set forth:

   1.  All such vacancies shall be conspicuously posted for bidding at mutually suitable locations designated for this purpose within fifteen (15) days after they occur.  They shall be posted on a form which shall give the job titles or the principal job titles in the case of a combination job, requirements, hours, days off, location and wage rate of the job. If there are any changes from the previous job bid or duties of that job bid, it is agreed that Union and Employer will review bid prior to posting. Copies of jobs bids and awards will be provided to the Union.

   Disputes regarding requirements shall be resolved pursuant to Section 33. The vacancies shall be posted for a period of one hundred twenty (120) hours, and the bid form shall remain posted for seventy-two (72) hours after the end of the posting period.  The Employer shall retain completed bid forms for a period of two (2) years.  During this period the forms shall be available for inspection and copying by Union representative.

   2.  The job vacancy will be filled within sixty (60) days after the job has been awarded.  In the event that the Employer is unable to fill the job within this period, the circumstances will be reviewed with the Union and the time limit for filling the vacancy may be extended by mutual agreement. If the employee is not put on the job within 60 days, unless mutually agreed to extend due to no fault of the employer, employees' bid rights will be restored. Employee must go to the new job unless he exercises his restored bid rights to go to another job.

      a.  Once an employee is awarded a new bid job, the employee will be moved immediately, if possible, for a period of no more than ten (10) days (or longer if mutually agreed to by Local 517 and LFC) to satisfy the terms of Section 18E-7 of the CBA. The initial ten (10) day period will be uninterrupted. After this period, a mutual decision is made to determine: (1) If the employee qualifies for the position, and/or (2) If the employee accepts the new job bid or chooses to return to his/her former job bid.  If the employee qualifies and accepts the new bid, the process then begins of back filling and training to replace the employee.  The employee may be placed back in their original job bid at the new rate of pay (or same pay if the new bracket is less).

      If the employee fails to qualify or chooses to return to their former job bid, the employee loses bid rights per contract and the next senior

19

qualified eligible bidder goes through the same process. If an employee elects to decline the awarded job bid, they shall do so in writing on a form provided by the Employer, prior to the end of their 10-day (or extended) training period.

b.    If an employee is on a LOA at the time they are awarded a job bid, they will have two options:

Option 1:    If they accept the job bid within 30 days from the date of the award, that is their job and the bid process continues. Upon their return, they begin their 10-day training. If disqualified, they will go to the on-call list. The employee loses bid rights per contract.

Option 2:    If the employee declines Option 1, they have up to 90 days from the date of the initial bid award to be fully released to perform the essential functions of the job and commence their 10-day training. If disqualified, they return to their previous job. If the employee is not released within the 90-day period to commence their 10-day training, they are disqualified from the awarded job and keep their previous job bid. The employee loses bid rights per contract and the next senior qualified eligible bidder is awarded the job bid.

If any employee elects to decline an awarded job bid, they shall do so in writing on a form provided by the Employer, prior to the end of their 10-day (or extended) training period.

c.    If the employee has not started the 10-day training period within 45 days of being awarded the bid, and the awarded employee turns the job bid down, the next senior eligible bidder will be given the opportunity to accept or decline the job bid. If the second employee declines, they will not lose bid rights. This process will continue, in seniority order, until the first senior eligible person accepts the job bid. If everyone declines, the job bid will be re-posted.

3.    For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Laboratory employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

4.    The Employer shall give consideration to any bid made by any employee who has been employed a minimum of 90 calendar days; however; the employer shall not give consideration to any bid made by an employee who has successfully bid on a job within the preceding twelve (12) month period, unless such employee's days off are changed or his/her starting time or length of shift is changed by more than two (2) hours on two (2) or more days per week or an employee has met the ninety (90) days Class A requirement but failed to qualify.

5.    Only bids submitted within the one hundred twenty (120) hour period during which the vacancy was posted shall be considered by the Employer.

6.   The job vacated by the employee successfully bidding on a posted vacancy shall be posted and filled in accordance with the provisions of the Section (Bid #2); the job vacancy thereby resulting shall be posted and filled in accordance with the provisions of the Section (Bid #3). The 4th bid will be posted and awarded to the senior on-call person who has signed the bid and has bidding rights. If no on-call employee with bid rights signs the #4 bid, the senior employee on the on-call list in that department will be assigned the position. They will retain bidding rights, but they must qualify for the position as per Section 18E7 of this Agreement. If they fail to qualify, they will lose seniority rights and their employment will be terminated. Foreperson position openings that result from this bid process will be counted in this 4th bid give-away procedure.

In the event a fourth bid job is an A shift or any bid job with "Saturday-Sunday" scheduled days off position, the bid will be awarded pursuant to Section 18 guidelines of qualifications, eligibility and seniority. The resulting vacancy created by this fourth bid A shift or weekend off position will then be awarded by the employer per the 4th bid procedure above.

Shift A is defined as any job starting between the hours of 4:00 a.m. and 12:00 p.m.

On a first, second or third job bid where there are no eligible bidders, it will be assigned in the same manner as the #4 bid.

All jobs will be awarded, including the fourth bid in succession, and will be subject to the twelve-month lockout.

7.   The bidder having location seniority shall be awarded any job required to be submitted to bid pursuant to the provisions of this Section, provided the bidder is capable of performing the job.  If a successful bidder fails to qualify during his/her first ten (10) working days on said job, he/she shall be restored to his/her former job and the bid job shall be awarded to the next senior bidder on the original posting, provided he/she is capable of performing the job.  During the period the successful bidder is qualifying, his/her former job may be temporarily filled without regard to the bidding procedure.  A bidder who is awarded a job and fails to qualify shall be considered a successful bidder.  The ten (10) working days may be extended up to an additional ten (10) days upon mutual agreement between the Company and the Union.

8.   Whenever no bids are submitted for a job opening or whenever no employee submitting a bid is capable of performing the job (for example, maintenance, lab, clerical), and all provisions of Section 18E6 have been met, the Employer may select an employee to fill such job without regard to the provisions of this Section.

9.   Positions which are filled shall not be rebid unless the skills or responsibilities required of the position change substantially. LFC and Union will meet and review to determine if there has been a substantial change, when necessary.

F.   1.   Vacation Relief bids, that are limited to those bid positions covering multiple shifts that may have varying or rotating days off, will have the option of locking in their bid for an initial three-year period (and subsequent one-year

21

periods) and receive a premium as described below. The premium will only be applicable to those Vacation Relief employees who do lock in their bid. Present Vacation Relief bid holders may, at their option, lock in their present bid for an additional three years, thus becoming eligible for the premium. At any time a Vacation Relief employee who previously elected not to lock in his/her bid wishes to do so, he/she will immediately become eligible for the premium; provided he/she locks in for an initial three-year period. Once the initial three-year lock-in period requirement has been satisfied, subsequent lock-in periods will be one year increments provided the individual has not left the previously locked-in bid position. In the event a Vacation Relief employee leaves their position and subsequently returns to a Vacation Relief position and elects to lock in, they would then start over with the initial three-year lock-in period.

2.      A lock-in premium of $.25 per hour will be paid for all hours worked, including vacation and holiday hours, for the first year. Beginning the second year of lock-in, he/she will be paid $.50 premium for those hours worked, including vacation and holiday hours, For the third year hours and all succeeding years he/she will be paid a lock-in premium of $.75 for all hours worked, including vacation and holiday hours. Further, the amount of the lock-in premium will be determined by considering the number of continuous years in the current Vacation Relief position.

## Section 19.      Visits to Plants

Visits by Union Representatives.  An authorized representative of the Union shall have access to the Company's plant at reasonable times, provided such representative:

A.      Informs management of his/her visit upon arrival;

B.      Confines his/her activities to collecting dues, observing the application of this Agreement, and adjusting grievances; and

C.      Carries out his/her activities without unreasonable disruption of work schedules or unnecessary loss of employee's time.

## Section 20.      Bulletin Board

Notice of Posting and Distribution.  The Union shall be provided with a bulletin board at each time clock; notices posted shall be restricted to:

A.      Union recreational and social activities;

B.      Union elections and results, appointments of Union representatives;

C.      Union meetings; and

D.      Other subject matter mutually agreed upon by the Union and the Company.

Prior to posting or distributing a notice, a copy shall be submitted to the plant manager.

22

Section 21.          Wage Reductions

No employee shall suffer reduction in wages or loss of working conditions through adoption of this Agreement.

Section 22.          Meal Periods

A.     Each employee shall be granted meal time off not sooner than two and one-half (2½) hours and not more than five (5) hours after the beginning of his/her shift. Meal periods are unpaid.

B.     Employees may waive their meal period if they work a shift that is not longer than 6 hours.  Otherwise, all work performed after five (5) consecutive hours without receipt of meal time off shall be compensated with penalty pay equal to the greater of (i) one hour of regular rate of pay or (ii) half time in addition to the scheduled rate of pay up until the time the employee takes his/her meal period. Whenever possible, employees must notify their supervisor or a supervisor in advance any time they are unable to take their meal period prior to 5 hours after the beginning of his/her shift.

C.     Where the nature of the work prevents an employee from taking an off-duty meal period, the Employer may schedule a shift of eight (8) continuous hours by written mutual agreement with the Union and the affected employee.  In that situation, the meal period shall be considered an on-duty meal period which shall be paid time.

D.     No employees of Leprino Foods, Lemoore East plant work paid lunches unless job bids so state, and/or mutual agreement between the Company, the Union and the affected employee.  The Company and the Union agree that all employees are provided with and are expected to take a 30-minute off-duty meal period for every 5 hours worked.  Employees in the following positions have historically chosen to work through meal breaks: Processing Sanitation, Cheese Sanitation, Forepersons, Whey Department and 3rd Shift Warehouse.  If these employees choose to work through their meal periods, they will be paid for the time worked, but will not receive penalty pay.  At no time will any employee be required to work through a meal period.  No employee is permitted to work through his or her second meal period if he or she works more than 10 hours and did not take a first meal period.  Employees in other positions that have not historically chosen to work through meal breaks will not generally be permitted to choose to work through a meal period.

Section 23.          List of Employees

Periodically or upon request, but not more often than once every three (3) months, the Employer shall furnish the Union with a complete list of employees, the classification of each and pay of each.

Section 24.          Union Relations

23

A.   Right of the Parties.  The Company retains all rights, except as those rights are limited by the subsequent Sections of the Agreement and in the Supplemental Agreements, which are part of this Agreement.  Nothing in this Agreement shall be construed to impair the right of the Company to conduct all its business in all particulars except as modified by subsequent Sections of this Agreement.

    1.   The Union has all rights, which are specified in the subsequent Sections of this Agreement and the Supplemental Agreement which are part of this Agreement, and retains all rights granted by law except as such rights are limited by provisions of this Agreement.

    2.   It shall not be a violation of this Agreement, and it shall not be a cause for discharge or disciplinary action if an employee refuses to cross a primary lawful picket line established at the Lemoore plant which has been sanctioned by the appropriate Joint Council.

B.   Strikes and Lockouts.  During the life of this Agreement, there shall be no lockout and there shall be no strikes of any kind (including sympathy strikes, unfair labor practices strikes, politically motivated strikes, work stoppages and slowdown) picketing boycotts, deliberate withholding of production, interference with or suspension of work, regardless of whether the conduct is in protest of the actions of a party or non-party to this Agreement and regardless of whether the matter or actions precipitating the conduct are resolvable under the grievance process.

    1.   The Company shall not lockout the employees and the Union shall not authorize, call, encourage, or assist the conduct prohibited above.  Further the Union shall exert its best effort to bring about the immediate termination of any such conduct.

C.   The parties recognized the right of the Company to take disciplinary action, including discharge, against any employees who participate in violation of this Section, whether such action is taken against all or only some of the participants provided that the Company articulate a business reason.

### Section 25.      Work in Two or More Classifications

All employees whose work regularly falls in more than one (1) bracket shall be paid a rate mutually agreed upon between the Employer and the Union.

### Section 26.      Protective Clothing

A.   The Employer will provide parkas, protective headgear, gloves and foot gear necessary to perform work in a sharp room.  A sharp room is defined as a room in which temperature is normally kept at less than 32 degrees Fahrenheit.

B.   The Employer will provide to each eligible plant employee appropriate footwear under the following conditions:

    1.   The manufacturer, supplier and style of footwear is to be determined by the Employer.

    2.   No employee is to appear on the job without such footwear where so required by the Employer.

24

3.  No employee shall wear the footwear supplied by the Employer except on the job.

4.  Where rubber boots are required, the Company shall be notified no less than seven (7) days in advance of the time new boots are required.

5.  The Company will provide appropriate footwear as needed and within the guidelines agreed to at Joint Labor Relations Committee Meetings.

6.  The Company will issue boots of proper size.

## Section 27.        Break-In Period

All new employees hired may be employed at a rate of pay 30% less than the classification rate for the first six months; at a rate of 25% less than the classification rate for the second six months; and at a rate of 20% less than the classification rate for the third six months.

100% of classification for work performed beginning, with the first pay period following eighteen (18) months of employment.

In the event a new employee under the break-in rate is awarded a bid job, upon the successful completion of the bid qualification, will move to full pay for the bid job awarded. In the event the employee loses this bid job by no fault of their own, he/she shall be deemed to have completed the break-in period.

## Section 28.        Pay Days

All employees covered by this Agreement shall be paid in full on a bi-weekly basis.

## Section 29.        Remittance Advice

It shall be possible to determine from the stub accompanying an employee's paycheck the following items: regular hourly earnings, overtime earnings, social security deduction, disability insurance deduction, withholding tax and any other deduction authorized by the employee.

## Section 30.        Management Trainees and Interns

Employer and Union mutually agree that the Employer may employ Management trainees and interns to learn the operations of the business. In so doing, the trainees and interns will not displace or deny work opportunities to any bargaining unit employees.

Management trainee is defined as an exempt level employee training for a supervisory position and an intern is defined as a college student conducting project-based studies during a specific period of time.

The Union shall be informed of all trainees and interns in the facility and will meet with the Company to discuss if any issues/concerns arise.

## Section 31.        Sick Leave

Every employee covered by this Agreement shall be entitled to sick and accident leave benefits under the following conditions:

A.   1.   Benefits shall be earned at the rate of four (4) hours per month up to a maximum of forty-eight (48) hours in any contract year.  Benefits can be accumulated to a maximum of four hundred (400) hours.

2.   An employee who has perfect attendance during the twelve (12) month period between December 1 and November 30 and has accrued over 400 hours of sick leave as of November 30 will receive a perfect attendance bonus equivalent to one hundred percent (100%) of the employee's hourly rate for each hour over 400 hours accrued.  Perfect attendance means working all scheduled time of every scheduled day except for vacations, holidays, jury duty, funeral leave and time missed with the approval of the Employer.

An employee who has less than perfect attendance during the twelve month period between December 1 and November 30 and has accrued over 400 hours sick leave as of November 30, will receive a bonus equivalent to 50% of the employee's hourly rate for each hour over 400 hours accrued.

3.   Any employee retiring during the year will be paid at prorated amount under Section A. 1. or 2. above.

B.   Employees shall start earning sick leave benefits as follows:

1.   A newly hired employee who has not worked under this Agreement during the previous twelve (12) months is not eligible to earn sick leave benefits until ninety (90) days after the commencement of his/her employment and having worked eighty (80) hours in the previous month.

2.   An employee who returns to employment within twelve (12) months will start earning sick leave benefits the first day of the month following employment and having worked eighty (80) hours in the previous month.

3.   An employee who returns to employment after twelve (12) months is not eligible to earn sick leave benefits until ninety (90) days after the commencement of his/her employment and having worked eighty (80) hours in the previous month.

C.   Sick benefits shall be payable from the first full day of absence due to illness or injury. First day off is defined as the first full day of scheduled work missed.

D.   Sick benefit payments, including disability insurance or worker's compensation payments, for any week, shall not exceed an employees normal straight-time weekly earnings, including shift differential, if any.

E.   Sick benefits are payable only for any employee's regularly scheduled work days on which he/she is off sick.

F.   The Employer will require a doctor's certificate or other satisfactory proof of illness, accident or return to work, when the absence is more than three days.  Other than in connection with FMLA, or similar laws, the employer will not require a doctor's certificate for absences of three days or less.

G.   Sick leave benefits shall accrue only for employees who work eighty (80) hours or more in a calendar month.

26

H.   Any employee found to have willfully abused the sick leave provisions shall be subject to immediate dismissal.

I.   Benefits shall not be payable for any period more than twenty-one (21) days prior to the filing of a claim as hereinafter prescribed. Benefits shall be paid within thirty (30) days after the filing of a valid claim. If an Employer has to pay a valid claim within the time set forth in this Section, liquidated damages shall be added to the valid claim in an amount equal to ten percent (10%) thereof, provided that if the request is made for submission of the validity of the claim to an Arbitration Board or Arbitrator pursuant to Section 33, the time between making the request and final determination of validity shall not count as part of the thirty (30) day period.

   1.   Claims shall be filed in writing with a designated management representative at the employees place of employment. The employee shall receive for his/her use a copy of the claim form filed;

   2.   For purpose of this Section, a claim shall be deemed valid unless a request is made for an Arbitration Board within thirty (30) days of the filing of the claim.

J.   If an employee is absent on account of sick leave more than five (5) working days, he/she shall notify the Employer no later than the close of his/her regular shift next preceding the day on which he/she will be able to return to work, before the Employer shall be obligated to restore him to the job.

K.   A record of the sick leave benefits accumulated by an employee shall be furnished to the Union by the Employer upon receipt of written request therefore.

L.   Absence Notification. The employee shall notify the Employer, in a manner prescribed by the Employer, of the employee's expected absence no later than ninety (90) minutes prior to commencement of his/her required start of shift. Failure to comply with the notice requirement of the preceding sentence shall subject the employee to disciplinary action.

M.   When an employee is on the bid holder's on call list or the on call list and is called in for unscheduled work and the employee declines the work the employee will not be paid sick leave. The employee is declining work and not entitled to sick pay.

Unscheduled is defined as work that is to be performed in the same day the employee is called.

## Section 32.   Leave of Absence

Leaves of absence shall be granted only upon written approval of the Employer and the Union. A copy of the written approval shall be furnished to the Union and to the employee.

## Section 33.   Arbitration

A.   It is the desire of the parties to this Agreement that all disputes arising out of the Agreement shall be settled amicably. For this purpose, it is hereby agreed that the procedure set forth below shall be followed to facilitate such settlement.

B.   A concern raised by the Union shall be presented in the following manner:

   1.   Step One. The employee (with or without a Steward) will meet with his/her Supervisor or Department Manager to discuss their concern and will do so

27

within ten (10) days of the time the concern first came to the attention of the employee or should have, in the exercise or reasonable diligence, come to the attention of the employee.

2.   Step Two. If Step One has been timely invoked and the concern has not been resolved within five (5) days after receipt of Supervisors or Managers response, the employee and the Union (Business Agent) will notify the Plant Manager or his designee of an unresolved concern and schedule a meeting to attempt to resolve the matter within 15 days of such notice.

3.   Step Three. If Step Two has been timely invoked and the concern is not resolved within five (5) days after it was presented to the Plant Manager, the Union must file a formal grievance in writing to the Plant Manager and Plant Human Resources Manager within 15 days.

The formal written grievance shall set forth the following information as a minimum:
a.   The name and location of the Employee involved;
b.   The substance of the grievance including the date when it occurred;
c.   The sections of the contract which the grievant claims have been violated;
d.   The relief sought by the grievant; and
e.   The date of the first discussion with a local management representative and the name of that representative.

The Employer will respond to the written grievance in writing within 15 days of receipt of such written grievance.

4.   Step Four. If Step Three has been timely invoked and the grievance is not resolved within five (5) days of union receipt of written response, either party may request that it be submitted to an Arbitration Board consisting of two (2) representatives each appointed by the Union and the Employer. Such a request must be made within 15 days. No Board member shall be an employee of Leprino Foods or member of Local 517, unless mutually agreed upon. The Arbitration Board shall meet not more than 30 days after the written request has been made.

5.   Step Five. A majority vote of these Board members hearing a grievance shall be necessary before the Board's decision is final and binding upon the parties.

If the Board cannot reach a final and binding decision upon the matter submitted within five (5) days after the close of hearing, the parties shall be so notified.

Within ten (10) days after receipt of notice from the Arbitration Board of its failure to reach a decision, either party may demand that the grievance be submitted to a single impartial arbitrator to be selected by the parties. If neither party files such a demand, the grievance shall stand as dismissed by the Arbitration Board.

When arbitration is demanded, the parties shall have ten (10) days after the demand within which to select an arbitrator to process the dispute to final and binding resolution. If the Union and Employer cannot agree on the selection of an arbitrator, then the parties shall request that the Federal Mediation and Conciliation Service (FMCS) nominate a panel of seven (7)

28

arbitrators. The Union and the Employer shall alternately strike one (1) name until only one (1) name remains on the list; the remaining name shall be the person designated as the arbitrator. The party to strike first shall be decided by coin toss. If the arbitrator selected is not willing or able to hear the matter for any reason, then the Union and the Employer shall request a new list of seven (7) arbitrators from the FMCS and follow the selection process set forth in this paragraph until an available arbitrator is selected. If both the Union and the Employer agree that none of the arbitrators supplied by the FMCS on any panel of seven (7) is satisfactory, then a new panel may be requested from the FMCS.

C.     If the parties are unable to agree upon a single impartial arbitrator to hear the dispute within the ten (10) days after the submission demand has been made, pursuant to subsection (b), either party may seek to have the Superior Court of the State of California in and for the County in which the Union party has its principal office designate such an arbitrator pursuant to the provisions of the Code of Civil Procedure Section 1281.6.

D.     The decision of the arbitrator shall be final and binding. Pending final settlement of a dispute in accordance with the provisions of this Section, there shall be no cessation of, or interference with work whether by strike, lockout, intentional slowdown or otherwise.

E.     Service and filing of any document described in this Section may be personal, by delivery to the party to be served or his/her attorney, or may be by mail upon the party to be served in accordance with the provisions of the Code of Civil Procedure Section 1011-1013.

F.     In computing any time period prescribed by this Section, the date of the act, event or default after which the designated time period begins to run is not to be included, unless it is a Sunday or a legal holiday.

Intermediate Saturdays, Sundays and holidays shall be included.

G.     By agreement of the parties, time limits provided by this Section may be extended and compliance with any procedural step may be waived. The Employer shall not unreasonably withhold its agreement to extend the time limits set forth above, provided further the request to extend the time limit is made before the time limit has expired.

H.     Expenses of an arbitrator shall be borne equally by the parties.

I.     Neither the Arbitration Board nor an arbitrator shall have the authority to amend, modify or alter the Agreement.

**Section 34.       Jury Duty**

A.     The Employer shall reimburse an employee for any loss of wages caused by such employee performing jury duty for a maximum of ten (10) working days during a calendar year.

B.     On any day on which an employee is called for jury duty, he/she shall not be required to report for work on any shift starting prior to the time he/she is due to report for said jury duty.

29

C.    If documented jury duty, plus travel time (30 min) is less than or equal to four (4) hours, the employee will report to supervisor for remaining work hours up to eight (8) at normal wage rate, or has option to decline work and be paid for time served on jury duty only. If employee serves over four (4) hours, he/she is not required to return to work and will be paid eight (8) hours. This language would also apply to any swing shift employee selected to serve on the jury.

D.    An employee's starting time shall not be changed on any day for which he/she is called for jury duty. Days off cannot be changed solely because an employee is called for jury duty.

E.    No employee shall be required to work a scheduled shift starting after 7 p.m. (5 p.m. for employees working a ten (10) hour shift) on the day before a day on which he/she is required to report for jury duty.

F.    Mandatory Grand Jury service (not voluntary) will be reimbursed in accordance to this Section.

G.    In the event jury duty assignment goes beyond the 10 day period as indicated above in Subsection A, the employer and employee may work together to develop a modified work schedule.

## Section 35.    Performance of Work Covered by This Agreement

A.    The Employer agrees that its employees, who are not covered by this Agreement, shall perform no work covered by the Agreement, except:

    1.    In case of emergencies; or

    2.    In training or instructing another employee.

B.    If a grievance is filed within thirty (30) days, the parties, the Arbitration Board or the Arbitrator as the case may be, shall assess liquidated damages in an amount not to exceed one hundred dollars ($100.00) against the Employer for violation of this Section. Damages so assessed shall be paid over to a charity designated by the parties.

C.    No working Foreperson shall effectively hire or fire or issue written warnings to any employee.

## Section 36.    Transfer of Company Title or Interests

A.    This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation or portion thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment or receivership or bankruptcy proceeding (unless otherwise provided by law) such operation shall continue to be subject to the conditions of this Agreement for the remainder of its then existing term.

B.    In the event the Employer fails to require the purchaser, the transferee or lessee to sign this contract or to otherwise assume the obligations of this contract, the Employer shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure. When the purchaser, transferee or lessee signs this Agreement or otherwise assumes its obligations, the Employer shall be under no further liability to the Union or to employees by reason of this Section.

C.    The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee or assignee of the operation covered by this Agreement or a part thereof. Such notice shall be in writing with a copy to the Union no later than the effective date of the sale, transfer, lease or assignment.

<u>Section 37.</u>        <u>Severance Pay</u>

Whenever an employee is terminated, he/she shall receive severance pay benefits pursuant to the provisions set forth below:

A.    Upon completion of five (5) years of unbroken service, an employee shall be eligible for a severance benefit equal to twenty (20) hours of pay at the employee's regular straight time rate. The night work pay set forth in Section 9 shall be included in the employee's straight time rate to the same degree it is included in the calculation of vacation allowance under Section 8.

B.    The employee shall be eligible for an additional twenty (20) hours severance pay benefit for each additional year of severance through the fifteenth (15th) year.

C.    For each year of unbroken service in excess of fifteen (15), the employee shall be eligible for an additional forty (40) hours severance benefit; provided, that in no event shall the total severance benefit to which an employee shall become entitled to exceed four hundred (400) hours. The yearly severance benefit due an employee shall be proportionately applied to any period of service between the employee's most recent anniversary of hire and the date of his/her termination.

D.    No severance benefit shall be due under this Section to an employee under any of the following conditions:

    1.    The employee quits or is discharged for cause.

    2.    The employee is currently eligible to receive retirement benefits under the Social Security Act and under the Western Conference of Teamsters Pension Plan.

    3.    Prior to his/her termination, the employee is offered regular full time employment within the jurisdiction of the Local Union. If the employee rejects the employment offer, he/she is not entitled to severance pay. If he/she accepts the offer and is subsequently terminated for just cause, he/she shall receive severance pay based upon his/her company seniority.

    4.    Prior to his/her termination, the employee is offered and accepts full time employment, at a location of the Employer, outside the jurisdiction of the Local Union. If he/she is subsequently terminated, unless he/she quits or is discharged for just cause, he/she shall receive severance pay based upon his/her company seniority. However, if he/she rejects the above employment offer, severance pay shall be paid.

    5.    If an employee is on layoff at the time of the closing, and his/her seniority has not been broken, he/she shall not be eligible for a severance benefit if he/she has regular full time employment elsewhere.

    6.    At the time an employee is laid off, he/she shall have the option to receive the severance pay, if any, to which he/she is then entitled, or to retain his/her

recall rights for a period of twelve (12) months. If he/she elects to retain his/her recall rights, and he/she is not recalled within twelve (12) months of his/her layoff, he/she shall thereupon be entitled to his/her severance pay; provided that if the plant closes and one of the conditions described in Paragraph (D) (3), (4), or (5) above applies, he/she shall not be entitled to severance pay.

E.   The seniority of an employee shall be broken upon his/her receipt of a severance benefit.

F.   Severance benefits shall be paid to the employee no later than his/her final paycheck.

G.   The severance benefits provided by this Section shall be exclusive of all other benefits under this Agreement.

H.   This Section shall not apply if the work at the closed plant or location is transferred to another plant or location covered by this Agreement.

I.   Upon the completion of five (5) years unbroken service to the Employer, an employee shall be eligible for a severance benefit payable at the end of twelve (12) months, or his/her termination or layoff, in the event said employee cannot find employment with any of the signatories to either the Fluid or Manufacturing Milk Agreements under Local Unions 137, 386, 517 jurisdiction. In the event said employee is offered regular full time employment by the aforementioned Employers within the twelve (12) month period, he/she shall lose any right to severance pay.

**Section 38.        Transfer of Personnel**

A.   Whenever, within the geographic area covered by this Agreement, a new operation is opened, except as a replacement for existing operations within the geographic area covered by the Agreement, the Employer shall offer, pursuant to the provisions of Section 17, the opportunity to transfer to regular positions in the new operation to employees in those operations within the geographic area covered by this Agreement affected in whole or in part by the opening.

B.   Whenever the new operation is opened as a replacement of an existing operation located within the geographical area covered by this Agreement, employees in the operation being replaced shall be offered, pursuant to the provisions of Section 17, employment in a regular full time position at the new operation. If all regular full time positions are not filled by employees from the replaced operation, the remaining such positions shall be offered to employees at other operations located within the geographic area covered by this Agreement.

C.   Provided, however, that the limitation of Section 18 relating to one (1) job bid per year are not applicable to bids submitted under the conditions set forth herein. Provided further, that the provisions of this Section shall be deemed applicable for a period of six (6) months subsequent to the commencement of operations at the new plant. The departmental seniority of employees at the new operation shall date from the commencement of his/her most recent period of unbroken service for the Employer in the same department.

D.   In the event regular full time jobs thereafter remain un-filled, the Employer may obtain employees without reference to the provisions of Section 18.

32

E.     The transferred employees shall, for a period of thirty (30) days following transfer, have an unqualified right to return to their former operation if it is still in existence and retain their seniority at their former operation. Employees who avail themselves of the transfer privilege, while they are on layoff at their original operation, may exercise their seniority rights if work becomes available at their original operation during the one (1) year layoff period allowed them at their original operation.

F.     When an operation is closed and the work of the operation is eliminated, an employee who was formerly employed at another operation shall have the right to transfer back to such former operation and exercise his/her seniority based on date of hire provided he/she has not been away from such original operation for more than one (1) year.

G.     When an operation is closed or partially closed and any of its work is transferred to another location, vacancies resulting from the transfer shall be filled in the following manner:

   1.     If any employees are on layoff at the location to which the work is transferred, the recall provisions of Section 17 shall be applied first.

   2.     An employee whose work is transferred shall first be offered his/her work in the same classification at the location to which it is transferred. This offer shall be made in the order of location seniority among the employees whose work is transferred.

   3.     Any vacancy remaining in the transferred work shall be posted in accordance with the provisions of Section 18 for bidding by employees at the location to which the work is transferred.

   4.     Any vacancies then remaining in transferred work shall be offered to employees in the department at the location where the work was performed, who have become unemployed by reason of the transfer. Such offer shall be made on the basis of their location seniority, provided the employees are capable of performing the work.

   5.     Any vacancies still remaining in transferred work shall be filled by the Employer without regard to the provisions of Section 17 and 18.

   6.     When work other than route work is transferred pursuant to this Section, all employees who transfer with such work within sixty (60) days of the date of transfer of the first such employee shall be deemed to have transferred on the same date as the first transferring employee, and their location seniority at the transfer location shall commence at that date. Among the employees who transfer their relative departmental and location seniority shall be based on their relative departmental and location seniority at the former location. When more than one (1) route is transferred to location within sixty (60) days, the same principle shall apply.

   7.     Provided that if no regular work is available, the Employer during the period for which an employee's seniority remains unbroken, shall offer the employee employment in the same department at other operations within the area covered by this Agreement on the basis of the employee's departmental seniority, provided that this paragraph shall be applicable only at operations at which no employees are on a layoff status.

33

8.      Except as provided in Paragraph H below, such employees shall go to the bottom of the seniority list and shall have the right of job selection and other contractual rights in accordance with the seniority at the new operation.

H.     Whenever an employee is transferred pursuant to the provisions of this Section, his/her length of vacation, his/her severance pay and his/her accumulated sick leave benefits shall be based upon his/her most recent period of unbroken service under the collective bargaining Agreement of the Employer.

I.     As used in this Section, the term operation shall include a plant, branch or division of the Employer.

### Section 39.     Dues Deduction

A.     The Employer shall deduct monthly dues of such amount as has become due from the wages of each employee who has filed with the Employer a written assignment of such monies to the Union having territorial jurisdiction in the area which the individual is employed.

The assignments shall be irrevocable for a period of one (1) year or until the termination of this Collective Bargaining Agreement, whichever occurs sooner.

B.     The assignment shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable Collective Bargaining Agreement, whichever shall be shorter, unless written notice is given by the employee to the Employer and to the Union not more than twenty (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year or of each applicable Collective Bargaining Agreement.

C.     The appropriate deduction shall be made on the first day of each month and shall be forwarded to the designated Local Union forthwith.

### Section 40.     Bereavement Leave

A.     Upon providing proof of death, an employee who loses time on scheduled work days on account of the death of a member of his/her immediate family will be paid as a result of attending to pre-burial, burial, or post burial matters, as defined in B. below.

B.     For the purpose of this Section, a member of the employee's immediate family is defined as:

1.     Spouse, son, daughter, mother or father: five (5) days (paid time off not to exceed 40 hours)

2.     Brother, sister, grandparents, and grandparents of the spouse, great grandparents, and great grandparents of the spouse, step-grandparents and step-grandparents of the spouse, mother and father-in-law, grandchildren, step-mother, step-father, and step-children: three (3) days.

34

Section 41.        Term of Agreement

A.        This Agreement shall be in force and effect through December 31, 2016 and shall be considered as renewed from year to year on a calendar basis thereafter, unless either party shall give written notice to the other party of termination or renegotiation as provided in Paragraph (B) hereof.

B.        Either party to this contract may terminate this Agreement or reopen the same for negotiation by giving to the other party written notice of intention to terminate or renegotiate by registered mail sixty (60) days prior to January 1, 2016 or January 1st of any year thereafter.

IN WITNESS HEREOF, the parties have executed this Agreement on the _____ 1st _____ day of _____ January _____, 2016.

LEPRINO FOODS COMPANY:

_____
Dave Diurking, Plant Manager

_____
Steve Schmidt, Director, Production Division
Human Resources and Safety

_____
Mark Mallos, Human Resources Manager

_____
Kelly Soja, Production Division, Human
Resources Manager

_____
Susan Perry, Training Supervisor

TEAMSTERS LOCAL #517:

_____
Chester Stabio, Secretary-Treasurer

_____
Gary Jenkins, Business Agent

_____
Denny Smith, Business Agent

_____
Charles Dale, Shop Steward

_____
Robert Conkerdall, Shop Steward

_____
Armand Caro, Shop Steward

_____
Carlos Gutierez, Shop Steward

_____
Keith McMullen, Shop Steward

_____
Leola Sanchez, Shop Steward

35

SCHEDULE "A"
CLASSIFICATION AND WAGE RATES

The following minimum straight time hourly rates and classifications shall govern, it being understood that additional classifications may be added or combination rates fixed within the limits of the wage schedules herein set forth by mutual consent of the parties. Any disagreement over such classification of labor or the addition of more classifications shall be subject to the jurisdiction of the Arbitration Board herein provided in Section 33.

For purpose of the agreement non-classified work is defined as work not specifically included in "Schedule A".

| | 2013 | 1/1/14 | 1/1/15 | 1/1/16 | 1/1/17 | 1/1/18 |
|---|---|---|---|---|---|---|
| Maintenance Working Foreperson | 24.39 | 24.89 | 25.44 | 26.02 | 26.62 | 27.27 |
| Maintenance – Vacation Relief | 23.89 | 24.39 | 24.94 | 25.52 | 26.12 | 26.77 |
| Maintenance Mechanic | 23.54 | 24.04 | 24.59 | 25.17 | 25.77 | 26.42 |
| Maintenance – Parts Room Working Foreperson | 23.39 | 23.89 | 24.44 | 25.02 | 25.62 | 26.27 |
| Production Working Foreperson – Day off Relief | 23.16 | 23.66 | 24.21 | 24.79 | 25.39 | 26.04 |
| Production Working Foreperson | 22.87 | 23.37 | 23.92 | 24.50 | 25.10 | 25.75 |
| Production – Vacation Relief | 22.43 | 22.93 | 23.48 | 24.06 | 24.66 | 25.31 |
| Any bidholder who is not a vacation relief bidholder, who fills a full week vacation vacancy, will be paid $0.35 per hour over the contractual wage rate of the job performed. | | | | | | |
| Skilled Relief Person | 22.31 | 22.81 | 23.36 | 23.94 | 24.54 | 25.19 |
| **Bracket 1:**<br>Cheese Maker<br>Milk Receiver<br>Lab Tech<br>Evaporator Operator<br>UF/Separator Operator<br>Dryer Operator<br>Starter Maker<br>MSP Operator<br>Relief Person (Bracket 2)<br>Power Lift Operator<br>Extruder Operator<br>Rail Loader<br>Maintenance Helper (Painter)<br>Parts Room<br>Sanitation/Sep CIP/UF Tester | 22.02 | 22.52 | 23.07 | 23.65 | 24.25 | 24.90 |

36

| Sanitation Day Off Relief | | | | | | |
|---|---|---|---|---|---|---|
| **Bracket 2:**<br>Brine Floater<br>Line Floater<br>Filler Operator<br>Powder Bagger<br>Box Maker<br>Powder Blender<br>Cellulose/Rework<br>  (When performing Cellulose,<br>employee to be paid at Brk 2 rate)<br>Palletizer Operator<br>Maintenance Helper (Lubricator)<br>Sanitation/Cheese<br>Sanitation/Processing<br>HTST/Cheese<br>Sanitation/CCT PHT<br>Sanitation/Cheese Environmental<br>Sanitation/Process Environmental<br>Sanitation/Whey Environmental<br>Sanitation/Mixers<br>Liquid Application/Freezer Opr | 21.89 | 22.39 | 22.94 | 23.52 | 24.12 | 24.77 |
| **Bracket 3:**<br>Uncuffer<br>Cellulose/Rework<br>  (When performing Rework,<br>employee to be paid at Brk 3 rate)<br>Sweeper | 19.01 | 19.51 | 20.06 | 20.64 | 21.24 | 21.89 |
| **Clerical**<br>Vacation Relief | 21.54 | 22.04 | 22.59 | 23.17 | 23.77 | 24.42 |
| Principal Clerk (to be $.28 per hour over Senior Clerk) | | | | | | |
| Senior Clerk | 20.85 | 21.35 | 21.90 | 22.48 | 23.08 | 23.73 |

## CLASSIFICATIONS:
## Working Foreperson (Production and Maintenance)

Assigned to supervision of and working with other workers.

## Skilled Relief Person (Relief for Bracket 1)

The rate of Skilled Relief Person shall be paid as follows:

a.   For all hours worked in the workweek, to any employee working in Bracket 1, who is regularly scheduled to work on two (2) or more different shifts during the same workweek.

b.   For any full days worked on any shift in Bracket 1 which differs in starting time from his/her regularly scheduled shift, to any employee who is temporarily so assigned.

c.   For the purpose of subsections (a), (b) and (d) herein set forth, starting times within the workweek which do not vary by four (4) hours or more shall be deemed to be the same starting time on the same shift.

d.   For all hours worked in the workweek, to any employee who relieves other employees on their scheduled days off in two (2) or more classifications in Bracket 1 on the same shift.

e.   For any full days worked in Bracket 1, outside his/her regularly scheduled classification, to any employee who was temporarily so assigned.

## Maintenance Person
**Tool Allowance**: Tool Allowance of two hundred dollars ($200.00) per year.

a.   Will have the option to purchase Craftsman through the Employer or be reimbursed upon presentation of receipts.

b.   Current mechanics will have one year to attain agreed upon tool list.

**Bracket 1** includes the following classifications:

| | |
|---|---|
| Cheese Maker | Parts Room |
| Milk Receiver | Relief Person (Bracket 2) |
| Lab Tech | Power Lift Operator |
| Evaporator Operator | Extruder Operator |
| UF/Separator Operator | Rail Loader |
| Dryer Operator | Maintenance Helper (Painter) |
| Starter Maker | Sanitation/Separator CIP/UF Tester |
| MSP Operator | Sanitation Day Off Relief |

**Relief Person (Relief for Bracket 2)** - The rate for Relief Persons shall be paid as follows:

a.   For all hours worked in the workweek, to any employee working in Bracket 2, who is regularly scheduled to work on two (2) or more different shifts during the same workweek.

b.   For any full days worked in any shift in Bracket 2, which differs in starting time from his/her regularly scheduled shift, to any employee who is temporarily so assigned.

c.   For purposes of subsections (a), (b) and (d) herein set forth, starting times within the work week which do not vary by four (4) hours or more shall be deemed to be the same starting times on the same shift.

d.   For all hours worked in the work week, to any employee who relieves other employees on their scheduled days off in two (2) or more classifications in Bracket 2, on the same shift.

e.   For any full days worked in Bracket 2, outside his/her regularly scheduled classification any employee who is temporarily so assigned.

**Bracket 2** includes the following classifications:

| | |
|---|---|
| Brine Floater | Sanitation/Processing |
| Line Floater | HTST/Cheese |
| Filler Operator | Sanitation/CCT PHT |
| Powder Bagger | Sanitation/Cheese Environmental |
| Powder Blender | Sanitation/Process Environmental |
| Box Maker | Sanitation/Whey Environmental |
| Palletizer Operator | Sanitation/Mixers |
| Maintenance Helper (Lubricator) | Liquid Application/Freezer Operator |
| Sanitation/Cheese | |

## Office Employees
Vacation Relief
Principal Clerk (Currently there are no employees in this classification as of 1/1/08).
Senior Clerk

AMENDMENT TO THE COLLECTIVE BARGAINING AGREEMENT
between the
LEPRINO FOODS COMPANY
and the
CREAMERY EMPLOYEES AND DRIVERS
TEAMSTERS LOCAL UNION NO. 517

WHEREAS, Leprino Foods Company ("Employer") and Teamsters Local No. 517 ("Union") are parties to a collective bargaining agreement which became effective on January 1, 2014 ("Agreement"); and

WHEREAS, Employer and the Union have mutually agreed to amend Section 15.C.3. of the Agreement to comply with the Affordable Care Act's maximum waiting period of 90 days for health care coverage.

NOW THEREFORE, the Employer and the Union hereby agree to amend the Agreement as follows:

1. Section 15.C.3. of the Agreement is hereby deleted in its entirety and replaced with the following:

   "3.   New employees will be eligible for Health and Welfare benefits on the first (1st) of the month coincident with or next following completion of sixty (60) days of employment."

2. All other terms and conditions of the Agreement between the parties shall remain in full force and effect.

Effective August 1, 2014, and applies to new employees hired on or after August 1, 2014, as well as any employees hired before August 1, 2014 who had otherwise not yet met the 6-month eligibility requirements for Health and Welfare benefits as of August 1, 2014.

LEPRINO FOODS COMPANY

By: _____
Dave Dierking
Plant Manager

TEAMSTERS LOCAL #517,

By: _____
Secretary Treasurer/Business Agent

By: _____
Ana Mattos
Human Resources Manager





LETTER OF UNDERSTANDING

BETWEEN LEPRINO FOODS COMPANY – LEMOORE EAST PLANT AND

CREAMERY EMPLOYEES AND DRIVERS TEAMSTERS LOCAL UNION NO. 517

SCHEDULE "A"
CLASSIFICATION AND WAGE RATES

| Clerical | 2014 | 1/1/15 | 1/1/16 | 1/1/17 | 1/1/18 |
|---|---|---|---|---|---|
| General Clerk – Receptionist | 18.00 | 18.55 | 19.13 | 19.73 | 20.38 |

IN WITNESS HEREOF, the parties have executed this Letter of Understanding on ___24TH___ day of _December_, 2014.

LEPRINO FOODS COMPANY

_____
David Dierking, Plant Manager

_____
Ana Mattos, Human Resources Manager

TEAMSTERS LOCAL #517

_____
Chester Suniga, Secretary-Treasurer

2015 Lemoore East Steps

| Pay Grade | Step 1 30% less Starting Step | Step 2 25% less 6 months | Step 3 20% less 12 months | Step 4 Full 18 months |
|---|---|---|---|---|
| LEM1 | 16.1490 | 17.3025 | 18.4560 | 23.0700 |
| LEM2 | 16.0580 | 17.2050 | 18.3520 | 22.9400 |
| LEM3 (7A) | 14.0420 | 15.0450 | 16.0480 | 20.0600 |
| LEMSR Skilled Relief | 16.3520 | 17.5200 | 18.6880 | 23.3600 |
| LEMVR Vacation Relief | 16.4360 | 17.6100 | 18.7840 | 23.4800 |
| LEMWF Working Foreperson | 16.7440 | 17.9400 | 19.1360 | 23.9200 |
| LEMRF Relief Foreperson | 16.9470 | 18.1575 | 19.3680 | 24.2100 |
| LEMSC Senior Clerk | 15.3300 | 16.4250 | 17.5200 | 21.9000 |
| LEMGC General Clerk | 12.9850 | 13.9125 | 14.8400 | 18.5500 |
| LEMCV Clerk Vacation | 15.8130 | 16.9425 | 18.0720 | 22.5900 |

| Maintenance Mech 1 LMT006 | | | | 24.5900 |
|---|---|---|---|---|
| Maintenance Mech 2 LMT007 | | | | 25.5900 |
| Maintenance Mech 3 LMT008 | | | | 26.5900 |
| Maint Parts Room Foreperson LMF0M6 | | | | 24.4400 |
| Maint Mech Vacation Relief 1 LMVR01 | | | | 24.9400 |
| Maint Mech Vacation Relief 2 LMVR02 | | | | 25.9400 |
| Maint Mech Vacation Relief 3 LMVR03 | | | | 26.9400 |
| Maint Mech Working Foreperson 1 LMF006 | | | | 25.4400 |
| Maint Mech Working Foreperson 2 LMF007 | | | | 26.4400 |
| Maint Mech Working Foreperson 3 LMF008 | | | | 27.4400 |

Ana Mattos, Human Resources Manager

Date

# EXHIBIT B





AGREEMENT BETWEEN

LEPRINO FOODS COMPANY

LEMOORE, CALIFORNIA PLANT


AND


CREAMERY EMPLOYEES AND DRIVERS

TEAMSTERS LOCAL UNION NO. 517


January 1, 2019 through December 31, 2021

# INDEX

**Page**

Arbitration – Section 33 .......................................................................................... 25
Bereavement Leave – Section 40 ............................................................................. 31
Break-In Period – Section 27 ................................................................................... 22
Bulletin Board – Section 20 ..................................................................................... 20
Discharge – Section 13 ............................................................................................ 11
Dues Deduction – Section 39 .................................................................................. 31
Employment Practices – Section 5 ........................................................................... 2
Health and Welfare – Section 15 ............................................................................. 11
Holidays – Section 7 ................................................................................................ 7
Hours of Work – Section 6 ....................................................................................... 2
Job Bidding – Section 18 ......................................................................................... 16
Jury Duty – Section 34 ............................................................................................ 27
Leave of Absence – Section 32 ............................................................................... 25
List of Employees – Section 23 ............................................................................... 21
Maintenance of Bargaining Unit – Section 4 ............................................................ 2
Management Trainees and Interns – Section 30 ...................................................... 23
Meal Periods – Section 22 ....................................................................................... 21
Night Work Pay – Section 9 ..................................................................................... 10
On Call  ........................................... Pages 4, 5, 9, 14, 15, 16, 18, 19, 25 and 35
Operation of Agreement – Section 2 ......................................................................... 1
Pay Days – Section 28 ............................................................................................. 23
Performance of Work Covered by This Agreement – Section 35 .............................. 27
Protective Clothing – Section 26 .............................................................................. 22
Recognition – Section 1 ............................................................................................ 1
Relief Periods – Section 12 ..................................................................................... 11
Remittance Advice – Section 29 .............................................................................. 23
Retirement Plan – Section 16 .................................................................................. 13
Schedule "A" Classification and Wage Rates .......................................................... 34
Seniority – Section 17 ............................................................................................. 14
Severance Pay – Section 37 .................................................................................... 28
Sick Leave – Section 31 .......................................................................................... 23
Signature Page ........................................................................................................ 33
Term of Agreement – Section 41 ............................................................................. 33
Termination Notice – Section 14 ............................................................................. 11
Transfer of Company Title or Interests – Section 36 ................................................ 28
Transfer of Personnel – Section 38 ......................................................................... 29
Uniforms – Section 11 ............................................................................................. 10
Union Affiliation and Preference of Employment – Section 3 .................................... 1
Union Relations – Section 24 .................................................................................. 21
Vacation – Section 8 ................................................................................................ 8
Visits to Plant – Section 19 ...................................................................................... 20
Wage Reductions – Section 21 ................................................................................ 20
Wages and Classification – Section 10 .................................................................... 10
Work in Two or More Classifications – Section 25 ................................................... 22

LEPRINO FOODS COMPANY
AGREEMENT

**January 1, 2019 to December 31, 2021**

This Agreement made and entered into as of January 1, 2019 by and between **Leprino Foods Company,** hereinafter referred to as **"the Employer"** and **Teamsters Local #517,** hereinafter referred to as **"the Union".** WITNESSETH that in consideration of the promises, it is mutually agreed as follows:

### Section 1.        Recognition

A.     The Employer and the aforementioned Local Union each mutually recognizes the other as the sole agency for the purpose of collective bargaining for all employees working in Employer's listed plant in the classifications listed in SCHEDULE "A", attached hereto.

B.     Such employees shall be covered by the provisions of this Agreement; it being understood that additional classifications may be added in the manner set forth in said SCHEDULE "A", attached hereto.

C.     There shall be no discrimination of any kind against any employee on account of union affiliation or on account of the bona fide union activities of such union employees.

### Section 2.        Operation of Agreement

This agreement shall operate as a direct contract between the Employer and Local Union mutually concerned.

### Section 3.        Union Affiliation and Preference of Employment

A.     All employees covered by this Agreement, who are members of the Union on the date of execution of this Agreement or on the effective date of this Agreement whichever is later, shall as a condition of employment remain in good standing in said Union. All present employees covered by Agreement who are hired hereafter shall become and remain members in good standing in the Union, as a condition of employment, on and after the thirtieth (30th) day following the beginning of their employment, the effective date of this Agreement or the date of execution of this Agreement, whichever is later.

B.     When new or additional employees are needed, the Employer will notify the office of the Union and the Union will furnish the Employer with a list of any experienced and qualified persons who may be available for work.

C.     The Employer may hire qualified persons from any source.

       Within seven (7) business days following the employment of a new employee, the Employer shall notify the Union in writing of the new employee's name, address, classification and date of employment. Such notification shall be transmitted by a postcard furnished by the Local Union. Such persons shall make application for and complete union membership subject to this provision.

D.     The Union agrees that it will designate a representative, who shall be authorized to receive applications for membership. If any employee is not in good standing with the Union, as provided herein, and the Union so notifies the Employer in writing, the Employer will discharge such employee within seven (7) days thereafter.

**Section 4.**       **Maintenance of Bargaining Unit**

Clerical work, which is being performed by bargaining unit employees, may be transferred only under the following circumstances: (1) to other bargaining unit employees; (2) in the case of a consolidation or centralization of the Employer's clerical functions by transfer to non-bargaining unit employees at another location of the Employer.

**Section 5.**       **Employment Practices**

A.   Neither the Employer nor the Union shall discriminate against any employee because of race, sex, religion, national origin, age, color, marital status, sexual orientation, status as a Vietnam Era Veteran, or physical or mental disability or on any other basis prohibited by federal, state or local law or ordinance. The Employer will reasonably accommodate any qualified applicants and employees with known mental or physical disabilities, as required by applicable state and federal laws, subject to the provisions of this Agreement. The Employer will consult with the Union in formulating reasonable accommodations, but retains the right to make the final determination.

B.   The Employer and the Union agree to full compliance with The Uniformed Service Employment and Reemployment Rights Act (USERRA) of 1994.

C.   In this Agreement when the masculine gender is used, it shall be deemed to include the feminine and vice versa.

**Section 6.**       **Hours of Work**

A.   Work Week. Not more than forty (40) hours shall constitute a week's work to be completed within five (5) days, Sunday through Saturday, each day consisting of 8 hours to be completed within 9 hours. The employer may establish a work day of eight (8) continuous hours. An alternative schedule may be established upon mutual agreement between the Company and the Union.

B.   1.   Time and one-half (1½) will be paid for all hours worked above eight (8) hours within nine and one-half (9½) consecutive hours in any one (1) day, or forty (40) hours in any one (1) week, whichever is greater. Any time worked in excess of nine and one-half (9½) hours in any one (1) day shall be overtime and paid for at the rate of two (2) times the straight time hourly rate.

2.   Double time will be paid for all hours (minimum of 2 hours) during which an employee is required to don a Level A Hazmat Suit (and so does) and responds to an unforeseen Hazardous Material situation, as directed by the Company.

C.   In lieu of the provisions of Paragraph A. and B. of this Section, the Employer may establish a work week, Sunday through Saturday, of forty (40) hours consisting of four (4) ten (10) hour days upon the following conditions:

1.   For all employees except Administration employees, ten (10) hours shall constitute a days work and shall be completed within ten and one-half (10½) hours; for Administration employees, ten (10) hours shall constitute a work day and shall be completed within eleven (11) hours.

2.   All such employees shall receive three (3) days off each calendar week. At least two (2) of them shall be consecutive.

3.   For purposes of calculating holiday pay, sick leave pay, funeral leave pay and jury duty pay, a day, including a holiday, shall consist of ten (10) hours in any one (1) day.

2

4.   Twice the straight time hourly rate shall be paid for time worked in excess of ten (10) hours in any one (1) day.

5.   For all timed worked on his/her day off an employee shall be paid at the rate of twice his/her straight time hourly rate.

D.   For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Lab employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

E.   Posting Days Off and or Starting Time. Weekly work schedules shall be posted by noon on Thursday in advance of each workweek. The Company shall be responsible to notify employees of changes to the schedule after noon on Thursday.  When an employee leaves the plant, he/she is not responsible to contact the Company; burden to notify the employee of a schedule change is the Company's responsibility. An employee whose starting time is to be delayed shall be notified of such change not less than eight (8) hours prior to the commencement of his/her regularly scheduled starting time.

When employees' scheduled starting time is changed after posting and while employee is still on premises, the supervisor will provide a written notice to the employee advising employee of such change.

1.   Any employee called to work prior to his/her starting time will be paid one-half time penalty pay up to his/her regular starting time.

2.   Overtime will be paid after eight (8) hours of work.

F.   Days Off. Any employee required to work on his/her scheduled day off shall be paid at the rate of two (2) times the straight time hourly rate for all time worked, unless the employee takes off another day during such work week for reasons other than the request of the Employer, or unless a change in work schedule results from a promotion or change of shift assignment pursuant to the operation of Section 17 and 18, hereof.  In this event, new days off shall be scheduled to meet the new assignment and no penalty shall result from working a scheduled day off under the former assignment while affecting such a change.

- VTOR, non-worked holiday, jury duty, bereavement, would be considered a worked day
- TOR's, sick days, FMLA, family partnership, kin care, unavailable call-in's are not considered a worked day.

1.   When working a six (6) day schedule, the Company will attempt to schedule Sundays and/or Holidays as down days whenever possible.

2.   When working a seven (7) day schedule, the Company will attempt to allow employees to have at least two (2) weekends off every six (6) weeks whenever possible.

3.   In the event an employee is scheduled for overtime on the posted schedule or called in for overtime, with a 90-minutes notice without penalty, the overtime can be canceled and/or altered. Employer will verbally speak to the employee to cancel this overtime. In the event the overtime is not cancelled within the 90-minute notice, the employer will offer a minimum of four hours work to the employee.

3

G.   Minimum Hours.  Employees called to work, scheduled and reporting for work, or working four (4) hours or less in any day shall be offered a minimum of four (4) hours of work, and all employees working more than four (4) hours shall be offered eight (8) hours of work at their scheduled bracket or the higher bracket of the two.  However, minimum hours shall not apply when the Employer does not receive ninety (90) minutes notification as prescribed in Section 31.L. The employee who is scheduled to fill a vacancy resulting in less than the ninety (90) minutes notification shall be paid the appropriate rate of pay for all hours actually worked to complete that shift's vacancy.

H.   Delays of Operations.  Any delays in operations caused by circumstances beyond the control of the Employer, such as failure of power, acts of God, bomb threats or break down of plant machinery or equipment, shall not require the payment of overtime, except to employees who may be continued at work during such delayed interval.

I.   Method of Spreading Work.  It is the policy of the Employer that the maximum proportion of bid-holding employees shall receive eight (8) hours daily and forty (40) hours weekly employment; that the principle of spreading work by reducing hours for all employees who perform like duties shall not be applied; and that, where feasible, days off will be scheduled consecutively.

J.   Call-Back.  Whenever an employee is called back to work after the close of his/her shift and before the commencement of his/her next shift, he/she shall be guaranteed a minimum of two (2) hours of work at the appropriate rate.  This Section shall apply only in the following circumstances:

1.   The employee has left the Employer's premises after the close of his/her shift (including overtime, if any); and

2.   The call-back begins more than two (2) hours before the commencement of the employee's next scheduled shift.

K.   The Employer may maintain an on call list of employees to fill vacancies.  This list may be comprised of bidholders and non-bidholders. All the bidholders listed in seniority order shall precede the non-bidholders listed in seniority order.  On call employees may be scheduled on the weekly schedule for known vacancies to which they must adhere. Senior qualified on call will be utilized first in regards to scheduling full workweeks; however specific assignments will be made according to the company's needs with consideration given to seniority and qualifications. When an on call employee is scheduled to work for five days, his/her days off shall be scheduled and he/she shall receive two (2) times the straight time rate of pay for working a scheduled day off.  If an on call employee is scheduled to work for less than five days, he/she shall have no scheduled days off and shall receive overtime at the appropriate rate of pay after working forty (40) straight time hours. When necessary, the Employer may cancel scheduled work without penalty. When filling an unscheduled vacancy with an on-call employee on straight time and they decline or there is no response from the on-call employee within eight (8) hours, after three (3) such instances in a rolling four (4) week period, the employee will be terminated. Previous bid-holders, who are now on-call, would be exempt from this subsection.

L.   Refusal to Work Overtime.  Qualified employee is defined as having all aspects of the JTPR completed and have any required certifications/licenses and have performed the job within the last twelve (12) months for the specific position completed for the job. Overtime is available to qualified employees only first who have signed the overtime list. It shall not be a violation of this Agreement or a cause for discharge or disciplinary action for an employee to refuse to work voluntary overtime, except as otherwise provided hereafter:

1.   Daily Overtime (Less than four (4) hours)

   a.   Offer overtime to employee performing the job.

   b.   In the event the overtime work is not assigned in accordance with sub-section (a) the Company will offer the overtime to the senior qualified employee in the department who is available at the time the overtime is to occur, provided he/she has signed the overtime list.

   c.   In the event the overtime work is not assigned in accordance with sub-section (a) and (b) the Company will require the qualified employee to perform the overtime work in reverse order of seniority working in the department who is available at the time overtime is to occur.  Disciplinary action will be administered per the disciplinary policy up to and including termination, if the least senior qualified employee refuses to stay.

   d.   No employee will be required to work more than two (2) hours of daily overtime. For purposes of daily overtime, the on-call person is in the department where they are working.

   e.   If it is necessary to fill a full-shift vacancy as outlined below in L-2E, an employee may be required to work 4 hours of overtime to fill a full-shift vacancy. These four hours will count towards the 12-hour daily requirement.

   f.   No employee will be required to work more than 12 hours of daily overtime in any one workweek.

2.   Day-Off Overtime (vacancy for full shift – four (4) hours or more)

   a.   Schedule or call in a senior qualified employee who is on call and can work at the straight time hourly rate.

   b.   In the event the vacancy is not assigned in accordance with subsection (a) the employer will schedule or call in senior qualified employee in the department who is on a scheduled day off, has signed the overtime list, and has had seven and one-half (7½) hours rest before reporting for this shift and will have seven and one-half (7½) hours rest following this shift. Employees will only be allowed to work one shift per day off.

   c.   In the event the vacancy is not assigned in accordance with sub-section (a) and (b), the employer shall offer the vacancy in seniority order to qualified employees on the overtime list at the location.

   d.   In the event the vacancy is not assigned in accordance with sub-section (a), and (b) and (c) the employer shall offer an additional four (4) hours to the employee performing the job where the overtime is to occur provided they have signed the overtime list and offer the next scheduled employee four (4) hours work prior to his/her regular scheduled shift provided they have signed the overtime list.  In the event the vacancy is not assigned in this manner, the Employer shall offer an additional four (4) hours in seniority order to qualified employees who have signed the overtime list on the shift where the overtime is to occur and offer to the next scheduled qualified employee in seniority order four (4) hours work prior to their regular scheduled shift provided they have signed the overtime list. Once all options have been exhausted above, and the employee has been asked to stay over four (4) hours, these four (4)

hours cannot be retracted, unless agreed upon by employee staying over.

e.     If unable to fill the vacancy in accordance to sub-sections (a) - (d), the employer shall fill the vacancy by reasonable means. An employee may be required to work up to four (4) hours of overtime.

f.     If the Maintenance Foreperson vacancy was without prior knowledge, the supervisor must:
1.   Ask the senior qualified mechanic on duty if he would like to assume the responsibilities of a foreperson.
2.   Should he/she decline, the next senior mechanic will be asked. This process is to be continued until the vacancy is filled.
3.   The acting foreperson will be compensated at the rate of time and one-half (1 ½) for all hours worked as a foreperson.

g.     If the Maintenance Foreperson absence has been scheduled, the following measures will be taken:
1.   The supervisor will ask the senior qualified mechanic on duty if he would like to assume the responsibilities of a foreperson for the dates of absence, before the end of the shift.
2.   Should he/she decline, the next senior mechanic will be asked. This process is to be continued until the vacancy is filled.
3.   The acting foreperson will be paid at foreperson rate.

3.     In the event a bid-holder or foreperson is requested or required to perform a different job other than their daily scheduled job, they will be compensated at the rate of time and one-half (1½) for all regular hours worked on the different job.

4.     In the event of a vacancy, when any employee is requested or required to perform, and is responsible for, a job(s) in addition to their daily scheduled job, they will be compensated at the rate of time and one-half (1½) for all regular hours worked while performing the assigned multiple jobs.

5.     Overtime list shall be posted for a one week period every week. An employee will be able to indicate shift(s) and one day not available for overtime. Unclassified work will be assigned by location seniority.

M.     If an employee (bid-holder) is going to be off work for more than a scheduled work week, management and union will meet and discuss and give due consideration to the senior qualified employee in that classification from a different shift. Upon agreement with the employee, the Company may schedule that employee to cover the vacancy as long as it can be scheduled at the time of the posting of the weekly schedule. The employee will be paid at the appropriate contractual rate of pay for the job performed. There will be only one lateral move. Foreperson position vacancies will be filled at the discretion of the Company.

If an employee is going to be off work but is not going to be off for more than a full scheduled work week, the Company will fill the vacancy through Section 6.L.2. of the collective bargaining agreement.

N.     Industrial Injury. If an employee sustains an industrial injury and there is medical evidence that such injury prevented him from continuing work on the day of injury, he/she shall be paid for time worked on such day for not less than eight (8) hours or ten (10) hours, if so scheduled.

O.     If an employee is regularly scheduled to return to work within seven and one-half (7½) hours

after completing his/her regular straight time hours on any shift he/she shall be paid at the rate of time and one half (1½) for all hours worked within such seven and one-half (7½).

## Section 7.          Holidays

A.   The following holidays will be recognized for eligible employees as hereinafter defined:

New Year's Day
Martin Luther King Day (third Monday in January)
Washington's Birthday (third Monday in February)
Easter Sunday
Memorial Day (last Monday in May)
Fourth of July
Labor Day
Veteran's Day (as designated by the State of California)
Thanksgiving Day
Christmas Day

B.   The day upon which the holiday falls shall be treated as the holiday for payroll purposes.

C.   To be eligible for the benefits provided by this Section, an employee must meet the following requirements:

   1.   He/she must work on his/her regularly scheduled work day next before and next after the holiday unless excused by the Employer, provided that an employee off work because of illness or injury shall be deemed to be excused by his/her Employer if he/she notifies his/her Employer of his/her illness prior to the commencement of his/her shift on the day on which he/she is unable to work.

   2.   He/she must work on the holiday if scheduled to work, unless excused by the Employer.

   3.   He/she must perform work during the seven (7) day periods immediately preceding or immediately following the holiday provided that this requirement shall not apply to employees covered by paragraph (H) of this Section.

D.   Eight (8) hour shift:  During each week in which a holiday falls, each eligible employee will receive eight (8) hours of pay at the straight time rate as holiday pay in addition to all other compensation earned by him under other provisions of this Agreement.  An eligible employee working on any of the above mentioned holidays shall be paid one and one-half (1½) times the straight time rate for time worked up to eight (8) hours and twice the straight time rate for work performed in excess of eight (8) hours.

E.   Ten (10) hour shift:  During each week in which a holiday falls, each eligible employee shall receive ten (10) hours of pay at the straight time rate as holiday pay in addition to all other compensation earned by him/her under other provisions of this Agreement.  An eligible employee working on any of the contractual holidays shall be paid one and one-half (1½) times the straight time rate for time worked up to ten (10) hours and twice the straight time rate for work performed in excess of ten (10) hours.

F.   Regular part-time employees working three (3) or less days a week shall not be entitled to pay for holidays not worked.

G.   Any employee working at the reduced rate provided for in Section 27 of this Agreement shall be ineligible for paid holidays during his/her first sixty-six (66) days actually worked.  If said

employee works on a paid holiday, he/she shall be paid at the straight time rate unless otherwise eligible for premium pay.

H.      Any shift differential to which an employee is entitled shall be included in holiday pay.

### Section 8.      Vacation

A.      The Employer shall grant paid vacations in accordance with the following schedule:

| Continuous Service | Weeks Paid |
|---|---|
| One (1) year | One (1) week |
| Two (2) years | Two (2) weeks |
| Five (5) years | Three (3) weeks |
| Ten (10) years | Four (4) weeks |
| Fifteen (15) years | Five (5) weeks |

The vacation period listed above shall be earned after the completion of the year or years of continuous service.

An employee shall be entitled to receive full vacation pay as set forth above if he/she has actually performed work for 2,000 hours during his/her vacation eligibility year.  If an employee has completed a vacation eligibility year but has performed work for less than 2,000 hours during such year, such employee's vacation time shall be based upon his/her years of continuous service, but the amount of vacation pay to which he/she shall be entitled shall be determined by the ratio between 2,000 hours and the total hours actually worked by him during his/her vacation eligibility year.  If an employee is on layoff at the time of completing his/her first vacation eligibility year, he/she shall not be eligible for vacation pay for that year, unless he/she is recalled to work while his/her seniority remains unbroken. The vacation eligibility year shall be the time between the employee's anniversary date of hire and one (1) year thereafter and in yearly periods thereafter.

B.      An employee may divide his/her vacation into five (5) periods.  Whenever an employee splits his/her vacation, his/her location seniority preference in vacation selection shall be applicable.

Beginning with the vacation year of 2002, for employees with two or more weeks vacation, one week of vacation per year may be taken in single or multiple, maximum three consecutive days upon approval, paid vacation days. These paid vacation days may not be requested more than thirty days in advance; but, they must be requested by the Monday before the work schedule is posted for the coming week; however, emergency paid vacation days may be granted upon a 24 hours notice on a case-by-case basis. Such paid vacation days will have priority over any unpaid time off requests. Full week vacations have priority over single paid vacation days. Overtime may be worked to cover a single paid vacation day; but unpaid time off requests will not be covered by overtime. During the life of this agreement, necessary changes for the administration of this benefit will be made by the negotiating committee. Any unused paid vacation days will be paid out at the end of the calendar year. An employee may rollover up to a maximum of two single paid vacation days into the next year by written notification to the Human Resources Department by December 1.

C.      Vacation allowance shall be computed on the basis of the employees' straight time hourly rate during the week immediately preceding the commencement of the vacation plus any night work pay earned during such week.  When night work is regularly rotated, the night work pay shall be pro-rated for this purpose.

D. An employee who has completed one (1) or more years of continuous service with the Employer shall be entitled to pro-rated vacation pay upon having his/her seniority broken in the manner described in Section 17. An employee who fails to give the termination notice required in Section 14 shall not be entitled to such pro-rated vacation pay.

E. For purposes of computing time worked during a vacation eligibility year, the following shall be counted as straight time hours worked: paid holidays not worked, paid vacation time and paid sick leave.

F. If an employee's seniority is lost pursuant to Section 17, his/her accumulated service for purposes of vacation benefits is canceled.

G. If called back to work during his/her scheduled vacation or if required by this Employer to completely forego a scheduled vacation, or any part thereof, an employee shall be paid at two (2) times his/her regular straight time rate of pay for all hours worked during said scheduled vacation. The employee shall reschedule the unused portion of his/her vacation in accordance with the provisions of this Section.

H. An employee may not receive vacation pay in lieu of taking his/her vacation unless mutually agreed to between the Union and the Employer, and provided that in accordance with Section 16A, no pension will be paid on such vacation pay in lieu of taking vacation. If an employee receives vacation pay in lieu of taking their vacation, or a vacation switch is granted after the vacation relief schedule has been prepared, the employee will go to the bid-holders on-call list for the week(s) originally scheduled and be scheduled for work as their seniority and qualifications dictate and be paid at the appropriate rate of pay for jobs worked during that week(s). If such week(s) have not been selected by the vacation relief, the employee will continue to work their regularly scheduled job

I. Schedules for the selection of vacation periods shall be posted no later than October 1 of each year. Employees who fail to select their vacation periods within thirty (30) days of the posting of the schedule shall forfeit their right to select a vacation period. Upon request of the Union made by February 1, the Employer shall furnish the Union with a copy of the vacation schedule as of that date. This Section shall also apply to vacation periods which become available after the posting of the vacation schedule.

On call employees will select their vacation in the department where the majority of hours are worked during the prior period from Aug 1 through July 31.

J. Vacations shall be taken at the convenience of the Employer but due consideration will be given to an employee's request for time of vacation in accordance with location seniority within the department. The months of June, July, and August shall not be blocked out of the schedule. No employee shall be required to commence his/her vacation period without having been given thirty (30) days prior notice. If operating requirements permit, employees operating the same machinery may take vacations at the same time. An on-call employee's vacation selection will not close out a vacation week.

K. New employees hired on or after January 1, 1994, will receive the choice between one of two vacation options. These options will be explained to the employee within the first 66 days of employment by representatives of the Company and Union. The option chosen will be binding for the life of their employment with Leprino Foods, Lemoore Plant.

1. For employees hired after January 1, 1994, vacation time earned upon completion of an anniversary year may not be scheduled until the following calendar year; or,

2. If the employee desires a vacation in the calendar year after they are hired, he/she may schedule one (1) week of vacation in the year they are hired to be taken the

following calendar year. The employee will be paid in full unless vacation is taken prior to his/her anniversary date in which case vacation will be pro-rated based on actual hours worked as of the date of vacation. Future vacations will be similarly calculated.

3.    For the employees who choose option 2 above, they can also choose to have their balance of pro-rated vacation banked or paid on the first payroll following their anniversary date.

L.    Any employee hired before January 1, 1994, who takes vacation prior to his/her anniversary date, shall receive whatever full days of prorated vacation pay he/she has earned as of the date of his/her vacation up to the amount of time taken off. Balance to be paid on the first payroll following their anniversary date.

Effective for 1998 vacations forward, employees can choose to have their balance of prorated vacation banked or paid on the first payroll following their anniversary date. The Employer will provide a form to employees to make their selections. Employees can change their selection on an annual basis if the change is submitted by July 1 to be effective for the following year.

M.    An employee entitled to vacation pay shall, upon a request submitted at least seven (7) days prior to the commencement of the vacation period, receive his/her vacation pay at the commencement of the vacation period.

N.    If an employee is off work because of disability immediately prior to the time his/her vacation is scheduled to commence, he/she may have his/her vacation rescheduled in accordance with the provisions of this Section, provided he/she so notifies his/her Employer before his/her vacation is scheduled to begin. The employee shall not have the right to interfere with the scheduled vacation period of another employee.

O.    For the purpose of this section, the following departments are recognized: cheese, processing, whey, warehouse, lab, maintenance, Administration, and such departments as may be agreed upon by the employer and the Union. Maintenance will be split into two groups (1) Maintenance Mechanics and (2) all others.

## Section 9.    Night Work Pay

A.    An employee working between 6 p.m. and 6 a.m. shall receive forty cents ($.40) per hour premium above the regular hourly rate. When an employee works more than fifty percent (50%) of a straight time shift between the hours of 6 p.m. and 6 a.m., he/she shall receive the work premium for the entire shift worked.

B.    The shift premium is to be included as part of the regular hourly rate upon which overtime is calculated.

## Section 10.    Wages and Classifications

The minimum scale of wages to be maintained by the Employer during the term of this Agreement is as set forth in Schedule "A" attached hereto and incorporated herein and made a part of this Agreement.

## Section 11.    Uniforms

If an Employer requires his/her employees to wear a uniform, the Employer shall furnish and launder said uniforms.

Employees who are required to change into and out of uniforms will do so at the employer's designated locker room facilities. Employees will not be allowed to remove uniforms off the premises. Employees will be paid a total of 14 minutes of additional compensation for donning and doffing at the straight time rate for each shift worked. This compensated time is not considered hours worked.

**Section 12.** **Relief Periods**

The Employer agrees to provide adequate relief and rest periods of ten (10) minutes during the first half of the shift and ten (10) minutes during the second half of the shift. The employee will be entitled to an additional ten (10) minute rest period when they are working two (2) or more hours of overtime.

**Section 13.** **Discharge**

A.      No employee shall be discharged without just cause.

B.      Warning letters shall be effective for the purposes of further discipline for no more than one (1) year from the date of issuance.

C.      Whenever a regular employee becomes unable to perform the essential functions of his/her regular work, with or without reasonable accommodation, by reason of physical or mental disability, he/she shall be placed on a medical leave of absence upon the submission of medical certification of employee's functional limitations, onset of limitations, and probable duration. Such leave shall continue while the employee is disabled, but no longer than the period of the employee's employment at the commencement of his/her disability or one (1) year, whichever is shorter, unless it is extended by the Employer. Unless the employee returns to his/her job at the end of his/her medical leave of absence, his/her employment may be terminated without violating the provisions of this Section.

**Section 14.** **Termination Notice**

A.      Any employee who proposes to resign his/her position shall give one (1) week's notice to his/her Employer.

B.      The Employer shall give one (1) week's notice or one (1) week's salary in lieu thereof to an employee who is to be laid off or discharged, except that notice shall not be required when an employee is discharged for violation of Company rules posted on the bulletin board referred to in Section 20, provided that this exception shall apply only when the rules posted have previously been sent to the Local Union.

C.      One (1) week's notice shall not be required in the case of new employees, whether or not a member of the Union, for the first sixty-six (66) days actually worked.

**Section 15.** **Health and Welfare**

A.      Effective January 1, 2008, health and welfare benefits shall be provided by the Company through the Northern California General Teamsters (NCGT) Choice Plus Plan.

Employees will receive six (6) months of Health and Welfare coverage during a medical leave of absence, including the premium waiver by the NCGT Choice Plus Plan, provided the employee continues to make any required monthly contributions.

B.      The Company shall remit each month the full amount of the monthly contribution for each eligible employee in conformance with, and to be bound by, the Agreement and Declaration of Trust for the Fund.

C.   For purposes of this section, an eligible employee for whom the Company shall make a monthly contribution is an employee meeting the following qualifications:

1.   The employee is on the company's payroll on the first (1st) day of the calendar month following the month for which the payment is being made, and;

2.   The employee has worked at least eighty (80) hours during the previous calendar month. Holiday hours, vacation hours, funeral leave hours and jury duty hours, paid for but not worked, shall constitute hours worked for this purpose.

3.   New employee will not be eligible for Health and Welfare benefits until they have completed six (6) months of qualifying hours (at least 80 hours worked per month).

D.   Effective January 1, 2008, current (non-retired) employees will make contributions to the Company toward their health and welfare coverage for any month in which a premium is paid by the Company, pursuant to the terms of Section 15D 1, 2 and 3 below. Employee contributions will be through payroll deduction; the employee shall be responsible for making payment by check or other method accepted by the Company. Employee contributions during the term of the Agreement will be made on a pretax basis, to the extent permissible by law, in the following amounts:

1.   Effective January 1, 2019, employees will contribute the following percentage on a monthly basis of the total monthly contribution for the tenure of the contract – needed to maintain NCGT Select Plus, through the term of this agreement:

| YEAR | % CONTRIBUTION |
|------|----------------|
| 2019 | 20% |
| 2020 | 20% |
| 2021 | 20% |

a.   Company agrees that employees who select Family coverage on the Select Plus PPO plan will not pay a monthly contribution amount more than what their equivalent employee cost share amount would have been under that year's Choice Plus PPO plan at the specified employee contribution percentage for that year.

b.   Employees who select only Dental/VSP/Life coverage will pay the employee cost share percentage for that year of the Dental/VSP/Life premium.

c.   Employees electing to be in the Kaiser Plan would be responsible for 100% of any cost in excess of the Company's cost for their selected tier of Select Plus PPO.

E.   Retired Employees' Hospital, Medical, Surgical Benefits:

The Company will make medical benefits available to eligible retired employees pursuant to the rules of the Teamsters Retiree Trust, with such retirees paying contributions established by the Trustees to fund their benefits, and the Company agrees to be bound by the Agreement and Declaration of Trust.

F.   An employee may be terminated for filing or causing a fraudulent claim to be filed.

12

G.   Both the Company and the Union agree that having healthy employees is in the best interest of the Company and the Union and as such, agree to continue and encourage voluntary participation in programs of good health and wellness. The Union agrees to work with the Company in developing programs that improve the Company's employees' health and well-being which may control or reduce the cost of the Fund.

The Company is concerned that the Fund could at some point during the term of this agreement become subject to federal excise taxes as a result of the application of certain provisions of the federal Patient Protection and Affordable Care Act, as may be amended from time to time (PPACA). If the Fund is at any time determined to be in a situation where excise taxes are applicable or likely to become applicable, the Union understands that would be a serious issue for the Company.

The Union agrees that during the term of this agreement if any excise tax becomes applicable to the Fund under the PPACA, the Company has the right to reopen this agreement for the limited purpose of renegotiating those provisions of the agreement related to the medical benefits discussed in Section 15 of the agreement to the extent necessary to eliminate the impact of any such excise tax on the Company.

## Section 16.          Retirement Plan

A.   Commencing with hours worked on and after the dates hereinafter set forth, the Employer shall pay upon the following basis:

| Date | Basic Contribution Rate | Peer Contribution Rate | Total Contribution Rate |
|------|------|------|------|
| 01/01/19 | 3.57 | .23 | 3.80 |
| 01/01/20 | 3.66 | .24 | 3.90 |
| 01/01/21 | 3.76 | .24 | 4.00 |

The Employer shall provide the Program for Enhanced Early Retirement (PEER) to the Bargaining Unit Employees.  Total contribution to the WCTPTF shall be (Basic Rate + PEER Rate).

The contributions required to provide the Program for Enhanced Early Retirement will not be taken into consideration for benefit accrual purposes under the Plan.  The additional contribution for the PEER must all times be 6.5% of the basic contribution and cannot be decreased or discontinued at any time.

For the purposes of this Agreement, paid holidays and paid vacation time shall be counted as time worked but no payments shall be made on overtime hours.

No payments shall be made on vacation time paid in lieu of taking vacation, pursuant to Section 8H, unless the employee has not reached at least 2,080 hours by the end of the calendar year. Accordingly, at the end of each calendar year, the Employer will report pension contributions on all vacation hours including those paid in lieu of taking vacation up to a maximum of 2,080 hours worked per calendar year.

13

B.  It is mutually understood that all of the Employer contributions as provided herein shall be deductible from gross income under Section 404 of the Internal Revenue Code.

C.  All applicable federal and state laws pertaining to Taft-Hartley Pension Trusts will be observed.

D.  For probationary employees (part-time regular employees and full-time regular employees serving a probationary period), the Employer will pay an hourly contribution rate of ten cents ($0.10, including $0.01 for PEER/84) during the probationary period as specified in Section 17 (first sixty (66) days actually worked); but in no case for a period longer than ninety (90) calendar days from an employee's first day of hire. Contributions shall be made on the same basis as set forth in Section 16 of the Agreement. After the expiration of the probationary period as specified in Section 17; but in no event longer than ninety (90) calendar days from an employee's first date of hire, the contribution shall be increased to the full contractual rate.

### Section 17.        Seniority

A.  Location seniority shall be defined as an employee's most recent period of unbroken service at the plant or location of the Employer at which he/she is working.

B.  Department seniority is defined as an employee's most recent period of unbroken service at the location in the department in which he/she is presently working.

C.  Classification seniority is defined as an employee's most recent period of unbroken service in the classification in which he/she is working.

D.  If an employee's starting time is permanently changed by more than four (4) hours for fifty percent (50%) or more of the workweek, he/she may displace an employee with the least departmental seniority in his/her classification whose work he/she is able to perform. The employee so displaced may exercise the same shift preference right.

   a.  In the event the employee's start time moves them into a different shift, the job will be rebid and the employee may exercise their bumping rights per Section F. Shift times are defined as: Day shift 4:00 am – 12:00 noon, Swing shift 12:00 noon – 8:00 pm and Night shift 8:00 pm – 4:00 am.
   b.  In the event the employee's wage (bracket) changes, the job will be re-bid and the employee may exercise their bumping rights per Section F.
   c.  If it is determined by LFC, the affected employee and the Union that the skills and responsibilities required of the position have changed substantially (fifty percent (50%) or more), the position will be re-bid and the employee may exercise their bumping rights per Section F.
   d.  Employees exercising their seniority rights per Section F shall have their bid rights restored with the exception of a bump pertaining to Section I - Temporary Work Stoppage.

E.  In the event of a reduction in force, the following procedures shall be applied, provided the employees in the department having seniority are capable of performing the remaining jobs. Bid-holders on-call whom are displaced due to a job elimination or temporary Meiji work stoppage, would be trained on job(s) requiring five (5) days or less of training, based on the needs of the business, in accordance with Section 6.1.

   1.  When one of several jobs in the same classification on the same shift is to be eliminated, the employee in the classification on that shift who has the least location seniority shall be the employee whose job is to be eliminated.

14

2.      The employee whose job is to be eliminated shall have the option of exercising their seniority rights as outlined below or can elect to go to the on-call list.

3.      To implement F below, "walk-on capability" means that an employee previously and successfully held the job pursuant to a bid, assignment by the Employer, or by exercising seniority rights.  The employee must demonstrate a present ability to perform the job adequately after a full shift refresher training. An employee who fails to demonstrate such a present ability in the judgment of the Employer, subject to the grievance procedure, shall be placed on-call.

4.      In determining wage brackets, relief differentials shall be disregarded.

F.      The employee whose job is to be eliminated shall have the following seniority rights which shall be exercised in the order listed. During the bumping process, if an employee is notified that a bump will occur that may affect them, they are to be present at the date and time specified by the company or be immediately available at a phone number they have provided when notified of the potential bump. If they are not immediately available at the time of bump, a Union Business Agent or Secretary/Treasurer will speak on their behalf.

Walk-on capability applies to 1-5. Employees exercising their bump option will displace the employee with the least location seniority in the following order.

Area is defined as working area (Production Dept has four areas: Cheese, Processing Whey and Warehouse.  Lab Dept has two areas: Main and Melt.  Maintenance has three areas: Mechanics, Parts and Utilities. Clerical is one area.)

If a vacation relief or day off relief employee's job is eliminated, he or she may select which shift among those to which he or she is assigned to exercise his or her bumping rights.

1.      Least Location Seniority:
        a.      Same shift, same department (walk-on capabilities)

2.      Least Location Seniority:
        a.      Any shift, same department (walk-on capabilities)

3.      Least Location Seniority:
        a.      At location, he/she shall be given a break-in period of 10 working days to assist the employer in determining his/her capabilities. The 10 working days may be extended up to an additional 10 days upon mutual agreement between the Company and the Union.

4.      Bid-Holder on call

5.      May return to original bid within 12 month reactivation.

G       Any employee displaced by the operation of this Section shall himself exercise his/her seniority rights in the manner set forth above.

H.      The parties acknowledge the unique nature of the Meiji/P2 operations. For purposes of these operations only, Meiji/P2 will be considered to have had a temporary work stoppage if it is inactive for up to twelve (12) consecutive work weeks. If the operation is inactive for more than twelve (12) consecutive work weeks, the job will be considered eliminated. If there is a temporary work stoppage, the following will apply to Meiji/P2 bidholders and Meiji support personnel:

15

1. Receive no less than Bracket 2 for all hours worked.

2. Must return to Meiji/P2 once the operation reactivates.

3. Bid rights will be restored only 12 months from the original bid, or when the job is eliminated.

4. Will go, in seniority order, to the bid-holders on-call list and will be assigned work the employee is qualified to perform and/or would be trained on job(s) requiring five (5) days or less of training, based on the needs of the business, in accordance with Section 6.1. Bid-holders have preference over non-bidholders on the on-call list.

If the Meiji/P2 operation is eliminated, i.e., inactive for more than twelve (12) consecutive work weeks, the Meiji/P2 bidholders and Meiji support personnel may exercise seniority rights under Section 17F and bidding rights will be immediately restored.

I. Temporary Work Stoppage. With the exception of Meiji/P2 bidholders and Meiji support personnel, any bid job that is not scheduled for any one-week period is defined as a temporary work stoppage and is not considered a job elimination. Affected employees may exercise their seniority rights in Section F above, or they may go to the on call list as a bidholder. Job bidding rights are not reinstated during this temporary work stoppage. If job is eliminated, employees may exercise their seniority rights in Section F above and their bidding rights are restored.

J. Seniority shall be broken if any employee quits, is discharged or is laid off for more than one (1) year or if any employee has failed to report back for work within three (3) calendar days after being notified to do so, provided that a written notice by registered or certified mail was sent to said employee at his/her last address on file with the Employer.

K. An employee shall not acquire seniority during his/her first sixty-six (66) days actually worked; provided, that if an employee is employed more than sixty-six (66) days actually worked, his/her seniority shall commence with his/her date of hire.  Employees who are assigned to a workweek consisting of four (4) ten (10) hour days shall acquire seniority after fifty-three (53) days actually worked.

L. Seniority lists shall be submitted to the Union on request, but not more often than once every six (6) months.  Any question concerning the application of seniority under this Section may be reviewed as provided in Section 33 of this Agreement.

M. When an Employer calls employees back to work after a layoff, said employees shall be called to work in order of seniority, provided the employee can perform the available work.

N. For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Lab employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

O. For purposes of this Section, area is defined as working area (Production Dept has four areas: Cheese, Processing Whey and Warehouse.  Lab Dept has two areas: Main and Melt. Maintenance has three areas: Mechanics, Parts and Utilities. Clerical is one area.)

**Section 18.      Job Bidding**

A. Promotions to the job classifications of working Foreperson shall be made in the order of seniority if the employee having seniority is qualified to perform the job. The filling of vacancies in said job classification is excluded from the job bidding procedures as set forth

herein. However, when such vacancies occur, employees shall be advised by posted notice. Any employee may express interest in this vacancy by submitting a written letter stating their desire and qualifications for consideration. The Employer shall interview all interested employees that have submitted letters of interest and select the most senior employee that the Employer considers to be qualified. Forepersons who bid into another job and are either disqualified or decline that job bid, within the 10-day training period, will be allowed to return to their Foreperson appointed position.

B.  If an employee becomes disabled per the Americans with Disabilities Act, the employer will reasonably accommodate such qualified employee as required by applicable state and federal laws, subject to the provisions of this Agreement. The Employer will consult with the Union in formulating reasonable accommodations, but retains the right to make the final determination.

C.  Temporary positions of ninety (90) days or less may be filled without reference to the provisions of this Section. This period may be extended by agreement of the Employer and the Union.

D.  Any vacancy or job opening resulting from the reactivation of a job that was eliminated in the previous twelve (12) months shall not be subject to the bidding procedure, if the employee previously performing said job is eligible for recall to active employment, has not exercised bid rights, is currently in the employment of the Employer, and chooses to return to said job.

E.  Except as specified above, whenever vacancies occur in any job classification covered by this Agreement, said vacancies shall be filled in accordance with the procedures herein set forth:

1.  All such vacancies shall be conspicuously posted for bidding at mutually suitable locations designated for this purpose within fifteen (15) days after they occur. They shall be posted on a form which shall give the job titles or the principal job titles in the case of a combination job, requirements, hours, days off, location and wage rate of the job. If there are any changes from the previous job bid or duties of that job bid, it is agreed that Union and Employer will review bid prior to posting. Copies of jobs bids and awards will be provided to the Union.

    Disputes regarding requirements shall be resolved pursuant to Section 33. The vacancies shall be posted for a period of one hundred twenty (120) hours, and the bid form shall remain posted for seventy-two (72) hours after the end of the posting period. The Employer shall retain completed bid forms for a period of two (2) years. During this period the forms shall be available for inspection and copying by Union representative.

2.  The job vacancy will be filled within sixty (60) days after the job has been awarded. In the event that the Employer is unable to fill the job within this period, the circumstances will be reviewed with the Union and the time limit for filling the vacancy may be extended by mutual agreement. If the employee is not put on the job within 60 days, unless mutually agreed to extend due to no fault of the employer, employees' bid rights will be restored. Employee must go to the new job unless he exercises his restored bid rights to go to another job.

    a.  Once an employee is awarded a new bid job, the employee will be moved immediately, if possible, for a period of no more than ten (10) days (or longer if mutually agreed to by Local 517 and LFC) to satisfy the terms of Section 18E-7 of the CBA. The initial ten (10) day period will be uninterrupted. After this period, a mutual decision is made to determine: (1) If the employee qualifies for the position, and/or (2) If the employee accepts the new job bid

or chooses to return to his/her former job bid. If the employee qualifies and accepts the new bid, the process then begins of back filling and training to replace the employee. The employee may be placed back in their original job bid at the new rate of pay (or same pay if the new bracket is less).

If the employee fails to qualify or chooses to return to their former job bid, the employee loses bid rights per contract and the next senior qualified eligible bidder is now awarded the bid job as of that date and goes through the same process. If an employee elects to decline the awarded job bid, they shall do so in writing on a form provided by the Employer, prior to the end of their 10-day (or extended) training period.

b.   If an employee is on a LOA at the time they are awarded a job bid, they will have two options:

Option 1:   If they accept the job bid within 30 days from the date of the award, that is their job and the bid process continues. Upon their return, they begin their 10-day training. If disqualified, they will go to the on-call list. The employee loses bid rights per contract.

Option 2:   If the employee declines Option 1, they have up to 60 days from the date of the initial bid award to be fully released to perform the essential functions of the job and commence their 10-day training. If disqualified, they return to their previous job. If the employee is not released within the 60 - day period to commence their 10-day training, they are disqualified from the awarded job and keep their previous job bid. The employee loses bid rights per contract and the next senior qualified eligible bidder is awarded the job bid.

If any employee elects to decline an awarded job bid, they shall do so in writing on a form provided by the Employer, prior to the end of their 10-day (or extended) training period.

c.   If the employee has not started the 10-day training period within 45 days of being awarded the bid, and the awarded employee turns the job bid down, the next senior eligible bidder will be given the opportunity to accept or decline the job bid. If the second employee declines, they will not lose bid rights. This process will continue, in seniority order, until the first senior eligible person accepts the job bid. If everyone declines, the job bid will be re-posted.

3.   For purposes of this Section, the following departments are recognized: production employees (which includes Cheese, Processing, Whey and Warehouse employees), Maintenance employees, Laboratory employees, Administration employees, and such other departments as may be agreed upon by the Employer and the Union.

4.   The Employer shall give consideration to any bid made by any employee who has been employed a minimum of 90 calendar days; however; the employer shall not give consideration to any bid made by an employee who has successfully bid on a job within the preceding twelve (12) month period, unless such employee's days off are changed or his/her starting time or length of shift is changed by more than two (2) hours on two (2) or more days per week or an employee has met the ninety (90) days Class A requirement but failed to qualify.

5. Only bids submitted within the one hundred twenty (120) hour period during which the vacancy was posted shall be considered by the Employer.

6. The job vacated by the employee successfully bidding on a posted vacancy shall be posted and filled in accordance with the provisions of the Section (Bid #2); the job vacancy thereby resulting shall be posted and filled in accordance with the provisions of the Section (Bid #3). The 4th bid will be posted and awarded to the senior on-call person who has signed the bid and has bidding rights. If no on-call employee with bid rights signs the #4 bid, the senior employee on the on-call list in that department will be assigned the position. They will retain bidding rights, but they must qualify for the position as per Section 18E7 of this Agreement. If they fail to qualify, they will lose seniority rights and their employment will be terminated. Foreperson position openings that result from this bid process will be counted in this 4th bid give-away procedure.

   In the event a fourth bid job is an A shift or any bid job with "Saturday-Sunday" scheduled days off position, the bid will be awarded pursuant to Section 18 guidelines of qualifications, eligibility and seniority. The resulting vacancy created by this fourth bid A shift or weekend off position will then be awarded by the employer per the 4th bid procedure above.

   Shift A is defined as any job starting between the hours of 4:00 a.m. and 12:00 p.m.

   On a first, second or third job bid where there are no eligible bidders, it will be assigned in the same manner as the #4 bid.

   All jobs will be awarded, including the fourth bid in succession, and will be subject to the twelve-month lockout.

7. The bidder having location seniority shall be awarded any job required to be submitted to bid pursuant to the provisions of this Section, provided the bidder is capable of performing the job.  If a successful bidder fails to qualify during his/her first ten (10) working days on said job, he/she shall be restored to his/her former job and the bid job shall be awarded to the next senior bidder on the original posting, provided he/she is capable of performing the job.  During the period the successful bidder is qualifying, his/her former job may be temporarily filled without regard to the bidding procedure.  A bidder who is awarded a job and fails to qualify shall be considered a successful bidder.  The ten (10) working days may be extended up to an additional ten (10) days upon mutual agreement between the Company and the Union.

8. Whenever no bids are submitted for a job opening or whenever no employee submitting a bid is capable of performing the job (for example, maintenance, lab, clerical), and all provisions of Section 18E6 have been met, the Employer may select an employee to fill such job without regard to the provisions of this Section.

9. Positions which are filled shall not be rebid unless the skills or responsibilities required of the position change substantially. LFC and Union will meet and review to determine if there has been a substantial change, when necessary.

F. 1. Vacation Relief bids, that are limited to those bid positions covering multiple shifts that may have varying or rotating days off, will have the option of locking in their bid for an initial three-year period (and subsequent one-year periods) and receive a premium as described below. The premium will only be applicable to those Vacation Relief employees who do lock in their bid. Present Vacation Relief bid holders may,

19

at their option, lock in their present bid for an additional three years, thus becoming eligible for the premium. At any time a Vacation Relief employee who previously elected not to lock in his/her bid wishes to do so, he/she will immediately become eligible for the premium; provided he/she locks in for an initial three-year period. Once the initial three-year lock-in period requirement has been satisfied, subsequent lock-in periods will be one year increments provided the individual has not left the previously locked-in bid position. In the event a Vacation Relief employee leaves their position and subsequently returns to a Vacation Relief position and elects to lock in, they would then start over with the initial three-year lock-in period.

3.  A lock-in premium of $.25 per hour will be paid for all hours worked, including vacation and holiday hours, for the first year. Beginning the second year of lock-in, he/she will be paid $.50 premium for those hours worked, including vacation and holiday hours, For the third year hours and all succeeding years he/she will be paid a lock-in premium of $.75 for all hours worked, including vacation and holiday hours. Further, the amount of the lock-in premium will be determined by considering the number of continuous years in the current Vacation Relief position.

G.  For Maintenance Mechanic positions only, when such vacancy occurs, employees shall be advised by posted job bid. Internal maintenance qualification test can be taken only once every 12 months.

## Section 19.        Visits to Plants

Visits by Union Representatives.  An authorized representative of the Union shall have access to the Company's plant at reasonable times, provided such representative:

A.  Informs management of his/her visit upon arrival;

B.  Confines his/her activities to collecting dues, observing the application of this Agreement, and adjusting grievances; and

C.  Carries out his/her activities without unreasonable disruption of work schedules or unnecessary loss of employee's time.

## Section 20.        Bulletin Board

Notice of Posting and Distribution.  The Union shall be provided with a bulletin board at each time clock; notices posted shall be restricted to:

A.  Union recreational and social activities;

B.  Union elections and results, appointments of Union representatives;

C.  Union meetings; and

D.  Other subject matter mutually agreed upon by the Union and the Company.

Prior to posting or distributing a notice, a copy shall be submitted to the plant manager.

## Section 21.        Wage Reductions

No employee shall suffer reduction in wages or loss of working conditions through adoption of this Agreement.

**Section 22.**        **Meal Periods**

A.    Each employee shall be granted meal time off not sooner than two and one-half (2½) hours and not more than five (5) hours after the beginning of his/her shift.  Meal periods are unpaid.

B.    Employees may waive their meal period if they work a shift that is not longer than 6 hours.  Otherwise, all work performed after five (5) consecutive hours without receipt of meal time off shall be compensated with penalty pay equal to the greater of (i) one hour of regular rate of pay or (ii) half time in addition to the scheduled rate of pay up until the time the employee takes his/her meal period.   Whenever possible, employees must notify their supervisor or a supervisor in advance any time they are unable to take their meal period prior to 5 hours after the beginning of his/her shift.

C.    Where the nature of the work prevents an employee from taking an off-duty meal period, the Employer may schedule a shift of eight (8) continuous hours by written mutual agreement with the Union and the affected employee.  In that situation, the meal period shall be considered an on-duty meal period which shall be paid time.

D.    No employees of Leprino Foods, Lemoore East plant work paid lunches unless job bids so state, and/or mutual agreement between the Company, the Union and the affected employee.  The Company and the Union agree that all employees are provided with and are expected to take a 30-minute off-duty meal period for every 5 hours worked.  Employees in the following positions have historically chosen to work through meal breaks: Processing Sanitation, Cheese Sanitation, Forepersons, Whey Department and 3rd Shift Warehouse.  If these employees choose to work through their meal periods, they will be paid for the time worked, but will not receive penalty pay.  At no time will any employee be required to work through a meal period.  No employee is permitted to work through his or her second meal period if he or she works more than 10 hours and did not take a first meal period.  Employees in other positions that have not historically chosen to work through meal breaks will not generally be permitted to choose to work through a meal period.

**Section 23.**        **List of Employees**

Periodically or upon request, but not more often than once every three (3) months, the Employer shall furnish the Union with a complete list of employees, the classification of each and pay of each.

**Section 24.**        **Union Relations**

A.    Right of the Parties.  The Company retains all rights, except as those rights are limited by the subsequent Sections of the Agreement and in the Supplemental Agreements, which are part of this Agreement.  Nothing in this Agreement shall be construed to impair the right of the Company to conduct all its business in all particulars except as modified by subsequent Sections of this Agreement.

1.    The Union has all rights, which are specified in the subsequent Sections of this Agreement and the Supplemental Agreement which are part of this Agreement, and retains all rights granted by law except as such rights are limited by provisions of this Agreement.

2.   It shall not be a violation of this Agreement, and it shall not be a cause for discharge or disciplinary action if an employee refuses to cross a primary lawful picket line established at the Lemoore plant which has been sanctioned by the appropriate Joint Council.

B.   Strikes and Lockouts.  During the life of this Agreement, there shall be no lockout and there shall be no strikes of any kind (including sympathy strikes, unfair labor practices strikes, politically motivated strikes, work stoppages and slowdown) picketing boycotts, deliberate withholding of production, interference with or suspension of work, regardless of whether the conduct is in protest of the actions of a party or non-party to this Agreement and regardless of whether the matter or actions precipitating the conduct are resolvable under the grievance process.

1.   The Company shall not lockout the employees and the Union shall not authorize, call, encourage, or assist the conduct prohibited above.  Further the Union shall exert its best effort to bring about the immediate termination of any such conduct.

C.   The parties recognized the right of the Company to take disciplinary action, including discharge, against any employees who participate in violation of this Section, whether such action is taken against all or only some of the participants provided that the Company articulate a business reason.

## Section 25.      Work in Two or More Classifications

All employees whose work regularly falls in more than one (1) bracket shall be paid a rate mutually agreed upon between the Employer and the Union.

## Section 26.      Protective Clothing

A.   The Employer will provide parkas, protective headgear, gloves and foot gear necessary to perform work in a sharp room.  A sharp room is defined as a room in which temperature is normally kept at less than 32 degrees Fahrenheit.

B.   The Employer will provide to each eligible plant employee appropriate footwear under the following conditions:

1.   The manufacturer, supplier and style of footwear is to be determined by the Employer.

2.   No employee is to appear on the job without such footwear where so required by the Employer.

3.   No employee shall wear the footwear supplied by the Employer except on the job.

4.   Where rubber boots are required, the Company shall be notified no less than seven (7) days in advance of the time new boots are required.

5.   The Company will provide appropriate footwear as needed and within the guidelines agreed to at Joint Labor Relations Committee Meetings.

6.   The Company will issue boots of proper size.

## Section 27.      Break-In Period

All new employees hired may be employed at a rate of pay 30% less than the classification rate for the first six months; at a rate of 25% less than the classification rate for the second six months; and at a rate of 20% less than the classification rate for the third six months.

100% of classification for work performed beginning, with the first pay period following eighteen (18) months of employment.

In the event a new employee under the break-in rate is awarded a bid job, upon the successful completion of the bid qualification, will move to full pay for the bid job awarded. In the event the employee loses this bid job by no fault of their own, he/she shall be deemed to have completed the break-in period.

### Section 28.        Pay Days

All employees covered by this Agreement shall be paid in full on a bi-weekly basis.

### Section 29.        Remittance Advice

It shall be possible to determine from the stub accompanying an employee's paycheck the following items: regular hourly earnings, overtime earnings, social security deduction, disability insurance deduction, withholding tax and any other deduction authorized by the employee.

### Section 30.        Management Trainees and Interns

Employer and Union mutually agree that the Employer may employ Management trainees and interns to learn the operations of the business. In so doing, the trainees and interns will not displace or deny work opportunities to any bargaining unit employees.

Management trainee is defined as an exempt level employee training for a supervisory position and an intern is defined as a college student conducting project-based studies during a specific period of time.

The Union shall be informed of all trainees and interns in the facility and will meet with the Company to discuss if any issues/concerns arise.

### Section 31.        Sick Leave

Every employee covered by this Agreement shall be entitled to sick and accident leave benefits under the following conditions:

A.    1.    Benefits shall be earned at the rate of four (4) hours per month up to a maximum of forty-eight (48) hours in any contract year.  Benefits can be accumulated to a maximum of four hundred (400) hours.

       2.    An employee who has perfect attendance during the twelve (12) month period between December 1 and November 30 and has accrued over 400 hours of sick leave as of November 30 will receive a perfect attendance bonus equivalent to one hundred percent (100%) of the employee's hourly rate for each hour over 400 hours accrued.  Perfect attendance means working all scheduled time of every scheduled day except for vacations, holidays, jury duty, funeral leave and time missed with the approval of the Employer.

             An employee who has less than perfect attendance during the twelve month period between December 1 and November 30 and has accrued over 400 hours sick leave as of November 30, will receive a bonus equivalent to 50% of the employee's hourly rate for each hour over 400 hours accrued.

       2.    Any employee retiring during the year will be paid at prorated amount under Section A. 1. or 2. above.

3.  At retirement, employees with earned sick leave balances will be paid out as follows:

    a.  Employees with balances of forty (40) to one hundred twenty (120) hours will be paid at 50%.

    b.  Employees with balances greater than one hundred twenty (120) hours will be paid at 100%.

B.  Employees shall start earning sick leave benefits as follows:

1.  A newly hired employee who has not worked under this Agreement during the previous twelve (12) months is not eligible to earn sick leave benefits until ninety (90) days after the commencement of his/her employment and having worked eighty (80) hours in the previous month.

2.  An employee who returns to employment within twelve (12) months will start earning sick leave benefits the first day of the month following employment and having worked eighty (80) hours in the previous month.

3.  An employee who returns to employment after twelve (12) months is not eligible to earn sick leave benefits until ninety (90) days after the commencement of his/her employment and having worked eighty (80) hours in the previous month.

C.  Sick benefits shall be payable for their scheduled hours of the day in two-hour increments from the first day of absence due to illness.

D.  Sick benefit payments, including disability insurance or worker's compensation payments, for any week, shall not exceed an employees normal straight-time weekly earnings, including shift differential, if any.

E.  Sick benefits are payable only for any employee's regularly scheduled work days on which he/she is off sick.

F.  The Employer will require a doctor's certificate or other satisfactory proof of illness, accident or return to work, when the absence is more than three days.  Other than in connection with FMLA, or similar laws, the employer will not require a doctor's certificate for absences of three days or less.

G.  Sick leave benefits shall accrue only for employees who work eighty (80) hours or more in a calendar month.

H.  Any employee found to have willfully abused the sick leave provisions shall be subject to immediate dismissal.

I.  Benefits shall not be payable for any period more than twenty-one (21) days prior to the filing of a claim as hereinafter prescribed.  Benefits shall be paid within thirty (30) days after the filing of a valid claim.  If an Employer has to pay a valid claim within the time set forth in this Section, liquidated damages shall be added to the valid claim in an amount equal to ten percent (10%) thereof, provided that if the request is made for submission of the validity of the claim to an Arbitration Board or Arbitrator pursuant to Section 33, the time between making the request and final determination of validity shall not count as part of the thirty (30) day period.

1.  Claims shall be filed in writing with a designated management representative at the employees place of employment.  The employee shall receive for his/her use a copy of the claim form filed;

2.  For purpose of this Section, a claim shall be deemed valid unless a request is made for an Arbitration Board within thirty (30) days of the filing of the claim.

J.  If an employee is absent on account of sick leave more than five (5) working days, he/she shall notify the Employer no later than the close of his/her regular shift next preceding the day on which he/she will be able to return to work, before the Employer shall be obligated to restore him to the job.

K.  A record of the sick leave benefits accumulated by an employee shall be furnished to the Union by the Employer upon receipt of written request therefore.

L.  Absence Notification.  The employee shall notify the Employer, in a manner prescribed by the Employer, of the employee's expected absence no later than ninety (90) minutes prior to commencement of his/her required start of shift.  Failure to comply with the notice requirement of the preceding sentence shall subject the employee to disciplinary action.

M.  When an employee is on the bid holder's on call list or the on call list and is called in for unscheduled work and the employee declines the work the employee will not be paid sick leave. The employee is declining work and not entitled to sick pay.

Unscheduled is defined as work that is to be performed in the same day the employee is called.

## Section 32.       Leave of Absence

Leaves of absence shall be granted only upon written approval of the Employer and the Union.  A copy of the written approval shall be furnished to the Union and to the employee.

## Section 33.       Arbitration

A.  It is the desire of the parties to this Agreement that all disputes arising out of the Agreement shall be settled amicably.  For this purpose, it is hereby agreed that the procedure set forth below shall be followed to facilitate such settlement.

B.  A concern raised by the Union shall be presented in the following manner:

1.  Step One.  The employee (with or without a Steward) will meet with his/her Supervisor or Department Manager to discuss their concern and will do so within ten (10) days of the time the concern first came to the attention of the employee or should have, in the exercise or reasonable diligence, come to the attention of the employee.

2.  Step Two.  If Step One has been timely invoked and the concern has not been resolved within five (5) days after receipt of Supervisors or Managers response, the employee and the Union (Business Agent) will notify the Plant Manager or his designee of an unresolved concern and schedule a meeting to attempt to resolve the matter within 15 days of such notice.

3.  Step Three.  If Step Two has been timely invoked and the concern is not resolved within five (5) days after it was presented to the Plant Manager, the Union must file a formal grievance in writing to the Plant Manager and Plant Human Resources Manager within 15 days.

The formal written grievance shall set forth the following information as a minimum:

a.   The name and location of the Employee involved;

b.   The substance of the grievance including the date when it occurred;

c.   The sections of the contract which the grievant claims have been violated;

d.   The relief sought by the grievant; and

e.   The date of the first discussion with a local management representative and the name of that representative.

The Employer will respond to the written grievance in writing within 15 days of receipt of such written grievance.

4.   Step Four.  If Step Three has been timely invoked and the grievance is not resolved within five (5) days of union receipt of written response, either party may request that it be submitted to an Arbitration Board consisting of two (2) representatives each appointed by the Union and the Employer.  Such a request must be made within 15 days. No Board member shall be an employee of Leprino Foods or member of Local 517, unless mutually agreed upon. The Arbitration Board shall meet not more than 30 days after the written request has been made.

5.   Step Five.  A majority vote of these Board members hearing a grievance shall be necessary before the Board's decision is final and binding upon the parties.

If the Board cannot reach a final and binding decision upon the matter submitted within five (5) days after the close of hearing, the parties shall be so notified.

Within ten (10) days after receipt of notice from the Arbitration Board of its failure to reach a decision, either party may demand that the grievance be submitted to a single impartial arbitrator to be selected by the parties.  If neither party files such a demand, the grievance shall stand as dismissed by the Arbitration Board.

When arbitration is demanded, the parties shall have ten (10) days after the demand within which to select an arbitrator to process the dispute to final and binding resolution. If the Union and Employer cannot agree on the selection of an arbitrator, then the parties shall request that the Federal Mediation and Conciliation Service (FMCS) nominate a panel of seven (7) arbitrators. The Union and the Employer shall alternately strike one (1) name until only one (1) name remains on the list; the remaining name shall be the person designated as the arbitrator. The party to strike first shall be decided by coin toss.  If the arbitrator selected is not willing or able to hear the matter for any reason, then the Union and the Employer shall request a new list of seven (7) arbitrators from the FMCS and follow the selection process set forth in this paragraph until an available arbitrator is selected. If both the Union and the Employer agree that none of the arbitrators supplied by the FMCS on any panel of seven (7) is satisfactory, then a new panel may be requested from the FMCS.

C.   If the parties are unable to agree upon a single impartial arbitrator to hear the dispute within the ten (10) days after the submission demand has been made, pursuant to subsection (b), either party may seek to have the Superior Court of the State of California in and for the County in which the Union party has its principal office designate such an arbitrator pursuant to the provisions of the Code of Civil Procedure Section 1281.6.

D.   The decision of the arbitrator shall be final and binding.  Pending final settlement of a dispute in accordance with the provisions of this Section, there shall be no cessation of, or interference with work whether by strike, lockout, intentional slowdown or otherwise.

E.   Service and filing of any document described in this Section may be personal, by delivery to the party to be served or his/her attorney, or may be by mail upon the party to be served in

accordance with the provisions of the Code of Civil Procedure Section 1011-1013.

F.      In computing any time period prescribed by this Section, the date of the act, event or default after which the designated time period begins to run is not to be included, unless it is a Sunday or a legal holiday.

Intermediate Saturdays, Sundays and holidays shall be included.

G.      By agreement of the parties, time limits provided by this Section may be extended and compliance with any procedural step may be waived. The Employer shall not unreasonably withhold its agreement to extend the time limits set forth above, provided further the request to extend the time limit is made before the time limit has expired.

H.      Expenses of an arbitrator shall be borne equally by the parties.

I.      Neither the Arbitration Board nor an arbitrator shall have the authority to amend, modify or alter the Agreement.

## Section 34.    Jury Duty

A.      The Employer shall reimburse an employee for any loss of wages caused by such employee performing jury duty for a maximum of ten (10) working days during a calendar year.

B.      On any day on which an employee is called for jury duty, he/she shall not be required to report for work on any shift starting prior to the time he/she is due to report for said jury duty.

C.      If documented jury duty, plus travel time (30 min) is less than or equal to four (4) hours, the employee will report to supervisor for remaining work hours up to eight (8) at normal wage rate, or has option to decline work and be paid for time served on jury duty only. If employee serves over four (4) hours, he/she is not required to return to work and will be paid eight (8) hours. This language would also apply to any swing shift employee selected to serve on the jury.

D.      An employee's starting time shall not be changed on any day for which he/she is called for jury duty. Days off cannot be changed solely because an employee is called for jury duty.

E.      No employee shall be required to work a scheduled shift starting after 7 p.m. (5 p.m. for employees working a ten (10) hour shift) on the day before a day on which he/she is required to report for jury duty.

F.      Mandatory Grand Jury service (not voluntary) will be reimbursed in accordance to this Section.

G.      In the event jury duty assignment goes beyond the 10 day period as indicated above in Subsection A, the employer and employee may work together to develop a modified work schedule.

## Section 35.    Performance of Work Covered by This Agreement

A.      The Employer agrees that its employees, who are not covered by this Agreement, shall perform no work covered by the Agreement, except:

1.      In case of emergencies; or

2.      In training or instructing another employee.

B.   If a grievance is filed within thirty (30) days, the parties, the Arbitration Board or the Arbitrator as the case may be, shall assess liquidated damages in an amount not to exceed one hundred dollars ($100.00) against the Employer for violation of this Section.  Damages so assessed shall be paid over to a charity designated by the parties.

C.   No working Foreperson shall effectively hire or fire or issue written warnings to any employee.

## Section 36.   Transfer of Company Title or Interests

A.   This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns.  In the event an entire operation or portion thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment or receivership or bankruptcy proceeding (unless otherwise provided by law) such operation shall continue to be subject to the conditions of this Agreement for the remainder of its then existing term.

B.   In the event the Employer fails to require the purchaser, the transferee or lessee to sign this contract or to otherwise assume the obligations of this contract, the Employer shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure.  When the purchaser, transferee or lessee signs this Agreement or otherwise assumes its obligations, the Employer shall be under no further liability to the Union or to employees by reason of this Section.

C.   The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee or assignee of the operation covered by this Agreement or a part thereof. Such notice shall be in writing with a copy to the Union no later than the effective date of the sale, transfer, lease or assignment.

## Section 37.   Severance Pay

Whenever an employee is terminated, he/she shall receive severance pay benefits pursuant to the provisions set forth below:

A.   Upon completion of five (5) years of unbroken service, an employee shall be eligible for a severance benefit equal to twenty (20) hours of pay at the employee's regular straight time rate.  The night work pay set forth in Section 9 shall be included in the employee's straight time rate to the same degree it is included in the calculation of vacation allowance under Section 8.

B.   The employee shall be eligible for an additional twenty (20) hours severance pay benefit for each additional year of severance through the fifteenth (15th) year.

C.   For each year of unbroken service in excess of fifteen (15), the employee shall be eligible for an additional forty (40) hours severance benefit; provided, that in no event shall the total severance benefit to which an employee shall become entitled to exceed four hundred (400) hours.  The yearly severance benefit due an employee shall be proportionately applied to any period of service between the employee's most recent anniversary of hire and the date of his/her termination.

D.   No severance benefit shall be due under this Section to an employee under any of the following conditions:

1.   The employee quits or is discharged for cause.

2.   The employee is currently eligible to receive retirement benefits under the Social Security Act and under the Western Conference of Teamsters Pension Plan.

3.   Prior to his/her termination, the employee is offered regular full time employment within the jurisdiction of the Local Union. If the employee rejects the employment offer, he/she is not entitled to severance pay. If he/she accepts the offer and is subsequently terminated for just cause, he/she shall receive severance pay based upon his/her company seniority.

4.   Prior to his/her termination, the employee is offered and accepts full time employment, at a location of the Employer, outside the jurisdiction of the Local Union. If he/she is subsequently terminated, unless he/she quits or is discharged for just cause, he/she shall receive severance pay based upon his/her company seniority. However, if he/she rejects the above employment offer, severance pay shall be paid.

5.   If an employee is on layoff at the time of the closing, and his/her seniority has not been broken, he/she shall not be eligible for a severance benefit if he/she has regular full time employment elsewhere.

6.   At the time an employee is laid off, he/she shall have the option to receive the severance pay, if any, to which he/she is then entitled, or to retain his/her recall rights for a period of twelve (12) months. If he/she elects to retain his/her recall rights, and he/she is not recalled within twelve (12) months of his/her layoff, he/she shall thereupon be entitled to his/her severance pay; provided that if the plant closes and one of the conditions described in Paragraph (D) (3), (4), or (5) above applies, he/she shall not be entitled to severance pay.

E.   The seniority of an employee shall be broken upon his/her receipt of a severance benefit.

F.   Severance benefits shall be paid to the employee no later than his/her final paycheck.

G.   The severance benefits provided by this Section shall be exclusive of all other benefits under this Agreement.

H.   This Section shall not apply if the work at the closed plant or location is transferred to another plant or location covered by this Agreement.

I.   Upon the completion of five (5) years unbroken service to the Employer, an employee shall be eligible for a severance benefit payable at the end of twelve (12) months, or his/her termination or layoff, in the event said employee cannot find employment with any of the signatories to either the Fluid or Manufacturing Milk Agreements under Local Unions 137, 386, 517 jurisdiction. In the event said employee is offered regular full time employment by the aforementioned Employers within the twelve (12) month period, he/she shall lose any right to severance pay.

## Section 38.        Transfer of Personnel

A.   Whenever, within the geographic area covered by this Agreement, a new operation is opened, except as a replacement for existing operations within the geographic area covered by the Agreement, the Employer shall offer, pursuant to the provisions of Section 17, the opportunity to transfer to regular positions in the new operation to employees in those operations within the geographic area covered by this Agreement affected in whole or in part by the opening.

B.   Whenever the new operation is opened as a replacement of an existing operation located within the geographical area covered by this Agreement, employees in the operation being replaced shall be offered, pursuant to the provisions of Section 17, employment in a regular

full time position at the new operation.  If all regular full time positions are not filled by employees from the replaced operation, the remaining such positions shall be offered to employees at other operations located within the geographic area covered by this Agreement.

C.  Provided, however, that the limitation of Section 18 relating to one (1) job bid per year are not applicable to bids submitted under the conditions set forth herein.  Provided further, that the provisions of this Section shall be deemed applicable for a period of six (6) months subsequent to the commencement of operations at the new plant.  The departmental seniority of employees at the new operation shall date from the commencement of his/her most recent period of unbroken service for the Employer in the same department.

D.  In the event regular full time jobs thereafter remain un-filled, the Employer may obtain employees without reference to the provisions of Section 18.

E.  The transferred employees shall, for a period of thirty (30) days following transfer, have an unqualified right to return to their former operation if it is still in existence and retain their seniority at their former operation.  Employees who avail themselves of the transfer privilege, while they are on layoff at their original operation, may exercise their seniority rights if work becomes available at their original operation during the one (1) year layoff period allowed them at their original operation.

F.  When an operation is closed and the work of the operation is eliminated, an employee who was formerly employed at another operation shall have the right to transfer back to such former operation and exercise his/her seniority based on date of hire provided he/she has not been away from such original operation for more than one (1) year.

G.  When an operation is closed or partially closed and any of its work is transferred to another location, vacancies resulting from the transfer shall be filled in the following manner;

1.  If any employees are on layoff at the location to which the work is transferred, the recall provisions of Section 17 shall be applied first.

2.  An employee whose work is transferred shall first be offered his/her work in the same classification at the location to which it is transferred.  This offer shall be made in the order of location seniority among the employees whose work is transferred.

3.  Any vacancy remaining in the transferred work shall be posted in accordance with the provisions of Section 18 for bidding by employees at the location to which the work is transferred.

4.  Any vacancies then remaining in transferred work shall be offered to employees in the department at the location where the work was performed, who have become unemployed by reason of the transfer.  Such offer shall be made on the basis of their location seniority, provided the employees are capable of performing the work.

5.  Any vacancies still remaining in transferred work shall be filled by the Employer without regard to the provisions of Section 17 and 18.

6.  When work other than route work is transferred pursuant to this Section, all employees who transfer with such work within sixty (60) days of the date of transfer of the first such employee shall be deemed to have transferred on the same date as the first transferring employee, and their location seniority at the transfer location shall commence at that date.  Among the employees who transfer their relative departmental and location seniority shall be based on their relative departmental and

location seniority at the former location.  When more than one (1) route is transferred to location within sixty (60) days, the same principle shall apply.

7. Provided that if no regular work is available, the Employer during the period for which an employee's seniority remains unbroken, shall offer the employee employment in the same department at other operations within the area covered by this Agreement on the basis of the employee's departmental seniority, provided that this paragraph shall be applicable only at operations at which no employees are on a layoff status.

8. Except as provided in Paragraph H below, such employees shall go to the bottom of the seniority list and shall have the right of job selection and other contractual rights in accordance with the seniority at the new operation.

H. Whenever an employee is transferred pursuant to the provisions of this Section, his/her length of vacation, his/her severance pay and his/her accumulated sick leave benefits shall be based upon his/her most recent period of unbroken service under the collective bargaining Agreement of the Employer.

I. As used in this Section, the term operation shall include a plant, branch or division of the Employer.

## Section 39.          Dues Deduction

A. The Employer shall deduct monthly dues of such amount as has become due from the wages of each employee who has filed with the Employer a written assignment of such monies to the Union having territorial jurisdiction in the area which the individual is employed.

The assignments shall be irrevocable for a period of one (1) year or until the termination of this Collective Bargaining Agreement, whichever occurs sooner.

B. The assignment shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable Collective Bargaining Agreement, whichever shall be shorter, unless written notice is given by the employee to the Employer and to the Union not more than (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year or of each applicable Collective Bargaining Agreement.

C. The appropriate deduction shall be made on the first day of each month and shall be forwarded to the designated Local Union forthwith.

## Section 40.          Bereavement Leave

A. Upon providing proof of death, an employee who loses time on scheduled work days on account of the death of a member of his/her immediate family will be paid as a result of attending to pre-burial, burial, or post burial matters, as defined in B. below.

B. For the purpose of this Section, a member of the employee's immediate family is defined as:

1. Spouse, son, daughter, mother or father: five (5) days (paid time off not to exceed 40 hours)

2. Brother, sister, grandparents, and grandparents of the spouse, great grandparents, and great grandparents of the spouse, step-grandparents and step-grandparents of the spouse, mother and father-in-law, grandchildren, step-mother, step-father, and step-children: three (3) days.

31

3.      Brother-in-law and sister-in-law: one (1) day.

<u>Section 41</u>        <u>Management Rights</u>

It is understood and agreed that all of the customary, historical and usual rights, functions, prerogative and authority of management are retained and remain solely exclusively within the rights of management.  These rights include, but are not limited to, the right to manage, operate and maintain the facilities, to select, hire and terminate employment, direct the work force, schedule work, determine what is to be produced and by what methods, determined the size of the work force, to relocate or remove any portion of the facilities (subject to the requirements of Section 38) and to abandon any operation it deems appropriate, to discipline, suspend and discharge employees for cause, to install any labor saving device or equipment and to replace, modify, discontinue or introduce new products. Any transfer of work that has been traditionally bargaining unit work will be handled in accordance with the other provisions of this contract.

**Section 41.   Terms of Agreement**

A.  This Agreement shall be in force and effect through December 31, 2021 and shall be considered as renewed from year to year on a calendar basis thereafter, unless either party shall give written notice to the other party to termination of renegotiation as provided in Paragraph (B) hereof.

B.  Either party to this contract may terminate the Agreement or reopen the same for negotiation by giving to the other party written notice of intention to terminate or renegotiate by registered mail sixty (60) days prior to January 1, 2021 or January 1st of any year thereafter.

IN WITNESS HEREOF, the parties have executed this Agreement on the ____1st____ day of ____January____, 2019.

LEPRINO FOODS COMPANY:

Heidi Nunes, Plant Manager

Steven Schmidt, Sr. Director, Production Division HR & Safety

Kelly Soto, Sr. Manager, Regional Production Division HR

Ana Nicks, HR Manager

Susan Parry, HR Generalist

TEAMSTERS LOCAL #517

Greg Landers, Secretary-Treasurer

Steve Nelson, Business Agent

Jamal Adlouni, Union Team Member

Robert Goykendall, Union Team Member

Carlos Gutierrez, Union Team Member

Rodney Cotta, Union Team Member

Patrick Matthews, Union Team Member

34

SCHEDULE "A"
CLASSIFICATION AND WAGE RATES

The following minimum straight time hourly rates and classifications shall govern, it being understood that additional classifications may be added or combination rates fixed within the limits of the wage schedules herein set forth by mutual consent of the parties.  Any disagreement over such classification of labor or the addition of more classifications shall be subject to the jurisdiction of the Arbitration Board herein provided in Section 33.

For purpose of the agreement non-classified work is defined as work not specifically included in "Schedule A".

| | **2018** | 1/1/19 | 1/1/20 | 1/1/21 |
|---|---|---|---|---|
| Maintenance Working Foreperson | 27.27 | 28.02 | 28.79 | 29.58 |
| Maintenance – Vacation Relief | 26.77 | 27.51 | 28.26 | 29.04 |
| Maintenance Mechanic | 26.42 | 27.15 | 27.89 | 28.66 |
| Maintenance – Parts Room Working Foreperson | 26.27 | 26.99 | 27.73 | 28.50 |
| Production Working Foreperson – Day off Relief | 26.04 | 26.76 | 27.49 | 28.25 |
| Production Working Foreperson | 25.75 | 26.46 | 27.19 | 27.93 |
| Production – Vacation Relief | 25.31 | 26.01 | 26.72 | 27.46 |
| Skilled Relief Person | 25.19 | 25.88 | 26.59 | 27.33 |
| **Bracket 1:**<br>Cheese Maker<br>Milk Receiver<br>Lab Tech<br>Evaporator Operator<br>UF/Separator Operator<br>Dryer Operator<br>Starter Maker<br>MSP Operator<br>Relief Person (Bracket 2)<br>Power Lift Operator<br>Extruder Operator<br>Rail Loader<br>Maintenance Helper (Painter)<br>Parts Room<br>Sanitation/Sep CIP/UF Tester<br>Sanitation Day Off Relief | 24.90 | 25.58 | 26.29 | 27.01 |
| **Bracket 2:**<br>Brine Floater<br>Line Floater | 24.77 | 25.45 | 26.15 | 26.87 |

34

| | | | | |
|---|---|---|---|---|
| Filler Operator<br>Powder Bagger<br>Box Maker<br>Powder Blender<br>Cellulose/Rework<br>  (When performing Cellulose,<br>employee to be paid at Brk 2 rate)<br>Palletizer Operator<br>Maintenance Helper (Lubricator)<br>Sanitation/Cheese<br>Sanitation/Processing<br>HTST/Cheese<br>Sanitation/CCT PHT<br>Sanitation/Cheese Environmental<br>Sanitation/Process Environmental<br>Sanitation/Whey Environmental<br>Sanitation/Mixers<br>Liquid Application/Freezer Opr | | | | |
| **Bracket 3:**<br>Uncuffer<br>Cellulose/Rework<br>  (When performing Rework,<br>employee to be paid at Brk 3 rate)<br>Sweeper<br>On Call Base Pay | 21.89 | 22.49 | 23.11 | 23.75 |
| **Clerical**<br>Vacation Relief | 24.42 | 25.09 | 25.78 | 26.49 |
| Senior Clerk | 23.73 | 24.38 | 25.05 | 25.74 |

## CLASSIFICATIONS:
## Working Foreperson (Production and Maintenance)

Assigned to supervision of and working with other workers.

### Skilled Relief Person (Relief for Bracket 1)

The rate of Skilled Relief Person shall be paid as follows:

a.  For all hours worked in the workweek, to any employee working in Bracket 1, who is regularly scheduled to work on two (2) or more different shifts during the same workweek.

b.  For any full days worked on any shift in Bracket 1 which differs in starting time from his/her regularly scheduled shift, to any employee who is temporarily so assigned.

c.  For the purpose of subsections (a), (b) and (d) herein set forth, starting times within the workweek which do not vary by four (4) hours or more shall be deemed to be the same starting time on the same shift.

d.  For all hours worked in the workweek, to any employee who relieves other employees on their scheduled days off in two (2) or more classifications in Bracket 1 on the same shift.

e.  For any full days worked in Bracket 1, outside his/her regularly scheduled classification, to any employee who was temporarily so assigned.

### Maintenance Person
**Tool Allowance**: Tool Allowance of two hundred dollars ($200.00) per year.

a. Will have the option to purchase Craftsman through the Employer or be reimbursed upon presentation of receipts.
b. Current mechanics will have one year to attain agreed upon tool list.

**Bracket 1** includes the following classifications:

| | |
|---|---|
| Cheese Maker | Parts Room |
| Milk Receiver | Relief Person (Bracket 2) |
| Lab Tech | Power Lift Operator |
| Evaporator Operator | Extruder Operator |
| UF/Separator Operator | Rail Loader |
| Dryer Operator | Maintenance Helper (Painter) |
| Starter Maker | Sanitation/Separator CIP/UF Tester |
| MSP Operator | Sanitation Day Off Relief |

**Relief Person (Relief for Bracket 2)** - The rate for Relief Persons shall be paid as follows:

a. For all hours worked in the workweek, to any employee working in Bracket 2, who is regularly scheduled to work on two (2) or more different shifts during the same workweek.
b. For any full days worked in any shift in Bracket 2, which differs in starting time from his/her regularly scheduled shift, to any employee who is temporarily so assigned.
c. For purposes of subsections (a), (b) and (d) herein set forth, starting times within the work week which do not vary by four (4) hours or more shall be deemed to be the same starting times on the same shift.
d. For all hours worked in the work week, to any employee who relieves other employees on their scheduled days off in two (2) or more classifications in Bracket 2, on the same shift.
e. For any full days worked in Bracket 2, outside his/her regularly scheduled classification any employee who is temporarily so assigned.

**Bracket 2** includes the following classifications:

| | |
|---|---|
| Brine Floater | Sanitation/Processing |
| Line Floater | HTST/Cheese |
| Filler Operator | Sanitation/CCT PHT |
| Powder Bagger | Sanitation/Cheese Environmental |
| Powder Blender | Sanitation/Process Environmental |
| Box Maker | Sanitation/Whey Environmental |
| Palletizer Operator | Sanitation/Mixers |
| Maintenance Helper (Lubricator) | Liquid Application/Freezer Operator |
| Sanitation/Cheese | |

**Office Employees**
Vacation Relief
Principal Clerk (Currently there are no employees in this classification as of 1/1/08).
Senior Clerk

**PROOF OF SERVICE**
*Null v. Leprino Foods Company, et al.*

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

    At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is 425 Market Street, 26th Floor, San Francisco, CA 94105.

    On **April 23, 2019**, I served a true copy of the following document(s) described as:

**DEFENDANTS' NOTICE OF REMOVAL**
**(28 U.S.C. § 1441(a) Federal Question Jurisdiction)**

on the interested parties in this action as follows:

R. Rex Parris, Esq.                           *(Attorneys for Plaintiff)*
Kitty K. Szeto, Esq.
John M. Bickford, Esq.
Ryan A. Crist, Esq.
PARRIS LAW FIRM
43364 10th Street West
Lancaster, CA  93534

    **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the person(s) at the address(es) listed above and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    Executed on **April 23, 2019**, at San Francisco, California.

_____
Ann D. Ghiorso

15441031.1

Case No. _____

PROOF OF SERVICE